## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| NORDONIA HILLS CITY SCHOOL DISTRICT BOARD OF EDUCATION, 9370 Olde Eight Road Northfield, Ohio 44067, <br><br> and <br><br> HYLANT ADMINISTRATIVE SERVICES, LLC d/b/a HAS CLAIMS SERVICE, 811 Madison Avenue Toledo, Ohio 43604, <br><br>    Plaintiffs, <br><br> v. <br><br> JASON  D. WALLACE, c\o WALLACE & BACHE, LLP 270 S. Cleveland Massillon Road Fairlawn, OH 44333, <br><br> and <br><br> DANIEL R. BACHE, c\o WALLACE & BACHE, LLP 270 S. Cleveland Massillon Road Fairlawn, OH 44333, <br><br> and <br><br> RODERICK LINTON BELFANCE, LLP, c\o its Statutory Agent: Stephen J. Pruneski 50 S. Main St., Tenth Floor Akron, OH  44308, <br><br> and <br><br> WALLACE & BACHE, LLP, c/o Its Statutory Agent: Daniel R. Bache 270 S. Cleveland Massillon Road Fairlawn, OH 44333, <br><br>    Defendants. | CASE NO. <br><br> JUDGE <br><br><br> **COMPLAINT FOR RECOVERY OF FEES PURSUANT TO THE INDIVIDUALS WITH DISABILITIES EDUCATION IMPROVEMENT ACT (IDEIA)** |

{02131540 -7}                                           1

## COMPLAINT

1. This is an action for fees in an administrative proceeding under the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400, *et seq.* ("IDEIA"), which was initiated and continued to be litigated by the Defendants even though frivolous, unreasonable, and/or without foundation and in a manner designed to needlessly extend and increase the costs of the litigation.

## JURISDICTION

2. This Court has original jurisdiction over this matter pursuant to IDEIA's fee shifting provision, 20 U.S.C. §1415(i)(3)(B)(i)(II-III), and 28 U.S.C. § 1331.

## PARTIES

3. Plaintiff, Board of Education for the Nordonia Hills City School District ("Board" or "District"), is a local education agency ("LEA") under IDEIA for special education purposes.

4. Plaintiff, Hylant Administrative Services, LLC d/b/a HAS Claims Service ("Hylant"), is an Ohio limited liability company with its principal place of business in Toledo, Ohio.  At all times relevant herein, the Board was insured pursuant to the Ohio School Plan, which was managed and administered by Hylant, relative to the defense of the administrative proceeding claims alleged against the Board by Defendants.

5. Defendant Jason D. Wallace is an attorney licensed to practice in the State of Ohio, who represented R.C. ("student"), who is a minor child who resides within the Nordonia Hills City School District and Angela Coleman ("parent" or "Ms. Coleman"), R.C.'s parent, in an administrative special education due process proceeding conducted pursuant to IDEIA. Defendant Wallace is a licensed member of the Ohio bar since May 2013.

6. Defendant Daniel R. Bache is an attorney licensed to practice in the State of Ohio, who represented R.C. ("student"), who is a minor child who resides within the Nordonia Hills City School District and Angela Coleman ("parent"), R.C.'s parent, in an administrative special education due process proceeding conducted pursuant to IDEIA.  Defendant Bache is a licensed member of the Ohio bar since May 2010.

7. Defendant, Roderick Linton Belfance, LLP ("Roderick Linton"), is a law firm located at 50 S. Main Street, Akron, OH 44308, and the employer and supervisor of Defendants Jason Wallace and Daniel Bache during certain relevant periods of the aforementioned administrative special education due process proceedings.

8. Defendant, Wallace & Bache LLP, is a law firm located at 270 S. Cleveland Massillon Road, Fairlawn, OH 44333, and the employer of Defendants Jason Wallace and Daniel Bache during certain relevant periods of the aforementioned administrative special education due process proceedings.

## APPLICABLE LAW

9. The IDEIA, 20 U.S.C. § 1415(i)(3)(B)(i)(II-III), provides that a Court may award reasonable attorneys' fees to a prevailing party who is a local education agency against the attorney(s) of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation.

10. The IDEIA, 20 U.S.C. § 1415(i)(3)(B)(i)(II-III), further provides that a Court may award reasonable attorneys' fees to a prevailing party who is a local education agency against the attorney(s) of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation.

## FACTUAL ALLEGATIONS AND BACKGROUND

11. On or about May 5, 2015, an IDEIA due process complaint was filed on behalf of of R.C. and his parent and signed by Defendant Bache against the Nordonia Hills City School District Board of Education. Both Defendant Wallace and Defendant Bache were identified as counsel for the petitioners on the due process complaint. Said complaint was transmitted though Roderick Linton's email system and by regular mail with use of Roderick Linton letterhead that did not identify Defendants Bache and Wallace as independent contractors or "of counsel." See **Exhibit A** attached.

12. On May 8, 2015, Irene H. McMullen was appointed as the administrative law judge, i.e., Impartial Hearing Officer ("IHO") to hear the case.

13. On or about May 13, 2015, a first amended IDEIA due process complaint was filed on behalf of R.C. and his parent and signed by Defendant Bache against the Nordonia Hills City School District Board of Education. Both Defendant Wallace and Defendant Bache were identified as counsel for the petitioners on the due process complaint. Said complaint was transmitted though Roderick Linton's email system and by regular mail with use of Roderick Linton letterhead that did not identify Defendants Bache and Wallace as independent contractors or "of counsel." See **Exhibit B** attached.

14. On or about September 17, 2015, a second amended IDEIA due process complaint was filed on behalf of R.C. and his parent and signed by Defendant Wallace against the Nordonia Hills City School District Board of Education. See **Exhibit C** attached. Both Defendant Wallace and Defendant Bache were identified as counsel for the petitioners on the due process complaint. Said complaint was transmitted though Roderick Linton's email system and by

regular mail with use of Roderick Linton letterhead that did not identify Defendant's Bache and Wallace as independent contractors or "of counsel."

15. At the time of filing the second amended due process complaint, R.C. was a 10th grade student in the Nordonia Hills City School District.  During the summer prior to the start of the 2015-2016 school year, R.C. had been identified as a student with a disability under the IDEIA.  This was the first time R.C. had been identified as a student with a disability under the IDEIA.

16. During the 2014-2015 school year, R.C. received two out-of-school suspensions.  On October 23, 2015, he was suspended out of school for five days (physical confrontation, disruption of school).  On March 3, 2015, R.C. was suspended out of school for ten days with a recommendation for expulsion (physical confrontation).

17. On March 3, 2015, R.C. sent threatening text messages to other students which resulted in a recommendation for another ten day suspension and another recommendation for expulsion. Ultimately, no disciplinary action was taken with respect to this incident as it was determined that proper due process procedures had not been afforded to R.C.  Hence, the recommendation for discipline resulting from the text messages was withdrawn.

18. On March 13, 2015, a hearing was held before Superintendent Joe Clark regarding the March 3, 2015 recommendation for expulsion (due to physical confrontation).  Following the hearing, Dr. Clark elected not to expel R.C.  Rather, he changed R.C.'s school assignment, in accordance with Board policy, to the Nordonia High School Digital Knights Program for the remainder of the 2014-2015 school year.  In this program, R.C. continued to earn credits toward graduation for the remainder of the school year.

19. On March 24, 2015, Assistant Principal Kevin Tanner received a written request from Ms. Coleman requesting that R.C. be evaluated to determine eligibility under the IDEIA. This was the first request for an evaluation that the District received from parent. As the request was not received until after R.C.'s March 3, 2015 violation of the Student Code of Conduct, he was not eligible for the protections of the IDEIA, including a manifestation determination, at the time of the disciplinary removal. This fact was known to Defendants at the time that each of the complaints was filed.

20. After receiving the request for an evaluation, on March 24, 2015, Julie Arnold (School Psychologist) contacted parent regarding her request. Ms. Arnold scheduled a meeting with parent on April 15, 2014 (a mutually agreeable date). The purpose of this meeting was to determine whether a disability was suspected. Ms. Arnold also sent parent a copy of *Whose IDEA Is This?* via email. At the April 15, 2015 meeting, the District team members determined that a disability was not suspected based on the information shared by parent and R.C.'s teachers. A prior written notice regarding this decision was sent on April 16, 2015.

21. Although a disability was not suspected at the April 15, 2015 meeting, Ms. Arnold suggested that various behavior rating scales be completed by R.C.'s parents and R.C. in order to provide additional information about R.C.'s behaviors and functioning. Ms. Arnold then provided the Behavior Assessment Rating Scale-Second Edition to parent, R.C.'s father, and R.C.

22. Ms. Arnold received the completed rating scales from R.C. and his parents and scored the scales. Based on the scores obtained, Ms. Arnold suspected a disability and attempted to contact parent via phone on April 27, 28 and 29, 2015 to convey this information. On April 29, 2015, Ms. Arnold spoke to parent and advised her that the District wanted to move

forward with an evaluation under the IDEIA based on the results of the rating scales. Parent told Ms. Arnold that she wanted to discuss the matter with her husband and that she would let Ms. Arnold know whether the family wanted the District to conduct the evaluation.

23. On May 5, 2015, the parent, through counsel, filed a due process complaint signed by Defendant Bache. The due process complaint alleged, among other things, that the District failed to evaluate R.C. and, as a remedy, requested that an evaluation be conducted. At the time the due process complaint was filed, Defendants, had they taken the time to appropriately communicate with their client, should have known that the District had already offered to conduct an evaluation, but parent had not responded to the District's offer. The due process complaint also erroneously alleged that R.C. had been removed from school by parent and had to be educated at home due to bullying. Defendants knew or should have known that this claim was erroneous at the time the complaint was filed.

24. On May 6, 2015, parent responded that it was fine for the District to begin the evaluation process. That same day, Ms. Arnold sent parent the following documents: PR-04 (referral for evaluation); Evaluation Planning Form (draft); PR-05 (consent for evaluation); and a PR-01. The May 6, 2015 PR-01 explained the District's proposal to move forward with an evaluation to determine IDEIA eligibility based on the results of the rating scales.

25. In the first amended due process complaint filed on or about May 13, 2015, Defendants again requested that an evaluation be conducted as a remedy, despite the fact that the District had already offered to evaluate R.C., a fact that was known – or should have been known – to Defendants. Further, the first amended complaint erroneously alleged that R.C. had been expelled by the District when no such disciplinary action had been taken, a fact that was known, or should have been known to Defendants.

26. On June 1, 2015, parent provided written consent, as required by the IDEIA, and the District commenced student's evaluation. Ms. Arnold administered various assessments to student as part of the evaluation process.

27. An evaluation team meeting was held on June 24, 2015 to review the results of the assessments. Defendant Bache attended this meeting as counsel for R.C. and Ms. Coleman. Ultimately, the team agreed that additional information was needed prior to making an eligibility decision for R.C. The team, including parent, agreed that R.C.'s mental health status should be assessed by an independent party. Dr. Michele DePolo from KidsLink Neurobehavioral Center was selected by the team to complete this assessment at the District's expense.

28. A second evaluation team meeting was then held on July 30, 2015, to review the new data/information from Dr. DePolo and make an eligibility determination for R.C. Dr. DePolo was in attendance at that meeting, and shared the results of her evaluation. She diagnosed R.C. with an Acute Stress Disorder, which impacts his ability to focus and function appropriately in social situations. Based on the information from Dr. DePolo's report, the team, including parent, determined that R.C. qualified for special education services as a child with an Other Health Impairment ("OHI") under the IDEIA. Defendant Bache attended this meeting as counsel for R.C. and Ms. Coleman.

29. On August 20, 2015, a meeting was held to develop an IEP for R.C. At the meeting, the team reviewed the draft IEP that had been provided in advance to parent. Changes were made to the document based on input from team members. One change was giving R.C. the choice of eating lunch in the cafeteria or with Michael Griffen (intervention specialist/case manager) in Mr. Griffen's classroom. This was added to the IEP as an accommodation.

30. The team also discussed R.C.'s need for counseling services and included counseling as a related service on his IEP. The draft IEP proposed providing in-district counseling; however, Carrie Hutchinson (Director of Pupil Services) offered the option of outside counseling with Dr. DePolo at the District's expense in lieu of in-district services. Parent elected to have R.C. receive counseling from Dr. DePolo. The District team members agreed that the counseling services in R.C.'s IEP would be provided by Dr. DePolo and changed the IEP accordingly.

31. Neither Ms. Coleman nor R.C. expressed any reservations with the goal, objectives or services included in the IEP during the IEP meeting. At the conclusion of the meeting, Ms. Coleman signed the IEP indicating her agreement with the document and consent to initiate special education and related services. Defendant Bache attended this meeting as counsel for R.C. and Ms. Coleman.

32. Aside from the IEP, the team also discussed how to best get R.C.'s 2015-2016 school year off to a good start. It was agreed that Mr. Wright, the Nordonia High School Principal, would hand-pick R.C.'s schedule. Mr. Wright offered to meet with R.C. on August 21, 2015 to review this schedule and also to determine there were students in R.C.'s classes with whom he had any conflicts. If possible, different classes would be selected (at R.C.'s choice) in order to avoid any potential peer conflict. Finally, Mr. Wright, Mr. Griffen and Ms. Hutchinson all expressed to parent that they would like to work proactively with her to address any problems or concerns.

33. R.C.'s return to Nordonia High School went smoothly and he did not have any difficulties reintegrating. Additionally, R.C. did extremely well during the 2015-2016 school year. He received mostly As and Bs, made progress on his IEP goal/objectives, and participated in

extracurricular activities (e.g., football, optional weight conditioning).  Moreover, R.C. did not have any disciplinary incidents or incidents with peers during the 2015-2016 school year.

34. At the time this matter was litigated, Defendants Wallace and Bache were aware of R.C.'s progress as they had received copies of his report cards and IEP progress reports from the District.  Despite this, they continued to assert that the IEP being implemented by the District denied R.C. a free appropriate public education and that his placement was inappropriate.

35. The hearing in this matter was scheduled to commence on September 23, 2015.  Accordingly, the disclosure conference was scheduled for September 16, 2015.

36. On September 15, 2015, at approximately 8:03 p.m., Defendants Wallace and Bache filed a motion seeking leave to file a second amended due process complaint against the District.

37. On September 16, 2015, a disclosure conference was held, as scheduled, before IHO McMullen.  Defendant Wallace attended the disclosure conference on behalf of parent and student.  Despite IHO McMullen's May 18, 2015 Order requiring both parties to provide the "IHO with a copy of all documentation provided to the opposing party at the Disclosure Conference (in paper form)," Defendant Wallace did not bring paper copies of proposed exhibits to the disclosure conference.  Defendant Wallace also failed to comply with IHO McMullen's Order requiring that each party provide "a brief statement of your position regarding this case…including the exact student status requested."  IHO McMullen directed Defendant Wallace to provide paper copies of petitioners' proposed exhibits per her previous order.  Defendant Wallace stated that he would do so.

38. The motion for leave and second amended complaint were discussed at length during the disclosure conference.  The second amended complaint alleged: (1) the Nordonia Hills City School District was not providing the student with a free appropriate public education

("FAPE"); (2) that the District violated Child Find under IDEIA; (3) that the District unlawfully retaliated against the student under Section 504 of the Rehabilitation Act of 1973 and IDEIA; (4) that the District failed to adequately protect the student from bullying and harassment; (5) that the student was deprived of educational opportunities; (6) that the student was suspended more than ten (10) days in aggregate without the required manifestation hearing; (7) that the student's recently-developed IEP was inappropriate and denied student a FAPE; and (8) that the student's current educational placement was not proper.

39. The second amended complaint contained many inaccuracies, including an allegation that parent had "asked for a team to be convened and to evaluate [student] in the eight [sic] grade, but the team declined to do so . . . ." Parent testified in the due process hearing that she had not made such a request. Defendants knew or should have known, therefore, that the allegation as pled in the second amended complaint was false.

40. Defendant Wallace compounded this inaccuracy during the disclosure conference when he alleged that a "team" meeting, which included District personnel, the parent, and a friend of the family, had occurred during R.C.'s 8th grade year, and the District ultimately determined not to evaluate R.C. for a disability. Parent's testimony during the due process hearing made clear that  no such meeting had occurred.  However, based on Defendant Wallace's statements and the completely false allegation in the due process complaint, the District wasted significant time speaking to R.C.'s 8th grade teachers and other staff members regarding these allegations to prepare for the defense of this allegation. Time was also spent at the due process hearing on testimony regarding these patently false claims.

41. The second amended complaint also contained numerous allegations that were completely irrelevant and not cognizable under the IDEIA (e.g., allegations related to student's younger sister, allegations regarding student's application to a private school, allegations regarding the "retaliatory" actions, the actions of a District administrator, allegations of violations of Section 504 of the Rehabilitation Act of 1973, etc.).  Again, valuable time and resources were wasted on issues that could not be raised in an IDEIA due process complaint and that were not properly before the IHO.  Significantly, during the due process hearing, the IHO repeatedly advised Defendants Wallace and Bache that she did not have jurisdiction over Section 504 claims and retaliation claims and would not be ruling on these claims.  Despite this, Defendants Wallace and Bache repeatedly attempted to raise these claims when questioning witnesses.

42. During the disclosure conference, Defendant Wallace made clear that, if the petitioners were not granted leave to file the second amended due process complaint, they would simply file a separate action regarding student's IEP and educational placement.  As this would have necessitated two hearings, that involved largely the same witnesses, in the interest of judicial economy, the District withdrew its objection to the motion for leave to file a second amended due process complaint.

43. At the disclosure conference, IHO McMullen reviewed the witness lists submitted by both parties.  Defendants submitted a list of 36 witnesses – many of whom were completely irrelevant to the IDEIA issues before the IHO.  For example, Defendants identified multiple police officers to testify about the threatening text messages sent by student and the subsequent juvenile court proceedings.  None of this proposed testimony related in any way to student's evaluation, identification, placement or the provision of a FAPE – the only issues

within the IHO's jurisdiction.  Defendants also identified numerous, minor classmates of R.C., to discuss alleged bullying and related issues, all of which occurred prior to R.C.'s identification as a student with a disability, and similarly had no relation to his evaluation, identification, placement or the provision of a FAPE.  Defendants also identified the District's Superintendent as a witness – despite the fact that he was not involved at all in decisions related to student's evaluation or IEP.

44. The second amended due process complaint was accepted by the IHO on or around September 17, 2015.  The filing of this complaint reset the timelines for the due process hearing.  Consequently, new hearing dates were needed.  The parties agreed that the hearing would be held on the following dates: January 12, 13, 20, 21, 22, and 25, 2016.  As Petitioners had not completed their case in chief by end of these scheduled dates, a Saturday date (January 30, 2016) was added.  Ultimately, two additional dates (March 1 and March 2, 2016) were added in order to allow the District to present its case.

45. As it had with the due process complaint and first amended due process complaint, the District responded to the second amended due process complaint and generally denied all of the allegations.  The District further specifically denied that (1) it failed to provide FAPE; (2) that student was entitled to the protections of the IDEIA at the time of the disciplinary removal that is at issue in the due process complaint; (3) that any substantive or procedural errors were committed; and (4) that parent and/or student were entitled to any of the relief requested.  The District also asserted that at all times relevant to the instant matter, it met all of its obligations under the IDEIA and, after student's identification and the development of an IEP, provided student with a FAPE in his LRE.

46. The second amended due process complaint also made allegations related to Section 504 of the Rehabilitation Act of 1973, the American with Disabilities Act, race discrimination, bullying and harassment, and retaliation. The District denied any violations of these statutes and further denied that R.C. was bullied or harassed, discriminated against based on his race, or retaliated against at any time. The District further asserted that these specific allegations were not properly before the impartial hearing officer as she did not have jurisdiction over any of these claims and an IDEIA due process hearing was not the appropriate forum for these issues.

47. As of December 18, 2015, Defendants Wallace and Bache had not yet produced copies of paper exhibits as ordered by IHO McMullen. Consequently, on December 18, 2015 the Board filed a *Motion to Compel Production of Paper Exhibits* given Defendants' three-month delay in the production of indexed, labeled or otherwise readily searchable or accessible hearing exhibits, despite an order from the IHO that they be produced in this fashion. Prior to filing this motion, counsel for the Board attempted to obtain the documents from Defendants Wallace and Bache without success.

48. On December 21, 2015 the IHO issued an Order mandating Defendants' response to the Board's *Motion to Compel Production of Paper Exhibits*. In lieu of responding, Defendants produced approximately 1,495 pages of unindexed documentation purporting to represent petitioners' proposed exhibits. Accompanying this production was an "exhibit list." Said "exhibit list" lacked any organization, clarity or specificity regarding the documents actually contained in each of the proposed exhibits. For example, Exhibit B was every document provided to Defendant Wallace by the Board at the September 16, 2015 disclosure

conference.  Defendants' conduct in this regard needlessly increased Plaintiffs' costs of litigation.

49. On December 18, 2015, the Board also filed a *Motion to Dismiss* requesting that the IHO dismiss all claims in the second amended due process complaint that were beyond the scope of the IDEIA.

50. On January 1, 2016, the IHO ordered Defendants to bring copies of all proposed exhibits to the parties' scheduled January 8, 2016 conference.

51. Ultimately, the January 8, 2016 conference was cancelled by IHO McMullen when Defendants Wallace and Bache could not make themselves available at the time scheduled by the IHO.  Instead, the parties utilized the beginning of the first day of the due process hearing, January 12, 2016, to address various pending motions.  Among these motions were *Petitioners Notice of Intent to Seek Reimbursement of Costs* which was filed on January 2, 2016.  This pleading, signed by Defendant Wallace, stated that petitioners intended to seek reimbursement from the District for the cost of complying with IHO McMullen's Orders to produce paper copies of exhibits and provide these documents to the IHO and opposing counsel.  The District filed an opposition to this pleading on January 4, 2016, noting that there was no authority to support recovery of such costs by petitioners.

52. On January 4, 2016 Defendant Bache filed an *Objection to All Pre-Hearing Motions and Orders*, essentially arguing that IHO McMullen did not have the authority to issue pre-hearing orders or manage the administrative proceedings in an orderly manner.  Defendant Bache did not supply any legal authority for this motion beyond a nonsensical interpretation of the Ohio Administrative Code provisions governing the conduct of due process hearings under the IDEIA.  The District filed an opposition to this motion on January 7, 2016 in which

it cited a relevant case noting that impartial hearing officers are vested with implied powers beyond those specifically enumerated in the O.A.C. to manage their cases.

53. On January 12, 2016, the due process hearing commenced and a significant amount of time was spent dealing with the aforementioned motions, as well as other motions. Ultimately, the IHO denied petitioners' *Objection to All Pre-Hearing Motions and Orders*, and spent an extensive amount of time attempting to clarify the Defendants' positions on their other motions, which were recognized as "novel" arguments. When asked by the IHO repeatedly to provide support – via case law or statutory authority – for their positions articulated in the aforementioned motions, neither Defendant Wallace nor Defendant Bache could identify any precedent supporting the positions articulated in these submissions. Defendants' conduct in filing said motions needlessly increased Plaintiffs' costs of litigation.

54. On January 12, 2016 it also became clear that neither Defendant Wallace nor Defendant Bache could articulate, in any cogent manner, petitioners' claims. Notably, IHO McMullen asked basic questions regarding petitioners' claims that R.C.'s placement was inappropriate. Defendant Wallace could not articulate what he believed to be an appropriate "placement" as defined by the IDEIA. Rather, Defendant Wallace could only state that R.C. needed a different building with different people. Defendant Wallace could also not articulate the educational characteristics that would be present in a different placement. At another point in the hearing, IHO McMullen asked Defendant Bache to articulate the specific relief that his clients were requesting with respect to student's lunch arrangements. Defendant Bache could not do so and requested a break to consult with his client. These are two isolated examples of issues that occurred repeatedly throughout approximately nine (9) days of hearing.

55. Throughout the hearing, Defendants Wallace and Bache focused on issues that were irrelevant and/or that were not before the IHO.  For example, IHO McMullen ruled that she did not have jurisdiction over petitioners' retaliation claims.  Despite this ruling, Defendant Bache engaged in a lengthy cross-examination of Kevin Tanner (Associate Principal) regarding student's application to a private school and Mr. Tanner's action regarding the application.  These questions were pointless and were asked for no reason other than to protract the hearing and harass Mr. Tanner.

56. Similarly, the District did not dispute that student was disciplined or the number of days of disciplinary removal during the 2015-2016 school year.  Nor did the District dispute the reasons for the disciplinary removals.  However, Defendants Wallace and Bache examined numerous witnesses regarding these issues for no reason other than to protract the hearing.

57. Similarly, had Defendants Wallace and Bache engaged in appropriate investigation of the claims asserted in the due process complaints, they would have learned from Ms. Coleman that the first time she requested that the District evaluate R.C. was March 24, 2015.  Ms. Coleman testified to this during the hearing.  However, due to the completely unsupported allegations in the second amended due process complaint filed by Defendants, many hours of testimony was wasted regarding R.C.'s 8th grade year and whether R.C.'s parents had ever requested an evaluation during that school year.

58. Although Defendants Wallace and Bache submitted a witness list that included over twenty (20) potential witnesses, including individuals who had no involvement at all with student's special education services, they did not include Mr. Griffen, student's intervention specialist/case manager as a witness.  Nor did they include Julie Arnold, the school psychologist who conducted student's evaluation.  Likewise, they did not include student's

10th grade teachers, despite including the claim that the IEP these teachers were implementing did not provide a FAPE in the second amended due process complaint.

59. Due to the amount of irrelevant testimony adduced, Defendants Wallace and Bache spent approximately six (6) days presenting petitioners' case in chief.  Conversely, the District spent less than two days presenting its case-in-chief – including testimony from student's intervention specialist/case manager.

60. On March 2, 2016, the last day of the due process hearing, the IHO required counsel for both parties to move for the admission of exhibits.  Defendant Bache was the only attorney present for petitioners that day.  Defendant Bache was completely unprepared to articulate to the IHO which exhibits he intended to admit into evidence on behalf of petitioners.  After granting an extended lunch break to allow Defendant Bache time to organize petitioners' exhibits, during which counsel for the District attempted to assist him,  Defendant Bache was still not prepared to move forward.  Counsel for the District suggested, in the interest of time and judicial economy, recessing to allow Defendant Bache an opportunity to prepare for the admission of exhibits.  The IHO recessed the hearing and ordered another partial day of hearing on March 17, 2016 for the admission of exhibits.

61. On April 11, 2016 Defendants' filed *Petitioners' Post Hearing Brief.*

62. On April 11, 2016 the Board filed the *District's Post-Hearing Brief.*

63. On May 2, 2016 the IHO issued her Final Decision.  In the Final Decision, the IHO found in favor of the District on all of petitioners' claims.  Moreover, the IHO's Final Decision makes clear that there was no evidentiary support for any of the claims brought forth and litigated by Defendants Wallace and Bache.  Specifically, after eliciting testimony from over ten (10) witnesses over six (6) days of hearing, Defendants failed to present evidence to support any

of the claims identified in the second amended due process complaint that they filed and litigated. Specifically, Defendants did not establish that: (a) the District violated its Child Find obligations; (b) that R.C. was entitled to a manifestation determination when he was suspended on March 2, 2015; (c) that R.C. was denied a FAPE; (d) that R.C. was denied a FAPE due to bullying; or (e) that parent's purported "retaliation" claim can proceed. See **Exhibit D** attached.

64. All conduct undertaken by Defendants Wallace and Bache as set forth in the preceding paragraphs was undertaken while Defendants Wallace and Bache were employed by Defendant Roderick Linton, and was undertaken in the course and scope of said employment. All pleadings signed by Defendants Wallace and Bache, including the post-hearing brief, were signed "Respectfully submitted, Rodrick Linton Belfance LLP" followed by an electronic signature from either Defendant Wallace or Defendant Bache. A signature block providing contact information for Defendants Wallace and Bache at Rodrick Linton Belfance, LLP followed.

65. Defendant Roderick Linton had a duty to supervise Defendants Wallace and Bache during the course and scope of their employment. Defendant Roderick Linton, however, failed to supervise Defendants Wallace and Bache at all times relevant. Defendant Roderick Linton ratified the conduct of Defendants Wallace and Bache by filing to control their conduct and/or to mitigate the damage caused by their frivolous and sanctionable conduct.

66. Defendants Wallace, Bache, and Wallace & Bache continued to litigate all the issues identified in the second amended due process complaint by appealing the IHO's decision on June 15, 2016 to a State Level Review Officer appointed by the Ohio Department of Education.

67. Robert L. Mues was appointed by the Ohio Department of Education as the State Level Review Officer ("SLRO").

68. On June 21, 2016 the Board filed its *Motion to Dismiss Petitioner's Notice of Appeal with Memorandum in Support*. The Board argued that Defendants' failed to timely perfect a notice of appeal in accordance with Ohio's Operating Standards for the Education of Children with Disabilities thereby depriving the SLRO of jurisdiction over the matter.

69. On June 26, 2016, Defendants filed a *Response to the Board's Motion to Dismiss or, in the Alternative, Motion to Amend Notice of Appeal*.

70. On July 1, 2016 the Board filed its *Reply and Opposition to Petitioner-Appellant's Response to Motion to Dismiss or, in the Alternative, Motion to Amend Notice of Appeal*.

71. On July 7, 2016, the SLRO issued an *Order Dismissing Petitioner's Appeal*. See **Exhibit E** attached.

72. In the Order the SLRO agreed with the Board, holding that "[p]arent erroneously rel[ied] upon O.R.C. Section 119.12, for her failure to include grounds in her Notice of Appeal."

73. The SLRO further concluded "that School District has provided more than sufficient legal authority in the cases cited that, in administrative appeals, subject matter is not vested in the SLRO until the appeal is properly perfected."

74. Finally, the SLRO held that "[t]he Ohio Operating Standards provide very detailed procedural safeguards and, within those procedural safeguards, clearly include rules foe amending due process complaints and exclude any rules for or any mention of amended due process appeals."

75. The IHO's Final Decision ruled in favor of the Board on every claim raised in the second amended due process complaint filed by Defendants Wallace and Bache, entitling the Board to prevailing party status.

76. Under 20 U.S.C. § 1415(i)(3)(B)(i)(II-III), Plaintiffs are entitled to an award of attorneys' fees for work performed related to the May 5, 2015 due process complaint, the May 13, 2015 first amended due process complaint, the September 17, 2015 second amended due process complaint and related hearing proceedings. The due process complaint filed on May 5, 2015, the first amended due process complaint filed on May 13, 2015, and the second amended due process complaint filed on or about September 17, 2015, by Defendants were frivolous, unreasonable, and/or without foundation and the claims identified by Defendants in the various due process complaints were based on factually erroneous allegations.

77. The allegations made in the due process complaint filed on May 5, 2015, the first amended due process complaint filed on May 13, 2015, and the second amended due process complaint filed on or about September 17, 2015 were wholly without merit, were frivolous and without factual or legal foundation, and had absolutely no chance at success.

78. Defendants failed to conduct a reasonable inquiry into the merits of the claims prior to their filing of the due process complaint on May 5, 2015, their first amended due process complaint on May 13, 2015, and their second amended due process complaint on September 17, 2015.

79. Defendants alleged fact(s) in their initial due process complaint, the first amended due process complaint, and the second amended due process complaint that, even if true, would not amount to a violation of the law.

80. Defendants initiated the initial due process complaint, the first amended due process complaint, and the second amended due process complaint and continued to litigate their claims even after it was obvious that their claims were meritless, frivolous, unreasonable and without foundation.

81. None of the material facts alleged in the initial due process complaint, the first amended due process complaint, or the second amended due process complaint were accurate and Defendants were clearly on notice of these deficiencies and their continued pursuit of them unreasonably prolonged litigation against the Board.

82. The remedies sought by Defendants in filing the second amended due process complaint included attorneys' fees for themselves, for the parent to be determined the prevailing party, compensatory education, counseling, extended school year services ("ESY") – i.e., tutoring, teacher training, and a different educational placement.

83. Defendants lacked any legal authority to support their arguments made during the due process hearing proceedings.

84. On or around July 31, 2015, the Board made a written offer of judgment, pursuant to Rule 68 of the Federal Rules of Civil Procedure and 20 U.S.C. §1415(i)(3)(D) in an effort to resolve the first amended due process complaint without the need for a hearing. The Board's offer was not accepted.

85. On or around December 28, 2015, the Board made a written offer of judgment, pursuant to Rule 68 of the Federal Rules of Civil Procedure and 20 U.S.C. §1415(i)(3)(D) in an effort to resolve the second amended due process complaint without the need for a hearing. The Board's offer was not accepted.

86. Christina Henagen Peer, counsel for Plaintiff throughout these proceedings, is a licensed member of the Ohio bar since 1999 and has over 16 years of experience in the practice of school law.

87. Ms. Peer spent a total of 357.70 hours working on this matter, from May 12, 2015 through July 15, 2016.

88. Sara M. Markouc, counsel for Plaintiff throughout these proceedings, is a licensed member of the Ohio bar since 2006 and has over 9 years of experience in the practice of school law.

89. Ms. Markouc spent a total of 263.00 hours working on this matter, from May 12, 2015 through July 15, 2016.

90. In addition to Ms. Peer and Ms. Markouc, other licensed and experienced attorneys as well as paralegals at WALTER HAVERFIELD LLP spent a total of 77.40 hours on this matter from May 12, 2015 to July 15, 2016.

91. Under 20 U.S.C. § 1415(i)(3)(B)(i)(II-III), Plaintiffs are entitled to attorneys' fees for work performed related to defending Defendants' continued litigation against the Nordonia Hills Board of Education and in this due process appeal to the SLRO.

92. Defendants' behavior exhibited throughout the continued litigation against the Nordonia Hills City School Distrcit Board of Education and in the due process appeal to the SLRO, in which Defendants initiated and continued to litigate claims that were clearly meritless, without factual or legal foundation and which had no chance of success, resulted in $38,430.59 in court reporter and hearing officer fees.  See **Exhibit F** attached.

93. Further, Defendants' behavior exhibited throughout the continued litigation against the Nordonia Hills City School District Board of Education and in the due process appeal to the SLRO, in which Defendants initiated and continued to litigate claims that were clearly

meritless without factual or legal foundation and had no chance of success, resulted in Plaintiff incurring $106,026.56 in attorneys' fees, with additional attorneys' fees as a result of this fee petition to be determined.  See **Exhibits F and G**, attached.

## COUNT I

94. Plaintiffs hereby incorporate by reference the allegations in the above paragraphs 1 through 93 as if fully rewritten herein.

95. The due process complaint filed on May 5, 2015, the first amended due process complaint filed on May 13, 2015, and the second amended due process complaint filed on or about September 17, 2015, by Defendants were frivolous, unreasonable, and/or without foundation and the claims identified by Defendants in the various due process complaints were based on factually erroneous allegations.

96. The allegations made in the due process complaint filed on May 5, 2015, the first amended due process complaint filed on May 13, 2015, and the second amended due process complaint filed on or about September 17, 2015 were wholly without merit, were frivolous and without factual or legal foundation, and had absolutely no chance at success.

97. The Defendants lacked any legal authority to support their arguments made during the due process hearing proceedings.

98. Defendants failed to conduct a reasonable inquiry into the merits of the claims prior to their filing of the due process complaint on May 5, 2015, their first amended due process complaint on May 13, 2015, and their second amended due process complaint on or about September 17, 2015.

99. Defendants alleged fact(s) in their initial due process complaint, the first amended due process complaint, and the second amended due process complaint that, even if true, would not amount to a violation of the law.

100.    Defendants initiated the initial due process complaint, the first amended due process complaint, and the second amended due process complaint and continued to litigate their claims even after it was obvious that their claims were meritless, frivolous, unreasonable and without foundation.

101.    None of the material facts alleged in the initial due process complaint, the first amended due process complaint, or the second amended due process complaint were accurate and Defendants were clearly on notice of these deficiencies and their continued pursuit of them unreasonably prolonged litigation against the Board.

102.    Because Defendants continued to litigate even though it was obvious that the allegations in the various due process complaints lacked merit, Defendants' continued pursuit of litigation in these administrative proceeding was frivolous, unreasonable, and/or without foundation.  Further, Defendants' conduct during the litigation unreasonably prolonged and protracted the litigation.

103.    Under 20 U.S.C. § 1415(i)(3)(B)(i)(II-III), Plaintiffs are entitled to an award of $106,026.56 in attorneys' fees for work performed related to Defendants' filing of the due process complaint on May 5, 2015, their first amended due process complaint on May 13, 2015, and their second amended due process complaint on or about September 17, 2015, as well as the continued litigation against the Nordonia Hills City School District Board of Education after the litigation clearly became frivolous, unreasonable, and/or without foundation.

{02131540 -7}                                                25

104.    Further, Plaintiffs are entitled to an award of $38,430.59 for costs and expenses associated with the defense of Defendants' due process complaint on May 5, 2015, their first amended due process complaint on May 13, 2015, and their second amended due process complaint on or about September 17, 2015, as well as Defendants' continued litigation against the Nordonia Hills City School District Board of Education after the litigation clearly became frivolous, unreasonable, and/or without foundation.

## RELIEF

WHEREFORE, Plaintiffs, Nordonia Hills City School District Board of Education and Hylant Administrative Services, LLC d/b/a HAS Claims Service, respectfully asks that the Court grant the following relief against Defendants, Jason D. Wallace, Daniel R. Bache, Roderick Linton Belfance, LLP, and Wallace & Bache LLP:

A. Find that Defendants brought multiple due process complaints that were frivolous, unreasonable and without foundation;

B. Find that Defendants continued to litigate the claims in their multiple due process complaints that were frivolous, unreasonable and without foundation;

C. An award to Plaintiffs from Defendants, jointly and severally, pursuant to 28 U.S.C. § 1920 in the amount of $38,430.59 for costs and expenses related to court reporter and hearing officer fees incurred by Plaintiffs in the administrative proceedings;

D. An award to Plaintiffs from Defendants, jointly and severally, for reasonable attorneys' fees in the amount of $106,026.56 for the Nordonia Hills Board of Education's representation in the administrative proceedings initiated and continued by Defendants on appeal.  Plaintiffs further request that additional hours incurred in proceedings before this

Court, which have not yet been determined, be included in the final award of attorney fees to Plaintiffs.  A detailed and itemized statement will be provided; and

E. Order any such other relief as the Court deems just and proper.

Respectfully submitted,

_/s/ Kathryn I. Perrico_
Kathryn I. Perrico (Reg. No. 0076565)
    Email: kperrico@walterhav.com
    Direct Dial: 216-928-2948
Christina Henagen Peer (Reg. No. 0071579)
    Email: cpeer@walterhav.com
    Direct Dial: 216-928-2918
Sara Ravas Cooper (Reg. No. 0076543)
    Email: scooper@walterhav.com
    Direct Dial: 216-928-2898
WALTER | HAVERFIELD LLP
1301 E. Ninth Street, Suite 3500
Cleveland, OH  44114
(216) 781-1212 telephone
(216) 575-0911 facsimile

_Attorneys for Plaintiffs,_
_Nordonia Hills City School District_
_Board of Education and Hylant Administrative_
_Services, LLC d/b/a HAS Claims Service_