IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NORDONIA HILLS CITY SCHOOL DISTRICT BOARD OF EDUCATION, *et al.*, | ) ) ) ) | CASE NO. 5:16-CV-1973 |
| Plaintiffs, | ) ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) | |
| JASON D. WALLACE, *et al.*, | ) ) ) | |
| Defendants. | | |

---

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT**

---

Now come Plaintiffs, Nordonia Hills City School District Board of Education ("Board" or "District") and Hylant Administrative Services, LLC d/b/a HAS Claims Service ("Hylant") (Board and Hylant collectively, "Plaintiffs"), by and through their undersigned counsel, and hereby move this Court for summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. As set forth more fully in the accompanying Memorandum in Support, attached hereto and incorporated by reference herein, Plaintiffs are entitled to recover attorneys' fees and costs for numerous reasons including:

- The due process complaints filed by Defendants contained numerous false statements which were the premise for some claims;

- The due process complaints filed by Defendants alleged facts that, even if true, would not constitute a violation of the IDEA;

- The due process complaints filed by Defendants raised numerous legal issues that were outside the purview of the IDEA and thus outside the jurisdiction of the impartial hearing officer;

{02353707 -14}

- Defendants failed to produce evidence sufficient to support the essential elements of their case;

- Defendants continued to litigate claims after it became clear the claims were without merit;

- Defendants engaged in a course of conduct that protracted and needlessly increased the cost of litigation, including disregarding orders entered by the impartial hearing officer and filing unnecessary and unsupported motions;

- Defendants were, on many occasions, unable to articulate their client's claims or the relief sought and, as a result, engaged in a course of conduct that prolonged the litigation and led to the litigation of frivolous claims; and

- The District was the "prevailing party" under the IDEA with respect to *all* of the claims litigated by Defendants.

As more fully explained in the Memorandum in Support, there is no genuine issue of material fact for the Court's determination and Plaintiffs are entitled to judgment as a matter of law. Plaintiffs, therefore, seek a decision in their favor and an award of reasonable attorneys' fees and costs to the maximum extent permitted by law.

Respectfully submitted,

*/s/ Sara Ravas Cooper*
Christina Henagen Peer (Reg. No. 0071579)
    Email: cpeer@walterhav.com
    Direct Dial: 216-928-2918
Kathryn I. Perrico (Reg. No. 0076565)
    Email: kperrico@walterhav.com
    Direct Dial: 216-928-2948
Sara Ravas Cooper (Reg. No. 0076543)
    Email: scooper@walterhav.com
    Direct Dial: 216-928-2898
WALTER | HAVERFIELD LLP
1301 E. Ninth Street, Suite 3500
Cleveland, OH 44114
(216) 781-1212 telephone
(216) 575-0911 facsimile

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iv

STATEMENT OF THE ISSUE TO BE DECIDED ............................................. ix

SUMMARY OF ARGUMENTS PRESENTED ..................................................... x

MEMORANDUM IN SUPPORT ........................................................................... 1

I.       INTRODUCTION ...................................................................................... 1

II.     PROCEDURAL HISTORY ...................................................................... 1

III.    STATEMENT OF FACTS ....................................................................... 3

IV.    LAW AND ARGUMENT ......................................................................... 3

        A.      The Standard for Summary Judgment ...................................... 3

        B.      The IDEA's Fee Shifting Provision ........................................... 4

        C.      The Nordonia Hills City School District is the Prevailing Party and is Entitled to Seek Attorneys' Fees and Costs Pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III) ...................................................... 5

        D.      The Nordonia Hills City School District is Entitled to an Award of Attorneys' Fees and Costs Pursuant to the IDEA's Fee Shifting Provision .......... 6

        E.      The "Child Find" Claim Advanced and Litigated by Defendants was Frivolous, Unreasonable and Without Foundation ................................. 7

                1.   *The "Child Find" claim was based on an untrue "fact."* ............. 7

                2.   *The "Child Find" claim was so lacking in merit, it was frivolous and without foundation* ................................................................ 10

        F.      The Manifestation Determination Claim Litigated by Defendants was Frivolous and Without Foundation From the Outset ......................... 12

        G.      The "Placement" Claim Advanced by Defendants was Frivolous, Improper, and Without Foundation From the Outset .......................... 14

        H.      The Denial of FAPE Claim was Frivolous and Without Foundation ............ 16

I.    The Denial of "Educational Opportunities" Claim was Frivolous, Without Foundation and had Absolutely No Chance of Success ...................................... 20

J.    The "Bullying" Claim Included in the Due Process Complaints Filed by Defendants was Not Cognizable Under the IDEA and was, Therefore, Without Foundation ....................................................................................... 22

K.    The Numerous Factual Inaccuracies Contained in the Due Process Complaints Filed by Defendants Contributed to the Frivolous Nature of the Claims Asserted......................................................................................................... 22

L.    Defendants Included Claims Beyond the Jurisdiction of the IHO Which Were, by Definition, Frivolous and Without Foundation Under the IDEA ................... 24

M.   Prehearing Motions Filed by Defendants Asserted Unfounded and Frivolous Arguments and Unnecessarily Protracted and Increased the Cost of the Litigation................................................................................................... 26

       1.   *Defendants' Objection to All Prehearing Motions and Orders*...................... 26

       2.   *Defendants' Notice of Intent to Seek Reimbursement of Costs*...................... 28

N.    Defendants' Conduct Needlessly Increased the Cost of Litigation ..................... 28

       1.   *Defendants' Repeated Failure to Comply with the IHO's Orders* ................ 28

       2.   *Defendants' Overall Lack of Knowledge Resulted in the Pursuit of Frivolous Claims*........................................................................................ 30

O.    Defendants Rejected Reasonable Settlement Offers and Made an Unreasonable Settlement Demand........................................................................ 35

P.    The District's requested fee award is reasonable................................................ 37

       1.   *The District's Attorneys' Hourly Rates were Reasonable* .............................. 37

       2.   *The Hours Expended on Defending This Due Process Complaint Were Reasonable* .......................................................................................... 38

Q.    The Costs the District is Entitled to Recover Include Fees for the Court Reporter and Impartial Hearing Officer................................................................ 40

V.    CONCLUSION................................................................................................ 40

CERTIFICATE OF COMPLIANCE ..................................................................... 41

CERTIFICATE OF SERVICE ............................................................................... 42

# TABLE OF AUTHORITIES

## Cases

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) .............. 3

*Akron Bd. of Educ. v. Wallace,* No. 5:16CV188, 2017 WL 5654767
(N.D. Ohio Nov. 22, 2017) ........................................................................................... 40

*Amherst Exempted Vill. Sch. Dist. Bd. of Educ. v. Calabrese,* No. 1:07 CV 920,
2008 WL 2810244, at *12 (N.D. Ohio July 21, 2008) .................................................. 6, 18, 19

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............. 3

*Andrade v. Jamestown Housing Authority,* 82 F.3d 1179 (1st Cir. 1996) .......................................... 7

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,* 548 U.S. 291, 126 S.Ct. 2455,
165 L.Ed. 2d 526 (2006) ............................................................................................... 40

*Bd. of Educ. of Fayette Cty., Ky. v. L.M.,* 478 F.3d 307 (6th Cir. 2007) ...................................... 11

*Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176,
102 S.Ct. 3034, 73 L.Ed.2d. 690 (1982) .................................................................... 16

*Binta B. ex rel. S.A. v. Gordon,* 710 F.3d 608 (6th Cir. 2013) ...................................................... 37

*Braun v. Ultimate Jetcharters, Inc.,* No. 5:12CV1635, 2014 WL 546895
(N.D. Ohio Feb. 10, 2014) ............................................................................................ 7

*Bridges Pub. Charter Sch. v. Barrie,* 796 F. Supp. 2d 39 (D.D.C. 2011) ............................. 11, 12

*Celotex Corp. v. Myrtle Nell Catrell, Administratrix of Est. of Louis Catrett, Deceased,*
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986) ............................................. 4

*Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694,
54 L.Ed.2d. 648 (1978) .............................................................................................. 6, 14

*Coleman v. Nordonia Hills City Schools,* United States District Court,
Northern District of Ohio, Case No. 5:16-cv-02445-JRA ........................................ 1

*Covington v. Knox Cty. School Sys.,* 205 F.3d 912 (6th Cir.2000),
*amended on denial of reh'g* (May 2, 2000) ............................................................... 36

*Daughenbaugh v. City of Tiffin,* 150 F.3d 594 (6th Cir. 1998)........................................................ 3

*District of Columbia v. West,* 699 F.Supp.2d 273 (D.D.C. 2010) ............................................... 10

*E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 590 (6th Cir. 2013)...............................................6

*El Paso Independent Sch. Dist. v. Berry,* 400 Fed.Appx. 947, 2010 WL 4459735
    (5th Cir. 2010)...........................................................................................................5, 6

*Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988,
    197 L.Ed.2d 335 (2017) ...........................................................................................16

*Fox v. Vice*, 563 U.S. 826 (2011).........................................................................................7

*Geier v. Sundquist*, 372 F.3d 784 (6th Cir. 2004).............................................................37

*Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 Fed.Appx. 423 (6th Cir. 2016)..........37

*Gibson v. Forest Hills School Dist. Bd. of Educ.*, S.D.Ohio No. 1:11-CV-329,
    2014 WL 3530708 .....................................................................................................38

*Hall v. Knott Cty. Bd. of Educ.*, 941 F.2d 402, 406 (6th Cir.1991) ..................................36

*Hawkins v. Berkeley Unified Sch. Dist.*, 250 F.R.D. 459 (N.D. Cal. 2008)......................6

*Indep. Sch. Dist. of Boise City No. 1 v. Idaho State Educ. Agency*, 112 LRP 16142
    (Idaho State Educ. Agency 2012) ............................................................................24

*Jackson v. Nw. Local Sch. Dist.*, No. 1:09-CV-300, 2010 WL 3452333
    (S.D. Ohio Aug. 3, 2010), *report and recommendation adopted*, No. 1:09CV300,
    2010 WL 3474970 (S.D. Ohio Sept. 1, 2010) ...................................................13, 14

*LaPointe v. UAW, Local No. 600,* 8 F.3d 376 (6th Cir. 1993).............................................3

*M.L. v. El Paso Indep. Sch. Dist.*, No. 3:08-CV-76-KC, 2009 WL 2761681
    (W.D. Tex. Aug. 26, 2009) .........................................................................................6

*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348,
    89 L.Ed.2d 538 (1986)................................................................................................4

*Moore v. Crestwood Local Sch. Dist.*, 804 F.Supp. 960 (N.D.Ohio 1992) ......................37

*N.E. v. Hedges*, 391 F.3d 832 (6th Cir. 2004)...................................................................7

*Nack ex rel. Nack v. Orange City Sch. Dist.*, 454 F.3d 604 (6th Cir. 2006) .....................17

*Nat'l Enterprisers, Inc. v. Smith*, 114 F.3d 561 (6th Cir. 1997)........................................3

*Ousley v. Gen. Motors Retirement Program for Salaried Employees*, 496 F.Supp.2d 845 (S.D. Ohio 2006) .................................................................................................. 38

*Payne v. Board of Educ., Cleveland City Schools*, 88 F.3d 392 (6th Cir. 1996) ............................ 3

*R.W. ex rel M.W. v. Georgia Dep't of Educ.*, No. 1:07-CV-535 WSD, 2007 WL 2915911 (N.D. Ga. Oct. 4, 2007) ................................................................. 26

*R.W. v. Georgia Dep't of Educ.*, 353 F. App'x 422 (11th Cir. 2009) ........................................... 26

*Silva v. D.C.*, 57 F.Supp.3d 62 (D. D.C. 2014) .......................................................................... 27

*Smith v. Smythe-Cramer Co.*, 754 F.2d 180, (6th Cir. 1985) ......................................................... 7

*Stancourt v. Worthington City Sch. Dist. Bd. of Educ.*, 164 Ohio App.3d 184, 2005-Ohio-5702, 841 N.E.2d 812 (10th Dist.) ............................................................. 27

*Studio A Entertainment, Inc. v. Action DVD*, 658 F.Supp.2d 851 (N.D. Ohio 2009) .................. 38

*Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182 (11th Cir.1985) ...................................... 10

*Waters v. City of Morristown*, 242 F.3d 353 (6th Cir. 2001) ......................................................... 4

*Wayne v. Village of Sebring*, 36 F.3d 517 (6th Cir. 1994) ........................................................... 39

*Winkelman v. Parma City Sch. Dist.*, No. 1:08 CV 2135, 2009 WL 1444441 (N.D. Ohio May 22, 2009) .......................................................................... 38, 39

*Z.F. ex rel. M.A.F. v. Ripon Unified Sch. Dist.*, 2011 WL 320249 (E.D. Cal. 2011) ................... 24

**Statutes**

20 U.S.C. § 1400 ......................................................................................................................... 1

20 U.S.C. § 1412(a)(1) .............................................................................................................. 20

20 U.S.C. § 1412(a)(3)(a) ........................................................................................................... 8

20 U.S.C. § 1414(k)(5)(A) ......................................................................................................... 12

20 U.S.C. § 1415(i)(2)(C)(iii) .................................................................................................... 36

20 U.S.C. § 1415(i)(3)(B)(i)(I) .................................................................................................... 4

20 U.S.C. § 1415(i)(3)(B)(i)(II) ......................................................................................... 4, 6, 10

20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III) ................................................ 1, 5, 6, 40

20 U.S.C. § 1415(i)(3)(B)(i)(III) ...................................................................... 4

20 U.S.C. § 1415(i)(3)(F) ............................................................................... 37

20 U.S.C. § 1415(i)(3)(F)(ii) .......................................................................... 37

20 U.S.C. § 1415(k)(5)(B) .............................................................................. 13

20 U.S.C. §§ 1415(b)(6), (f) ........................................................................... 25

20 U.S.C. 1415 ................................................................................................ 31

20 U.S.C. 1415(k)(5)(D)(i) ............................................................................. 13

28 U.S.C. § 1920 ............................................................................................. 40

28 U.S.C. § 1920 (2)-(4) ................................................................................. 40

34 C.F.R. § 300.507(a)(1) ............................................................................... 24

34 C.F.R. § 300.517(a) .................................................................................... 28

34 C.F.R. § 300.114 ........................................................................................ 14

34 C.F.R. §300.115 ......................................................................................... 14

34 C.F.R. §300.116 ......................................................................................... 14

Fed. R. Civ. P. 56(c) ......................................................................................... 3

O.A.C. § 3301-51-05(K)(7)(a)(i) ................................................................... 24

O.A.C. 3301-51-02(A)(1)(a) ............................................................................ 8

O.A.C. 3301-51-02(B)(1) ............................................................................... 20

O.A.C. 3301-51-05(C)(2)(a) ........................................................................... 16

O.A.C. 3301-51-05(K) .................................................................................... 27

O.A.C. 3301-51-05(K)(16) ............................................................................. 28

O.A.C. 3301-51-51(K)(12) ............................................................................. 27

O.R.C. § 3323.05 ................................................................................................ 24

**Other Authorities**

150 Cong. Rec. S5349 (daily ed. May 12, 2004) (statement of Sen. Grassley) ............................ 5

150 Cong. Rec. S5349-50 (daily ed. May 12, 2004) ................... 6

H.R. 1350, 108th Cong. (as passed by Senate, May 13, 2004).................................... 6

*Upper Arlington City School District*, No. SE-1380-2003 (OH DOE 2004) .............................. 24

*Wilmington City Schools*, SE-2804-2013E (OH DOE 2013) ...................................................... 24

## STATEMENT OF THE ISSUE TO BE DECIDED

1. Whether Plaintiff, the Nordonia Hills City School District Board of Education, as the prevailing party in a due process action brought pursuant to the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA") and its insurer, Plaintiff, Hylant Administrative Services, LLC d/b/a HAS Claims Service, are entitled to an award of attorneys' fees and costs against Defendants, Jason Wallace, Esq., Daniel Bache, Esq., and Wallace & Bache LLC, pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II) and/or (III)?

## SUMMARY OF ARGUMENTS PRESENTED

1. The Nordonia Hills City School District Board of Education is entitled to an award of attorneys' fees and costs against Defendants based on the IDEA's fee shifting provision. This provision allows for a school district that is the prevailing party to receive an award of attorneys' fees where an administrative proceeding was "frivolous, unreasonable or without foundation" when initiated, or where the attorney continued to litigate after the litigation clearly became "frivolous, unreasonable or without foundation." *See* 20 U.S.C. § 1415(i)(3)(B)(i)(II).

2. Defendants, Jason Wallace and Daniel Bache, initiated a due process complaint against the District on behalf of Angela Coleman and her minor son. The complaint was, at its inception, completely frivolous and lacked any legal or factual foundation. In bringing claims against the District, Defendants ignored both the plain language of the IDEA and well-settled Sixth Circuit precedent. Claims asserted in the due process complaint were premised on untrue "facts" that, during the course of the hearing were contradicted by numerous witnesses – including Defendants' client. Further, during the hearing, Defendants failed to introduce evidence that, even if credited by the impartial hearing officer ("IHO"), would have resulted in a finding in favor of their client. Had Defendants conducted any sort of reasonable investigation prior to initiating the due process complaint, it would have been clear that the asserted claims were frivolous, unreasonable and without foundation.

3. The due process complaint filed by Defendants was also frivolous, unreasonable and without foundation when initiated in that it contained numerous claims over which the IHO had no jurisdiction – specifically, claims under Section 504 of the Rehabilitation Act of 1973, claims for "retaliation" and claims for "bullying." Contrary to Defendants' contention, exhaustion of administrative remedies is not an excuse to bring meritless claims under the IDEA. Defendants' assertion of multiple claims that were outside the IHO's jurisdiction led to unnecessary pre-hearing motion practice and wasted time during the hearing. Likewise, Defendants attempts to bring their claims of "bullying" and "retaliation" under the purview of the IDEA were frivolous and unreasonable because there was no evidence to link these claims to the student's receipt of a free appropriate public education ("FAPE"). Indeed, all of the alleged "bullying" and "retaliation" occurred before the student was even eligible as a student with a disability under the IDEA.

4. Defendants, Jason Wallace, Daniel Bache, and Wallace & Bache LLC, also continued to litigate the claims in the due process complaint after it became clear that the claims were frivolous, unreasonable and without foundation. Defendants had access to all of the information necessary to ascertain that the claims raised were not supported by the evidence. Specifically, Defendants had access to their clients' records, the student's treating psychologist's records, and the student's educational records. Defendants' failure to investigate and utilize the information available led to the filing of a frivolous due process complaint. Even more egregious was Defendants' continued litigation of these claims when, during the course of the hearing, their own clients'

testimony did not support their claims. Instead of withdrawing these baseless claims, Defendants continued to litigate them, needlessly protracting and increasing the cost of the litigation. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(II-III).

5.  Defendants' conduct during the course of the administrative proceeding was unreasonable and needlessly increased the cost of the litigation. This conduct included their repeated failure to comply with the IHO's orders, the filing of numerous motions that were not supported by any relevant law, and their lack of even a rudimentary understanding of the claims they were asserting or the underlying factual basis for these claims. . *See* 20 U.S.C. § 1415(i)(3)(B)(i)(II-III).

6.  The District is entitled to an award of attorneys' fees incurred in defending the due process action. The hourly rates charged by the District's attorneys are reasonable and are lower than the prevailing rates in the community. Further, the number of hours expended in the defense of the due process action are reasonable given the amount of pre-hearing motion practice, the length of the hearing and the complexity of the issues involved. The District is also entitled to recover the funds expended on the costs of the court reporter and the IHO in the due process hearing. Recovery of these "costs" is contemplated by 20 U.S.C. § 1415(i)(3)(B)(i) and is supported by relevant precedent.

<u>**MEMORANDUM IN SUPPORT**</u>

## I.    **INTRODUCTION**

Here, as the administrative record makes clear, Defendants, Jason Wallace, Daniel Bache and Wallace & Bache LLC (all collectively, "Defendants"), engaged in a course of conduct that was frivolous and unreasonable by pursuing claims against the District that were clearly without foundation.  Further, their conduct, throughout the course of the litigation, needlessly increased the cost of the litigation.  Consequently, the District is entitled to an award of reasonable attorney fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III).

## II.    **PROCEDURAL HISTORY**

On or about May 5, 2015, Defendants, on behalf of their clients, Angela Coleman and Ms. Coleman's minor son, filed a due process complaint pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400, *et seq*. ("IDEA") against the Nordonia Hills City School District Board of Education ("District").[1]  On May 8, 2015, Irene H. McMullen was appointed as the impartial hearing officer.[2]  On or about May 13, 2015, Defendants filed a first amended IDEA due process complaint against the District.[3]  On September 15, 2015, Defendants filed a motion with IHO McMullen seeking leave to file a second amended due process complaint.[4]  The Second Amended Complaint was accepted as filed on September 17, 2015.[5]

---

[1]  *See* ECF #11 (Certification of Records of Administrative Proceedings filed by the Ohio Department of Education) in the related case of *Coleman v. Nordonia Hills City Schools*, United States District Court, Northern District of Ohio, Case No. 5:16-cv-02445-JRA.  *See also* Record of Administrative Proceedings ("Admin. Record"), at File Folder 3 of 4, Item No. 1 (*see* ECF #11).

[2]  Admin. Record at File Folder 3 of 4, Item No. 1. Further, in Ohio, "Impartial Hearing Officer" or "IHO" is the term utilized to the administrative law judge who presides over an IDEA due process hearing.

[3]  Admin. Record at File Folder 3 of 4, Item No. 1.

[4]  *Id.*

[5]  Admin. Record at File Folder 3 of 4, Item No. 1.

{02353707 -14}                                    1

A due process hearing on the issues raised in the second amended due process complaint was held on January 12, 13, 20, 21, 22, 25 and 30, 2016, as well as March 1 and 2, 2016.[6]  A final day of hearing was held on March 17, 2016 for the purpose of admitting exhibits.[7]  Briefing was completed thereafter and, on May 2, 2016, IHO McMullen issued her Final Decision.[8]  In the Final Decision, the IHO found in favor of the District on all claims.[9]  On June 15, 2016, Defendants, on behalf of their client, appealed the IHO's Final Decision.[10]  On June 21, 2016 the District filed its *Motion to Dismiss*.[11]  On June 26, 2016, Defendants filed a *Response to the Board's Motion to Dismiss or, in the Alternative, Motion to Amend Notice of Appeal*.[12]  On July 1, 2016, the District filed its *Reply and Opposition*.[13]  On July 7, 2016, the SLRO issued an *Order Dismissing Petitioner's Appeal*.[14]  On October 5, 2016, Angela Coleman, *pro se*, appealed the SLRO's dismissal of her appeal to this Court.[15]  Ms. Coleman's appeal remains pending before this Court (United States District Court, Northern District of Ohio, Case No. 5:16-cv-02445-JRA).

---

[6]    Admin. Record at File Folder 4 of 4, Item Nos. 2 – 10.

[7]    Admin. Record at File Folder 4 of 4, Item No. 11 at p. 1534.

[8]    Admin. Record at File Folder 1 of 4, Item No. 3.

[9]    *Id.*

[10]   Admin. Record at File Folder 1 of 4, Item Nos. 4 – 5.  Although the Ohio Department of Education's *Certification of Records of Administrative Proceedings* provides a June 16, 2016 date for this document, it was, in fact, served upon District counsel on June 15, 2016.

[11]   Admin. Record at File Folder 1 of 4, Item No. 6.

[12]   *Id.*

[13]   *Id.*

[14]   Admin. Record at File Folder 1 of 4, Item No. 2.

[15]   Admin. Record at File Folder 1 of 4, Item No. 1.  Although Ms. Coleman filed her appeal *pro se*, it was apparent that the Complaint was drafted by an attorney.  At the December 22, 2016, Case Management Conference, when questioned by the Court, Defendant Bache admitted to having drafted Ms. Coleman's Complaint.

III.    **STATEMENT OF FACTS**

The facts in the underlying administrative matter are relevant to the extent they demonstrate the unsupported and frivolous nature of the claims advanced and litigated by Defendants.    Relevant facts are included throughout Plaintiffs' Memorandum in Support. Further factual background is available to the Court in the IHO's Final Decision and the Post-Hearing Briefs filed in the underlying matter.[16]

IV.    **LAW AND ARGUMENT**

A.    **The Standard for Summary Judgment.**

Summary judgment is appropriate when, after considering all the evidence in a light most favorable to the non-moving party, there is no genuine issue of material fact which remains in dispute and the moving party is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Payne v. Board of Educ., Cleveland City Schools,* 88 F.3d 392, 397 (6th Cir. 1996); Fed. R. Civ. P. 56(c).  A fact is "material" only if its establishment might affect the outcome under governing law.  *See Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998), citing *Anderson,* 477 U.S. at 248.  Where reasonable minds could come to but one conclusion, and that conclusion is adverse to the non-moving party, the moving party is entitled to judgment.  *See LaPointe v. UAW, Local No. 600,* 8 F.3d 376, 378 (6th Cir. 1993).

When deciding a motion for summary judgment, a court views the factual evidence and draws all reasonable inferences in favor of the non-moving party.  *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Nat'l Enterprisers, Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997).    The moving party bears the initial burden of

---

16    Admin. Record at File Folder 1 of 4, Item No. 3; Admin. Record at File Folder 3 of 4, Item No. 2 at pp. 1-57.

{02353707 -14}                                          3

demonstrating the absence of a genuine issue of material fact with regard to an essential element of the non-moving party's case. *See Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). Once the moving party satisfies its burden, the non-moving party must set forth specific facts to demonstrate a triable issue. *See Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must show more than the existence of a doubt or some metaphysical doubt as to the material facts. *See Celotex Corp. v. Myrtle Nell Catrell, Administratrix of Est. of Louis Catrett, Deceased,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986). When there is "a complete failure of proof concerning an essential element of the nonmoving party's case," all other facts are rendered immaterial and the issue of a factual dispute will be considered resolved. *Id.* at 323.

**B.      The IDEA's Fee Shifting Provision.**

Under the IDEA's fee shifting provision, when parents of students with disabilities pursue administrative proceedings under IDEA and prevail, they are entitled to recover reasonable attorneys' fees incurred. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I). Similarly, where a local education agency ("LEA") (*i.e.*, a school district) is the prevailing party, it may recover reasonable attorneys' fees and costs from a parent's attorney where the administrative proceeding was "frivolous, unreasonable or without foundation" when initiated, or where the attorney continued to litigate after the litigation clearly became "frivolous, unreasonable or without foundation." *See* 20 U.S.C. § 1415(i)(3)(B)(i)(II). A prevailing LEA may also recover attorneys' fees from the parent's attorney where the action "was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 20 U.S.C. § 1415(i)(3)(B)(i)(III).

The IDEA provisions allowing LEAs to recover attorneys' fees were intended to "give

school districts a little relief from abuses of the due process rights found in IDEA and ensure that our taxpayer dollars go toward educating children, not lining the pockets of unscrupulous trial lawyers." 150 Cong. Rec. S5349 (daily ed. May 12, 2004) (statement of Sen. Grassley).  Indeed, Senate testimony regarding this provision concerned the damaging effect of frivolous or improper IDEA litigation on school districts:

> This amendment would not discourage any parent from pursuing any legitimate complaint, even if the parent might ultimately lose the case....However, frivolous due process complaints under IDEA abuse the rights of parents and hurt children. When a school district must spend money to defend against frivolous cases, it drains funds away from needed services for other disabled children.

150 Cong. Rec. 55349 (daily ed. May 12, 2004) (statement of Sen. Grassley).  Stated differently, the purpose of allowing a fee award is to deter frivolous cases and unreasonably demanding or litigious parents and their attorneys. *See generally El Paso Independent Sch. Dist. v. Berry*, 400 Fed.Appx. 947, 953-54, 2010 WL 4459735 (5th Cir. 2010).

### C. The Nordonia Hills City School District is the Prevailing Party and is Entitled to Seek Attorneys' Fees and Costs Pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III).

The District is clearly the prevailing party in the underlying administrative action. Defendants, on behalf of their clients, asserted a multitude of claims against the District.  The second amended due process complaint listed seven issues: (1) violation of "child find;" (2) denial of FAPE; (3) unlawful retaliation; (4) unlawful bullying and harassment; (5) denial of "educational opportunities;" (6) failure to conduct a manifestation determination; and (7) improper placement.[17]  Ultimately, the IHO's Final Decision concluded that the petitioner did not meet her burden of proof with respect to *any* of her claims; thus, no relief was awarded to the petitioner.  As a result, the District is clearly the prevailing party and may

---

17  As detailed more fully below, not all of these issues are cognizable under the IDEA and some were not addressed by the IHO in her Final Decision for that reason.

seek relief pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III).

> **D.** **The Nordonia Hills City School District is Entitled to an Award of Attorneys' Fees and Costs Pursuant to the IDEA's Fee Shifting Provision.**

The IDEA's legislative history makes clear that Congress intended for the standard enunciated by the United States Supreme Court in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22, 98 S.Ct. 694, 54 L.Ed.2d. 648 (1978) to be utilized in determining whether a prevailing school district is entitled to a fee award. *See* 150 Cong. Rec. S11654-S11655 (daily ed. Nov. 19, 2004) (statements of Sen. Kennedy and Sen. Gregg).[18]  In *Christiansburg*, the Court explained that a court may award attorneys' fees to a prevailing party defendant if the plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 590–91 (6th Cir. 2013), *citing Christiansburg*, 434 U.S. at 422. The *Christiansburg* standard has been applied to IDEA fee claims brought by school districts by various courts – including the Northern District of Ohio. *See Amherst Exempted Vill. Sch. Dist. Bd. of Educ. v. Calabrese*, No. 1:07 CV 920, 2008 WL 2810244, at *12 (N.D. Ohio July 21, 2008); *see also M.L. v. El Paso Indep. Sch. Dist.*, No. 3:08-CV-76-KC, 2009 WL 2761681, at *3 (W.D. Tex. Aug. 26, 2009), *aff'd sub nom. El Paso Indep. Sch. Dist. v. Berry*, 400 F. App'x 947 (5th Cir. 2010); *Hawkins v. Berkeley Unified Sch. Dist.*, 250 F.R.D. 459, 464–65 (N.D. Cal. 2008) (citations omitted).

In applying this standard in other contexts, the Sixth Circuit has noted:

---

18  The 2004 Senate Bill reauthorizing the IDEA, H.R. 1350, 108th Cong. (as passed by Senate, May 13, 2004), applied the Supreme Court's decision in *Christiansburg,* 434 U.S. 412, to IDEA cases, thereby allowing prevailing defendant school districts to recover their attorneys' fees if the parents' due process complaint or subsequent court case was "frivolous, unreasonable, or without foundation" or if the parents acted with an "improper purpose" in filing it. The final law, amending the IDEA in 2004, incorporated the Senate's position. *See* H.R. 1350, 108th Cong. (as passed by Senate, May 13, 2004); 150 Cong. Rec. S5349-50 (daily ed. May 12, 2004) statement of Sen. Gregg); 20 U.S.C. 1415(i)(3)(B)(i)(II).

> [C]ourts have awarded attorneys fees to prevailing defendants where no evidence supports the plaintiff's position or the defects in the suit are of such magnitude that the plaintiff's ultimate failure is clearly apparent from the beginning or at some significant point in the proceedings after which the plaintiff continues to litigate.

*Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985). Making this determination "requires inquiry into the plaintiff's basis for filing suit" and "awards to prevailing defendants will depend on the factual circumstances of each case." *Braun v. Ultimate Jetcharters, Inc.*, No. 5:12CV1635, 2014 WL 546895, at *3 (N.D. Ohio Feb. 10, 2014) (citations omitted). A finding of "bad faith" is not required. *See N.E. v. Hedges*, 391 F.3d 832, 836 (6th Cir. 2004) (citation omitted). Likewise, a prevailing party defendant need not prove that all of the plaintiff's claims were frivolous in order to recover attorneys' fees. *See Fox v. Vice*, 563 U.S. 826, 834 (2011); *Andrade v. Jamestown Housing Authority*, 82 F.3d 1179 (1st Cir. 1996) (attorneys' fees awarded to defendants even though only two of three claims were frivolous when brought).

Here, the facts and circumstances giving rise to the instant case demonstrate that Defendants brought claims against the District that were frivolous, unreasonable, and without foundation from the outset of the litigation and that they continued to litigate these claims. As a result, the District is entitled to an award of attorneys' fees and costs.

### E. The "Child Find" Claim Advanced and Litigated by Defendants was Frivolous, Unreasonable and Without Foundation.

#### 1. *The "Child Find" claim was based on an untrue "fact."*

The "child find" claim[19] included in the second amended due process complaint was frivolous, unreasonable and without foundation when filed because it was based entirely on "facts" that were not true. "Child Find" refers to a school district's obligation under the IDEA to

---

19    The "child find" claim was the cornerstone of the due process complaints filed by Defendants because, absent a finding in favor of the petitioner on the "child find" claim, the claims related to the District's obligation to conduct a manifestation determination and to address "bullying" also failed.

identify, locate, and evaluate children within its borders who have a disability and need special education and related services. *See* 20 U.S.C. § 1412(a)(3)(a); O.A.C. 3301-51-02(A)(1)(a). The second amended due process complaint alleged:

> The Student's mother "asked for a team to be convened to evaluate [student] in the eight [sic] grade, but the team declined to do so despite evidence being presented that [student] had Migraines that caused temporary blindness and [student] was struggling to cope with bullying."[20]

At the September 16, 2015 Disclosure Conference, Defendant Wallace repeatedly stated that a "meeting" to discuss whether the student should be evaluated took place during the student's 8th grade year.[21]

> THE HEARING OFFICER: All right. So can someone quickly find when there was a -- is there a prior evaluation, *a prior request for evaluation*?
>
> MR. WALLACE: *I believe there was a prior meeting that a team convened at the end of eighth grade*.
>
> MS. PEER: We don't have any information that supports that conclusion.
>
> THE HEARING OFFICER: A team including the school district?
>
> MR. WALLACE: Yes. And I'm including school district personnel when I'm saying "a team." *I'm saying an IEP team to decide to evaluate or not to evaluate. I believe they did do that and that they never decided to ultimately evaluate.*
>
> THE HEARING OFFICER: Just to be clear, a team in this school district?
>
> MR. WALLACE: Yes, ma'am.
>
> THE HEARING OFFICER: Do you have documents relating to that meeting?
>
> MR. WALLACE: *No, I don't have documents with me regarding that. But I do know that that is something that we will produce testimony on at the very least.* And I believe we do have some documents regarding that, but I'm sure that there will be plenty of testimony regarding that one way or the other.
>
> THE HEARING OFFICER: Just so I'm clear on the issue, in eighth grade, the parent sent a letter; is that right?
>
> MR. WALLACE: MR. WALLACE: *I believe they didn't send a letter, but I know they did ask for an evaluation. The team did convene. . . .* So the parents

---

20   Admin. Record at File Folder 3 of 4, Item No. 1, pp. 448-450.

21   Admin. Record at File Folder 4 of 4, Item No. 1 at p. 25.

had a friend that is an educator out in -- from out of town. ***They had a meeting. They had that educator with them, and they talked about these things.*** And the school ultimately decided not to evaluate him under any code section.[22]

During this discussion, counsel for the District advised the IHO and Defendant Wallace that the District had gathered all of the Student's educational records and that no records of the "meeting" referenced by Defendant Wallace existed.[23]  In response, Defendant Wallace stated:

> MR. WALLACE: ***The petitioner will state that she believed that that was the purpose of this meeting, whatever we classify this meeting as, that she believed that it was there to decide -- she was looking for an IEP for her child.*** And that was what she thought the intent and what the meeting purpose was and that she talked about that.  And they discussed his issues and his disabilities or other things that are affecting his school performance.  That was her thought regarding the meeting.  ***We have eighth grade witnesses on here that were teachers of [student] that we certainly -- that we believe will elicit that testimony.***
>
> THE HEARING OFFICER: Teachers who were at the meeting?
>
> MR. WALLACE: Yes, ma'am.
>
> MS. PEER: Who from the district do you believe was at the meeting?
>
> MR. WALLACE: I'd like to tell you that I've been in the office the last couple weeks.  I've been sick and I haven't been in the office.  I didn't compile the witness list, so I can't tell you who it was or what they do, but I know we talked about that and that there were discussions regarding it and that some of the people that we have subpoenaed or have subpoenas attached on our witness list are eighth grade personnel that will have that information, is what we believe.[24]

The utter fallacy of this allegation was proven during the due process hearing.  None of the student's 8th grade teachers testified that the alleged "meeting" occurred.[25]  Moreover, the student's mother testified that the first – ***and only*** – time she requested that the student be evaluated was on March 24, 2015 – during the student's 9th grade year.[26]  The student's mother also testified that during the student's 8th grade year, her sister-in-law spoke to a District administrator via phone, and

---

22  Admin. Record at File Folder 4 of 4, Item No. 1 at pp. 26-27.

23  Admin. Record at File Folder 4 of 4, Item No. 2 at p. 29.

24  Admin. Record at File Folder 4 of 4, Item No. 1 at p. 30.

25  Admin. Record at File Folder 4 of 4, Item No. 2 at pp. 284, 346, 379, 427-428; Item No. 5 at pp. 738-739; Item No. 6 at p. 889.

26  Admin. Record at File Folder 4 of 4, Item No. 7 at pp. 1091-1092.

that the student's mother "assum[ed] that their whole conversation was about IEP."[27]  This is a far cry from the allegation advanced by Defendants that the parent requested an evaluation during the student's 8th grade year, that a team meeting was definitively held, and that the District refused to evaluate the student.

Clearly, Defendants knew, or should have known, that the meeting allegation was false. Nevertheless, they did not withdraw their child find claim, nor did they seek to correct the untrue factual allegation.  Instead, they pressed forward and forced the District to litigate the claim that was based on allegations that were patently untrue.  These actions support an award of attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II).  *See Capital City Pub. Charter Sch. v. Gambale*, 27 F. Supp. 3d 121, 137-38 (D.D.C. 2014) (awarding attorney fees to school district based on false allegations in due process complaint and court's finding that "at no point in the litigation, were the allegations of delay set forth in the IDEA complaint 'plausible, though ultimately unsuccessful.'") (internal citation omitted).

### 2. The "Child Find" claim was so lacking in merit, it was frivolous and without foundation.

Further, the "child find" claim was not supported by any probative evidence and did not stand any chance of success.  When determining whether an attorney filed or continued to litigate a due process complaint that was "frivolous, unreasonable, or without foundation" courts focus "on the merits of the case rather than its outcome.  That is, whether the IDEA complaint at the time it was filed was, or later became, 'so lacking in arguable merit as to be groundless or without foundation.'" *Gambale*, 27 F. Supp. 3d at 133 *quoting District of Columbia v. West,* 699 F.Supp.2d 273, 279 (D.D.C. 2010) (quoting *Sullivan v. Sch. Bd. of Pinellas Cnty.,* 773 F.2d 1182, 1189 (11th Cir.1985)).  Here, the facts make clear that the "child find" claim was

---

27  Admin. Record at File Folder 4 of 4, Item No. 7 at p. 1091.  The student's mother was not a party to this conversation and no testimony from the sister-in-law was ever offered.  *Id.*

groundless.

In the Sixth Circuit, it is well-settled that to prove a "child find" violation, a petitioner must show that "school officials overlooked ***clear signs of disability*** and were negligent in failing to order testing, or that there was no rational justification for not deciding to evaluate." *Bd. of Educ. of Fayette Cty., Ky. v. L.M.*, 478 F.3d 307, 313 (6th Cir. 2007) (emphasis added). Here, beyond the false "meeting" allegation, the "child find" claim litigated by Defendants was based on:

- the fact that the student had migraines in 7th grade;
- the student's disciplinary infractions in the 7th, 8th and 9th grades; and
- alleged bullying.[28]

Notably, the IHO accepted the testimony that the student had migraines in 7th grade, that he had various disciplinary infractions, and that his mother testified to instances of bullying.[29] However, the IHO found that ***none*** of these items, standing alone or "even when viewed together" would "constitute clear signs of a disability, which would have constituted a child find trigger."[30] Thus, the facts as alleged, even if true, could not amount to a "child find" violation under Sixth Circuit precedent, making this claim groundless from the outset.

As was the case in *Bridges Pub. Charter Sch. v. Barrie*, 796 F. Supp. 2d 39, 48–49 (D.D.C. 2011), there is nothing in the instant administrative record to indicate that Defendants' "child find" claim became less frivolous as the litigation proceeded. Rather, the groundless nature of the claim became even more evident as the administrative process continued. The

---

28    Admin. Record at File Folder 1 of 4, Item No. 3 at pp. 19-20.  It is difficult to ascertain whether the bullying arguments advanced by Defendants were based on the allegations that the Student was bullied (as set forth in the due process complaints) or because the Student bullied others.  The post-hearing brief submitted by Defendants argues that a school district's child find obligation could be triggered when a student engages in bullying. Admin. Record at File Folder 3 of 4, Item No. 1 at p. 5.

29    Admin. Record at File Folder 1 of 4, Item No. 3 at pp. 20-21.

30    Admin. Record at File Folder 1 of 4, Item No. 3 at pp. 20-21.

{02353707 -14}                                                                11

student's mother testified he only missed 4.5 days of school during 7th grade due to migraines and there was no evidence the migraines continued during 8th and 9th grade.[31]  Further, numerous educators testified that the student's behaviors were "typical" for a student his age.[32]  Additionally, Defendants did not introduce any evidence linking the "bullying" allegations to a suspected disability.[33]  Applying an objective standard, this evidence does not demonstrate the "clear signs of a disability" necessary for a viable "child find" claim.  Consequently, this claim was frivolous and without foundation and Defendants' continued litigation of this claim entitles the District to an award of attorneys' fees.  *See Barrie*, 796 F. Supp. 2d at 48–49.

### F.  The Manifestation Determination Claim Litigated by Defendants was Frivolous and Without Foundation From the Outset.

The second amended due process complaint alleged the District violated the IDEA when it did not conduct a manifestation determination review ("MDR") in conjunction with the student's March 2, 2015 disciplinary removal.  A student is eligible for an MDR if he is identified as a student with a disability under the IDEA or if the school district has "knowledge" that a student has a disability "*before* the behavior that precipitated the disciplinary action occurred." 20 U.S.C. § 1414(k)(5)(A) (emphasis added).  A school district is deemed to have the requisite knowledge in three limited – and very specific – circumstances.  *See* 20 U.S.C. §

---

31  Admin. Record at File Folder 4 of 4, Item No. 7 at p. 1016; Admin. Record at File Folder 1 of 4, Item No. 3 at p. 20.  Although Defendants alleged that the student suffered from migraines so severe that they "caused temporary blindness," they introduced absolutely no evidence to support this claim.  The only reference in the transcript to "blindness" is an unsubstantiated statement by Defendant Wallace during the Disclosure Conference that the student's migraines caused "temporary blindness."  Admin. Record at File Folder 4 of 4, Item No. 1 at p. 27.  No medical evidence whatsoever regarding migraines was introduced during the due process hearing.

32  Admin. Record at File Folder 4 of 4, Item No. 2 at pp. 126, 155; Item No. 9 at p. 1329.  The student was disciplined for issues such as use of profane language, horseplay in the halls, disrespect, and physical altercations.  Admin. Record at File Folder 4 of 4, Item No. 12 at pp. NOR0200-NOR0209.  Defendants had access to information regarding the nature of the disciplinary incidents prior to the due process hearing based on the student's educational records.

33  Admin. Record at File Folder 1 of 4, Item No. 3 at pp. 4-5.  Rather, as evidenced by the due process hearing transcript, they seemed to argue that any student who is bullied is disabled.  There is clearly no rational basis for this conclusion.

1415(k)(5)(B).  If none of these exceptions are met, the student is not entitled to a manifestation determination review.  *See* 20 U.S.C. 1415(k)(5)(D)(i).

Here, it is undisputed that the student was not eligible under the IDEA at the time of the March 2, 2015 disciplinary removal.  Moreover, Defendants did not produce ***any*** evidence supporting application of the "knowledge" exception.  Indeed, the student's mother testified she did not request an evaluation until several weeks "after the fight" that led to the disciplinary removal.[34]  As the IHO concluded:

> Regarding the circumstances in which the School District would be deemed to have knowledge of a disability, there was ***no evidence presented*** that Parents expressed a concern in writing that Student needed special education.  ***None of the Student's teachers expressed such specific concerns regarding a pattern of behavior to district supervisory personnel either.***[35]  (Emphasis added.)

Clearly, the MDR claim should not have been advanced in the first instance.

Ignoring the clear statutory language with respect to "knowledge," Defendants instead asserted that the District "should be deemed to have knowledge of a suspicion of a disability" based on (1) multiple disciplinary incidents; (2) email about migraines; (3) consistently being bullied and harassed; and (4) student's reporting of mental health concerns.[36]  This argument clearly falls outside the exceptions outlined in the IDEA.  *See* 20 U.S.C. § 1415(k)(5)(B).  Moreover, Defendants failed to cite or offer any legal authority in support of an expansion of the IDEA's plain language.[37]  As there was no statutory or legal support Defendants' argument, the

---

34   Admin. Record at File Folder 4 of 4, Item No. 7. at pp. 1091-92; Item No. 5. at pp. 806, 834.  *See also* Admin. Record at File 4 of 4, Item No. 12 at Dist. Ex. E; Item No. 13 at Pet. Ex. A at Coleman 202.

35   Admin. Record at File Folder 1 of 4, Item No. 3 at pp. 23-24.

36   Admin. Record at File Folder 1 of 4, Item No. 3 at p. 23.  *See also* Admin. Record at File Folder 3 of 4, Item No. 1 at p. 10.

37   The Post-Hearing Brief submitted by Defendants cites several cases regarding the requirement of a manifestation determination.  Most notably, Defendants cite *Jackson v. Nw. Local Sch. Dist.*, No. 1:09-CV-300, 2010 WL 3452333, at *9-10 (S.D. Ohio Aug. 3, 2010), *report and recommendation adopted*, No. 1:09CV300, 2010 WL 3474970 (S.D. Ohio Sept. 1, 2010) for the proposition that "a student's behaviors caused reason for district to know and have suspicion of a disability and require a [manifestation determination review]."  Admin. Record at File

claim they advanced was frivolous and without foundation and is precisely the type of claim that the IDEA, and *Christiansburg*, seek to deter. *See Christiansburg*, 434 U.S. 412 at 420 (noting one purpose of allowing an award of fees to a prevailing party defendant was to "protect defendants from burdensome litigation having no factual or legal basis").

**G.    The "Placement" Claim Advanced by Defendants was Frivolous, Improper, and Without Foundation From the Outset.**

The "placement" claim brought by Defendants was also doomed from the start because Defendants' definition of "placement," which formed the basis of their claim, was fundamentally incorrect. A student's "placement" under the IDEA is a term of art. It does not refer to a physical location (*e.g.*, one school building or school district vs. another). Rather, it refers to where a student receives services on the continuum of placement options, in conformity with the least restrictive environment requirements of the IDEA. *See* 34 C.F.R. §§ 300.114; 300.115, 300.116. At the start of the hearing, the IHO attempted to clarify the "placement" issue.

> THE HEARING OFFICER: I'm trying to understand context for the testimony I'm about to hear. So what is your concern about the student's current placement?
>
> MR. WALLACE: That it's not the appropriate or proper placement where he's at currently.
>
> THE HEARING OFFICER: Why?  What is inappropriate about it?
>
> MR. WALLACE: That it's not -- it's not the right place that he should be placed at, that it's not -- there should have been alternative places that should have been -- that he should have been placed at, discussed, explored that he was not.
>
> THE HEARING OFFICER: What do you believe the student's appropriate placement is?
>
> MR. WALLACE: A different school, and we are looking for an alternative placement for [student] that we don't feel that Nordonia High School is the correct

---

Folder 1 of 4, Item No. 3 at p. 5 (brackets in original). While this is factually accurate, the case is not analogous to the facts and circumstances in the underlying administrative proceedings. In *Jackson*, the student had been referred to the school's intervention assistance team and staff members expressed "3 major behaviors of concern" and referred the student to an outside mental health agency. *Jackson*, 2010 WL 3452333, at \*9. This expression of specific concerns by staff members about a pattern of behavior is in line with the application of the exception outlined in the IDEA. Hence, this case does not support expansion of the IDEA's statutory language, nor is it analogous to the facts in this matter.

placement for him.
***

THE HEARING OFFICER: So do you -- what do you believe the appropriate placement for the student should be? What should it encompass?

MR. WALLACE: It should encompass different student body, different administration, different people, different cast of characters that are located in the building itself. *It's the people that are the problem that is causing [student] distress and trauma.*[38]

(Emphasis added). This exchange demonstrates Defendants' fundamental lack of understanding of the term "placement" as utilized by the IDEA. Both the IHO and counsel for the District attempted to rectify this issue.

MS. PEER: My concern is that I'm not hearing an IDEA placement issue because when I hear "placement" and I think of IDEA, I think of where is the student on the continuum in terms of the supports and services, not the physical location of where the student is being educated.
***

THE HEARING OFFICER: My interpretation of the law, I want to be clear, is that location is not the same as placement. So I'd like to get back to the question of whether there is anything in the IEP besides if there happens to be a requirement relating to a specific school building, if there are any concerns in the IEP.[39]

Clearly, the "placement" claim was baseless, from the outset, primarily due to Defendants' failure to understand "placement" under the IDEA.

Moreover, Defendants' "placement" claim was also frivolous and without foundation based on the evidence. The student was determined to be eligible under the IDEA on July 31, 2015.[40] The student's "placement" under the IDEA, began with the start of the 2015-2016 school year, per his IEP. The due process hearing commenced on January 12, 2016 – approximately halfway through the 2015-2016 school year. Prior to the start of the hearing, Defendants knew (or should have known) that the student's "placement" was successful. The student's mother testified that,

---

38   Admin. Record at File Folder 4 of 4, Item No. 2 at pp. 86-88; 90-91.

39   Admin. Record at File Folder 4 of 4, Item No. 2 at pp. 88-90; 92-93.

40   Admin. Record at File Folder 4 of 4, Item No. 12 at pp. NOR0133-NOR0177.

during the 2015-2016 school year: (1) the student's grades had improved; (2) he had not had any disciplinary incidents; (3) he had good attendance; and (4) had made good progress on his IEP goal.[41]  Despite their own client's testimony, all of which demonstrated the student's success at Nordonia High School, Defendants litigated a baseless "placement" claim.[42]  Therefore, Plaintiffs are entitled to an award of attorneys' fees and costs with respect to this claim.

### H.    The Denial of FAPE Claim was Frivolous and Without Foundation.

The amorphous "denial of FAPE" claim was also completely without foundation.  To provide a FAPE, a district must offer an individualized program of special education and related services designed to meet the disabled student's unique needs.  *See Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d. 690 (1982).  As a matter of law, a school district meets its obligation to provide a FAPE if it has (a) complied with the procedural requirements of the IDEA,[43] and (b) developed an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.  *See Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 991, 197 L.Ed.2d 335 (2017).[44]  *See also Rowley,* 458 U.S. at 207.  A parent can prove a denial of FAPE only by

---

41    Admin. Record at File Folder 4 of 4, Item No. 8 at p. 1214-1216.  *See also* Admin. Record at File Folder 3 of 4, Item No. 1 at Dist. Ex. MM and Dist. Ex. NN.

42    At no point during the litigation did Defendants identify concerns with the services available at Nordonia High School or concerns regarding whether the student's IEP could be implemented in that setting.

43    Per Defendant Wallace's statements with respect to the FAPE claim, there was no challenge to the District's compliance with the IDEA's procedural requirements.  Rather, the second amended due process complaint contained an allegation that the parent disagreed with the proposed placement, but was required to sign the IEP because services would not be provided without her signature. Admin. Record at File Folder 3 of 4, Item No. 1, pp. 448-450.  At no point did Defendants provide legal authority to support that this "signing under protest" was a procedural violation.  Moreover, as the student's parent testified, she was represented by Defendant Bache at the IEP meeting and, with his assistance, crafted a statement of disagreement that she added to her signature on the IEP. Admin. Record at File Folder 4 of 4, Item No. 8 at pp. 1212-1213; Admin. Record at File Folder 4 of 4, Item No. 12 at pp. NOR0194.  It was undisputed that the IEP developed on August 20, 2015 was the Student's initial IEP. Admin. Record at File Folder 4 of 4, Item No. 12 at pp. NOR0180-NOR0195.  Further, the IDEA does not permit a school district to implement a student's initial IEP without parental consent.  *See* O.A.C. 3301-51-05(C)(2)(a). Therefore, any claim related to the signing of the IEP as a procedural violation of the IDEA was wholly frivolous.

44    This case was decided by the United States Supreme Court after the IHO issued her Final Decision in this

demonstrating that a school district's failure to comply with the IDEA's procedural requirements resulted in substantive harm or that the student did not receive an educational benefit.  *See Nack ex rel. Nack v. Orange City Sch. Dist.*, 454 F.3d 604, 609 (6th Cir. 2006).  Here, Defendants produced no evidence to substantiate a "denial of FAPE" claim.

The lack of any factual and legal support for Defendants' FAPE claim were also clear from the outset – when Defendants could not articulate the basis for their claim.

> THE HEARING OFFICER: So maybe I could word the question this way.  If the location of the student's education were ordered to be some other school than Nordonia High School, would the petitioners have any concerns about the current IEP as it's written?
>
> MR. WALLACE: We would only -- you know, the additional issues that we want to talk about, the social goals or services that are provided to him because he's not experiencing any growth socially.
>
> ***
>
> THE HEARING OFFICER: So Mr. Wallace, I'm on page NOR 0186, which is the behavior goal.  And I'm wondering if you can explain to me what the – what part of this goal the student is not receiving.
>
> MR. WALLACE: That -- Your Honor, that's going to be testimony best brought forth from Doctor DePolo.
>
> THE HEARING OFFICER: *I'm not asking you to testify.  I'm asking you to put some of the allegations into context for me.*
>
> MR. WALLACE: *I can only just tell you that he's not experiencing any social growth.*  If this is to address social-emotional difficulties, he's not experiencing any social growth.  *That is what I can say.*

(Emphasis added).[45]  From these statements, it appeared the basis of the denial of FAPE claim was the student's alleged lack of "social growth."  However, Defendant Wallace could not explain what he meant by this term.

> MR. WALLACE: . . . So the other portion, if you want to talk about the IEP specifically that it is that we don't believe that he is making any social growth.

matter.

---

[45]  Admin. Record at File Folder 4 of 4, Item No. 2 at pp.94-96. The IHO's efforts to understand the FAPE claim continued, but, in the interest of brevity, will not be recounted in full here.  *Id.* at pp. 96-97.

> ***He's not receiving a free appropriate public education, that he is not growing
> socially.  He is stunted.***
>
> THE HEARING OFFICER: I'm trying to understand what you mean by social
> growth.
>
> MR. WALLACE: ***I can only go off documents that were produced to me, and I
> don't want to mischaracterize any statements from any witnesses that will
> testify.***  But we know that he's struggling socially and he's not improving at all.  ***I
> don't want to put my own meaning into other people's opinions.***
>
> THE HEARING OFFICER: ***But you're the person who is arguing on behalf of
> your client.***[46]

(Emphasis added).

Moreover, Defendant Wallace could not connect the alleged lack of "social growth" to

the student's receipt of an educational benefit under the IDEA.

> THE HEARING OFFICER: ***I'm trying to get a sense of how his struggling
> socially is affecting his education.***
>
> MR. WALLACE: If it's a social-emotional goal and he's not participating in other
> social events or socializing, we know that an education is more than just the
> academics, and we know students can qualify for other reasons than just purely
> academic reasons.[47]

This non-responsive answer certainly did not create this critical link.  Further, Dr. DePolo, the

witness upon whose testimony Defendants sought to rely, testified that any social struggles the

student was having at school did not impact his education.[48]  Consequently, there was absolutely

no basis, or evidence to support, the FAPE claim litigated by Defendants.

A similar situation arose in *Amherst Exempted Vill. Sch. Dist. Bd. of Educ. v. Calabrese*,

No. 1:07 CV 920, 2008 WL 2810244 (N.D. Ohio July 21, 2008).  In *Amherst*, the court awarded

attorneys' fees and costs to the school district under the IDEA's fee shifting provision. *Id.* at *6-

7.  In support of its decision, the court noted that counsel for the parent "failed to offer any

---

46  Admin. Record at File Folder 4 of 4, Item No. 2 at pp. 100-103.

47  *Id.*

48  Admin. Record at File Folder 4 of 4, Item No. 4. at p. 620.

evidence, beyond [parent's] unsupported opinion that Amherst did not provide [student] with a FAPE." *Id.* at *3. Here, as in *Amherst*, Defendants failed to call even one witness – other than the student's mother – in support of their FAPE claim.[49] This situation, however, is more egregious than *Amherst*: Here, even the testimony of the student's mother did not support the denial of FAPE claim. Specifically, the student's mother admitted that, since the implementation of the IEP, student's grades had improved and he had not had any disciplinary incidents.[50] As noted above, the student's report cards and IEP progress report reflected progress.[51]

Moreover, the testimony of Dr. Michelle DePolo, the student's treating counselor, and the witness upon whom Defendants sought to rely, did not support the "denial of FAPE" claim. Dr. DePolo testified that she had seen the student recently and that he was "doing well."[52] When asked by Defendant Bache whether the student's social relationships at school were affecting his education, Dr. DePolo testified:

> ***I don't think so in that it's a choice that he's making for himself.*** And I think he's doing well academically. If I recall, he did pretty well on his report card, and he's meeting all the goals he set for himself. I'm really proud of him for that. I think he's compartmentalizing, I'm going to do school right now.

(Emphasis added).[53]  Dr. DePolo also testified that, at the time of her testimony, the student needed *less* counseling than the District was providing and that she agreed with the IEP.[54]

Notably, Dr. DePolo testified on the third day of the hearing. After her testimony, which

---

49  Inexplicably, Defendants did not call the student's intervention specialist – the teacher primarily responsible for the implementation of his IEP – or any of his 10th grade teachers as witnesses. Admin. Record at File 3 of 4, Item No. 1 at pp. 316-323, 324-331.

50  This testimony was echoed by the student's intervention specialist who testified at length regarding the Student's progress. Admin. Record at File Folder 4 of 4, Item No. 9. at pp. 1349-1352, 1355.

51  Admin. Record at File Folder 4 of 4, Item No. 9 at pp. 1349-1352.

52  Admin. Record at File Folder 4 of 4, Item No. 4 at p. 628.

53  Admin. Record at File Folder 4 of 4, Item No. 4 at pp. 620-21. Dr. DePolo also testified several times that the student had made the affirmative *choice* to have less social interactions at school, and that she did not think this was a bad decision. *Id.* at pp. 612-13, 620-21, 630-32.

54  Admin. Record at File Folder 4 of 4, Item No. 4 at pp. 627-630.

completely undermined their "denial of FAPE" claim, Defendants *still* did not withdraw the claim.[55]  Consequently, Defendants' continued litigation of this claim, in the absence of any evidentiary support, was frivolous and served to unnecessarily protract the litigation.[56]  Therefore, the District is entitled to an award of attorneys' fees with respect to this claim.

### I.      The Denial of "Educational Opportunities" Claim was Frivolous, Without Foundation and had Absolutely No Chance of Success.

Defendants' pursuit of a loss of "educational opportunities" claim was also frivolous from the outset as the IDEA does not include this cause of action.  Specifically, the IDEA does not mandate that school districts provide students with disabilities "educational opportunities."  Rather, it mandates the provision of a free appropriate public education.  *See* O.A.C. 3301-51-02(B)(1);  20 U.S.C. § 1412(a)(1).  Hence, this claim was not cognizable under the IDEA from the outset.

The problematic nature of this claim becomes even more apparent when the basis of the claim is examined.  When asked by the IHO to explain the claim, Defendant Wallace stated:

> MR. WALLACE: He wasn't able to participate in many other activities there.  He wasn't able to socialize.  He wasn't able to do the other things that all the other kids can.  It's essentially a least restrictive environment, but he didn't have the same opportunities that he should have had.  Had he had the correct services in place, it wouldn't have been for Digital Knights, and we don't feel Digital Knights was appropriate for him at all.  It was safer for him, yes.  Appropriate for him, no.[57]

At the start of the due process hearing, Defendant Wallace also stated the following regarding this claim:

---

55   The fact that Defendants brought this claim in the first instance is also problematic.  They clearly had access to the Student's mother as well as his treating counselor.  Further, they had all of the educational records utilized by the District – including the student's IEP progress report and his report cards.  Admin. Record at File Folder 4 of 4, Item No. 12 at pp. NOR0332, NOR0334-NOR0336.  As a result, they should have known there was no evidence to support a denial of FAPE claim.

56   The District called witnesses, primarily the Student's 10th grade teachers, to counter this claim.

57   Admin. Record at File Folder 4 of 4, Item No. 1 at p. 24.

MR. WALLACE: During a portion of the year, he was not educated with the other students at the school, that he was put into an online academy-type program, that he wasn't able to partake in certain activities, events, extracurriculars because of different issues that he was facing at the school and that he -- as a result of the school's failure to appropriately protect him and provide him the protections available to eligible students that he missed out on many opportunities in the school -- or many other services, specially designed instruction. Because he wasn't given these things, he missed out on educational opportunities.[58]

The IHO distilled these statements into two issues: whether the student was denied an opportunity to participate in extracurricular activities and whether the student was educated in his least restrictive environment while he was in the online Digital Knights program.[59]

However, the "educational opportunities" claim was doomed from its inception because, at the time of the alleged violations, the student was ***not eligible under the IDEA***. As a result, there was no requirement that the District provide a FAPE or that the student be educated in his least restrictive environment. The IHO stated:

> While the Student was in the Digital Knights online program . . . ***he was a regular education student and had not yet been identified as a child with a disability*** . . . ***Therefore, there was not a question about whether he had been given an equal opportunity to participate in extracurricular activities.*** Further, there was insufficient evidence presented that Student wanted to participate in an extracurricular activity, or was denied access to an extracurricular activity.

(Emphasis added).[60]  In addressing another issue regarding the Digital Knights program, the IHO again noted that, during the relevant time period, "Student was not identified as a student with a disability" and that the evidence did not support a finding that he was "denied any 'educational opportunity' to which he was entitled."[61]  Therefore, all of the "educational

---

58    Admin. Record at File Folder 4 of 4, Item No. 2 at p. 84.

59    Admin. Record at File Folder 1 of 4, Item No. 3 at p. 25.

60    Admin. Record at File Folder 1 of 4, Item No. 3 at p. 25. Even had the question of the student's ability to participate in extracurricular activities properly been before the IHO, the undisputed evidence demonstrates that the student was eligible to participate in these activities while he was in the Digital Knights program. Admin. Record at File Folder 4 of 4, Item No. 4 at p. 592; Admin. Record at File Folder 4 of 4, Item No. 12 at p. NOR0220.

61    Admin. Record at File Folder 1 of 4, Item No. 3.

opportunity" claims litigated by Defendants were frivolous and without foundation which entitles the District to an award of attorneys' fees and costs related to these claims.[62]

> **J.** **The "Bullying" Claim Included in the Due Process Complaints Filed by Defendants was Not Cognizable Under the IDEA and was, Therefore, Without Foundation.**

The "bullying" claim included in the due process complaints filed by Defendants was also completely baseless. The IDEA does not include a cause of action for "bullying." *See generally* 20 U.S.C. §§ 1400, *et seq.* While the IHO noted, and the District acknowledged, that the interplay between bullying and the provision of FAPE is unsettled, the claims advanced by Defendants were still frivolous. As the IHO confirmed: "Missing from the evidence of bullying or harassing behavior is the link that ties problematic behavior to actions, effects or inaction on the Student's part that denied Student FAPE."[63] As Defendants did not, and could not, tie the alleged "bullying" to the student's receipt of FAPE, the bullying claim was frivolous and without foundation.[64]

> **K.** **The Numerous Factual Inaccuracies Contained in the Due Process Complaints Filed by Defendants Contributed to the Frivolous Nature of the Claims Asserted.**

The three due process complaints filed in the underlying administrative action by Defendants contained multiple factually inaccurate statements that contributed to the frivolous nature of the claims asserted. Factual inaccuracies in the due process complaint filed on May 2, 2015 and the first amended due process complaint filed on May 13, 2015 and the second amended cue process complaint filed on September 17, 2015 include:

---

62    As previously noted, as Defendant Bache attended the student's ETR and IEP meeting, Defendants knew exactly when he became eligible under the IDEA. Admin. Record at File Folder 4 of 4, Item No. 12 at pp. NOR0133-NOR0177; NOR0180-NOR0195.

63    Admin. Record at File Folder 1 of 4, Item No. 3.

64    Indeed, all of the alleged "bullying" occurred *before* the student was identified as a student with a disability under the IDEA. Admin. Record at File Folder 1 of 4, Item No. 3.

| "Facts" Asserted in Complaints | Facts from Testimony or Exhibits |
|---|---|
| Student was expelled by the District[65] | Letter to the student's parents, from Superintendent Joe Clark, dated March 13, 2015, stating that the student had not been expelled and was being placed in the Digital Knights program.[66] |
| Student "suffers from depression"[67] | Testimony from the student's mother that he did not have a diagnosis of "depression" or any other mental health diagnosis prior to July 2015 (making the allegation that the student "suffered from depression" in the complaints dated May 5, 2015 and May 13, 2015 entirely false).[68] |
| "As a result of the school's failure to protect [Student] from bullying, the Petitioners' had to remove him from school and educate him at home"[69] | Letter to the student's parents, from Superintendent Joe Clark, dated March 13, 2015, stating that the student had been assigned to the Digital Knights program to complete his classes for the 2014-2015 school year.[70] |
| Student's parent requested an evaluation during his 8th grade year[71] | Testimony from the student's mother that she did not request an evaluation of the student until March 24, 2015. [72] |
| The Student's disability category is "multiple disabilities"[73] | The student's Evaluation Team Report, which clearly identifies him as a student whose disability category is '"Other Health Impairment."[74] |

65    Admin. Record at File Folder 3 of 4, Item No. 1, pp. 474-478, 486-488.

66    Admin. Record at File Folder 4 of 4, Item No. 12 at p. NOR0200.  *See also* Admin. Record at File Folder 4 of 4, Item No. 8 at p. 1220.

67    Admin. Record at File Folder 3 of 4, Item No. 1, pp. 474-478, 486-488.

68    Admin. Record at File Folder 4 of 4, Item No. 8 at pp. 1209-1210.

69    Admin. Record at File Folder 3 of 4, Item No. 1, pp. 448-450, 474-478, 486-488.

70    Admin. Record at File Folder 4 of 4, Item No. 12 at p. NOR0220.  See also Admin. Record at File Folder 4 of 4, Item No. 8 at p. 1220.

71    Admin. Record at File Folder 3 of 4, Item No. 1, pp. 448-450.

72    Admin. Record at File Folder 4 of 4, Item No. 7 at p. 1092.

73    Admin. Record at File Folder 3 of 4, Item No. 1, pp. 448-450.

74    Admin. Record at File Folder 4 of 4, Item No. 12 at pp. NOR0133-NOR0177.

None of these "facts" are accurate; moreover, Defendants had access to information, through their client, that demonstrated the inaccuracy of these facts at the outset of the administrative process. As Defendants litigated frivolous claims based on these inaccurate facts, the District is entitled to an award of attorneys' fees and costs. *See Capital City Pub. Charter Sch. v. Gambale*, 27 F. Supp. 3d 121, 137 (D.D.C. 2014) (awarding attorney fees and costs based, in part, on counsel's inclusion of facts that she knew to be false in the due process complaint and the litigation of that complaint).

### L. Defendants Included Claims Beyond the Jurisdiction of the IHO Which Were, by Definition, Frivolous and Without Foundation Under the IDEA.

The Section 504 and retaliation claims included in the due process complaints filed by Defendants were frivolous because they were outside the jurisdiction of the IHO. Concerning Section 504 claims, it is well-settled that IHOs appointed to conduct IDEA process hearings do not have jurisdiction over Section 504 claims. *See Upper Arlington City School District*, No. SE-1380-2003, at 49-50 (OH DOE 2004) (attached as Exhibit 7) ; *Wilmington City Schools*, SE-2804-2013E, at 39 (OH DOE 2013) (attached as Exhibit 8) (IHO had no jurisdiction regarding an MDR conducted under Section 504); *Indep. Sch. Dist. of Boise City No. 1 v. Idaho State Educ. Agency*, 112 LRP 16142 (Idaho State Educ. Agency 2012) (the hearing officer refused to hear Section 504 claims); *Z.F. ex rel. M.A.F. v. Ripon Unified Sch. Dist.*, 2011 WL 320249 (E.D. Cal. 2011) ("Here, [plaintiffs] could not present Section 504 and ADA claims to the hearing officer since the hearing officer lacks jurisdiction to hear those claims.").

Similarly, the IDEA does not allow for a claim of retaliation. Rather, due process claims under the IDEA are limited to claims related to the "identification, evaluation, or educational placement of a child with a disability, or the provision of FAPE to the child." O.A.C. § 3301-51-05(K)(7)(a)(i); O.R.C. § 3323.05. *See also* 34 C.F.R. § 300.507(a)(1); 20 U.S.C. §§

1415(b)(6), (f).  Indeed, nowhere in the statute can a cause of action for "retaliation" be found.

Given this clear legal authority, there was no reasonable justification for the inclusion of these claims in the second amended due process complaint.  Further, the inclusion of these claims needlessly protracted and increased the cost of the litigation.  Not only did it necessitate the filing of a Motion to Dismiss by the District,[75] discussion of these claims also unnecessarily lengthened the hearing.[76]  In fact, during the hearing, the IHO noted numerous times that she did not have jurisdiction over Section 504 claims.[77]  At one point, the IHO also afforded Defendants a break to locate case law indicating she had jurisdiction over Section 504 claims.[78]  Not surprisingly, no such case law was discovered.[79]  What was surprising, though, was Defendant Wallace's take on his obligation to conduct research:

> ***Just to make it clear, we also don't believe that it's petitioners' responsibility to do the case law research.***  I'm not saying that these are the cases I've researched in this.  But here, to get a due process hearing, we believe that would put an extra onus on the petitioner to do so.
>
> These due process hearings are supposed to be easily accessible to parents without attorneys.  To require this would go against that.  So, I don't know that it's petitioners' responsibility even though we're attempting to do so.[80]

(Emphasis added).  Defendant Wallace's contention is baffling, but is perhaps the cause of the frivolous claims advanced by Defendants.

With respect to retaliation, the IHO ruled that she would not hear retaliation claims, but

---

75  Admin. Record at File Folder 3 of 4, Item No. 1 at pp. 404-410.

76  Admin. Record at File Folder 4 of 4, Item No. 2 at pp. 26-38; 45-46; 104-107.

77  *Id.* at pp. 26-27, 29, 30, 38.

78  *Id.* at p. 34.

79  On January 14, 2016, the IHO issued an Order which read, in part: "Counsel for the parties are hereby notified that failure to comply with this or any other Order, the making or filing of any frivolous motion, or making representations regarding case law that are not supported by the holding of such case, may result in sanctions which could include an admonition, assessment of costs to a party, or refusing to consider any issue untimely raised in this matter."  Admin. Record at File Folder 3 of 4, Item No. 1 at pp. 178-179.

80  Admin. Record at File Folder 4 of 4, Item No. 2 at p. 35.

would allow "some evidence of retaliation and its effect on the student's education."[81]  However, when asked by the IHO to explain how the retaliation claim related to the student's receipt of a FAPE, Defendant Wallace could not do so.[82]  Defendant Bache encountered the same difficulty.[83]  During Defendant Bache's multiple attempts to explain this claim, the IHO reiterated her lack of jurisdiction and the irrelevance of testimony related to a retaliation.[84] Despite this, Defendants made additional attempts to continue to litigate this baseless claim.[85]

The Section 504 and retaliation claims were frivolous when filed.  Defendants, as practicing attorneys certainly should have known these claims were outside the IHO's jurisdiction.  Defendants' decision to include these claims, despite clear authority regarding the limits of the IHO's jurisdiction, entitles the District to an award of attorneys' fees with respect to these claims.  *See R.W. ex rel M.W. v. Georgia Dep't of Educ.*, No. 1:07-CV-535 WSD, 2007 WL 2915911, at *6 (N.D. Ga. Oct. 4, 2007), *aff'd sub nom. R.W. v. Georgia Dep't of Educ.*, 353 F. App'x 422 (11th Cir. 2009) (awarding attorneys' fees under IDEA where claims asserted had no basis in law and where attorney knew "some of her claims would be subject to dismissal").

### M.   Prehearing Motions Filed by Defendants Asserted Unfounded and Frivolous Arguments and Unnecessarily Protracted and Increased the Cost of the Litigation.

#### 1.   *Defendants' Objection to All Prehearing Motions and Orders.*

On January 2, 2015, Defendants filed an "Objection to All Prehearing Motions and Orders" in which they argued that the IHO had exceeded the scope of her authority in numerous

---

81  *Id.* at pp. 44-46.

82  *Id.* at pp. 107-110.

83  Admin. Record at File Folder 4 of 4, Item No. 4 at pp. 508-510; 520-528.

84  *Id.* at pp. 524-525. Counsel for the District raised objections and concerns regarding the relevancy of the proposed testimony as well as the amount of time devoted to irrelevant testimony. *Id.* at pp. 508-509; 526-527; 533.

85  Admin. Record at File Folder 4 of 4, Item No. 7 at pp. 1056-1063; 1144-1145.

ways. Specifically, Defendants alleged that the IHO lacked the authority to order: (1) the production of paper copies of documents; (2) the submission of prehearing statements; and (3) that motions be submitted in a "legal pleading form."[86] Defendants also asserted that the IHO lacked the authority to (1) "hear or seek any Motion prior to the hearing;" (2) "issue any Order unrelated to the dates and times of the Due Process Hearing or disclosure conference;" (3) "refuse to hear a claim regarding any federal law relating to a child with a disability;" and (4) extend the deadline for a decision to allow the filing of post-hearing briefs.[87]

Defendants' only "support" for these claims was an erroneous reading of O.A.C. 3301-51-05(K). Defendants argued that the IHO's authority was limited to the duties specifically included in O.A.C. 3301-51-05(K). However, the preamble of this section, which introduces the hearing officer's responsibilities, explicitly indicates that the duties listed are non-exhaustive. *See* O.A.C. 3301-51-51(K)(12) ("The impartial hearing officer has the responsibilities of conducting the hearing . . ., ***including, but not limited to***. . .") (emphasis added). Like this Court's authority to effectively manage its docket, the authority of hearing officers to manage cases to achieve their orderly and expeditious disposition is also supported by other relevant precedent. *See Stancourt v. Worthington City Sch. Dist. Bd. of Educ.*, 164 Ohio App.3d 184, 207, 2005-Ohio-5702, 841 N.E.2d 812, 830, ¶ 81 (10th Dist.)(finding an IHO may dismiss a due process complaint for failure to comply with orders); *Silva v. D.C.*, 57 F.Supp.3d 62, 67 (D. D.C. 2014) ("Moreover, a hearing officer overseeing an IDEA due process hearing, a quasi-judicial proceeding, is vested with implied powers beyond those that are specifically enumerated.").[88]

---

86   Admin. Record at File Folder 3 of 4, Item No. 1 at pp. 268-275.

87   *Id.*

88   The District submitted its response to this pleading, wherein it cited this legal authority, on January 4, 2015.

Clearly, not only was Defendants' Objection to All Prehearing Motions[89] without merit, it was also a frivolous pleading.[90]

### 2. Defendants' Notice of Intent to Seek Reimbursement of Costs.

On January 2, 2016, Defendants also filed a frivolous "Notice of Intent to Seek Reimbursement of Costs." Defendants asserted, without citation to any legal authority, that the District was responsible for the costs associated with *Defendants*' compliance with the IHO's orders (*e.g.*, cost of copying documents, cost of mailing documents to the IHO and opposing counsel, cost of binders and "anything else the Petitioners were mandated to do to comply with an Order from this Hearing Officer").[91]  Although Defendants cited O.A.C. 3301-51-05(K)(16), they did not provide any legal authority to support their interpretation of this provision.  Indeed, there is none.  In response, the District cited 34 C.F.R. § 300.517(a), which allows ***prevailing party*** to recover ***attorneys' fees and costs***, as well as relevant case law interpreting "costs." Simply stated, there was no legal basis for Defendants' Notice to Seek Reimbursement of Costs; thus, this submission was frivolous and served only to increase the cost of the litigation.

### N. Defendants' Conduct Needlessly Increased the Cost of Litigation.

### 1. Defendants' Repeated Failure to Comply with the IHO's Orders.

The failure of Defendants to comply with the IHO's Orders needlessly increased the cost of litigation.  The most notable example was their failure to comply with the IHO's July 10, 2015 Order which stated, in relevant part: "Each of the parties will provide the IHO with a copy of all

---

89   Other items addressed in this pleading were also without merit (including unspecified allegations that the IHO was biased) but, for the sake of brevity, will not be addressed in this Motion for Summary Judgment.

90   Incredulously, Defendant Wallace also asserted his position that motion practice was not permitted on the first day of the due process hearing, prompting the IHO to reasonably ask, "Mr. Wallace, if you don't believe I have any authority to rule on motions, in advance of the hearing, why did you file them?"  Admin. Record at File Folder 4 of 4, Item No. 2 at pp. 36, 43-44.

91   Admin. Record at File Folder 3 of 4, Item No. 1 at pp. 278-279.

documentation provided to the opposing party at the disclosure conference (in paper form)."[92]
Despite this, Defendant Wallace arrived at the disclosure conference without paper copies of any
of petitioner's exhibits.  The IHO then ordered Defendants to provide a paper copy of all exhibits
and a disk containing any audio or video recordings to counsel for the District by the end of the
day on September 16, 2015.[93]  Later in the disclosure conference, the District withdrew its
objection to the second amended due process complaint, which reset the timelines for the
hearing.[94]  In an effort to be reasonable, Ms. Peer advised Defendant Wallace while that it was
not "as urgent" that she receive paper copies of petitioner's exhibits, she needed to receive them
in a timely manner.[95]

Almost three months later, on December 2, 2015, Ms. Peer replied to an email from
Defendant Wallace regarding the fulfillment of an educational records request.[96]  Ms. Peer also
reminded Defendant Wallace that she had not yet received a paper copy of petitioner's exhibits
and requested that a copy be provided "as soon as possible."[97]  Mr. Wallace replied later that day
with, "Let me check on that and I'll get back to you."[98]  On December 9, 2015, Ms. Peer sent the
following follow-up message to Defendant Wallace:

> A disc with [Student's] educational records was mailed to you yesterday.  If you
> do not receive it by the end of the week, please let me know.  Also, please let me
> know where we stand regarding providing paper copies of Petitioners' exhibits.
> This is not an issue that I want to have to address with the IHO; however, if I do
> not receive a paper copy of Petitioners' exhibits by the close of business on

---

92   Admin. Record at File Folder 4 of 4, Item No. 1 at p. 12.  *See also* Admin. Record at File Folder 3 of 4, Item No. 1 at pp. 276, 459-460.

93   *Id.* at pp. 10-14; 37-39.

94   *Id.* at p. 77.

95   *Id.* at p. 78.

96   Admin. Record at File Folder 3 of 4, Item No. 1 at pp. 420-421.

97   *Id.*

98   *Id.* at pp. 422-423.

December 14, 2015, I will seek the IHO's intervention. Thank you.[99]

When Defendants did not respond to the request, the District filed its "Motion to Compel the Production of Paper Exhibits" on December 18, 2015.[100] That same day, the IHO issued an Order regarding the production of exhibits.[101] This Order evoked a series of protests from Defendants – starting with an email to the IHO dated December 20, 2015 objecting to the IHO's Order[102] and culminating with the aforementioned, "Objection to All Prehearing Motions and Orders"[see Section IV(M)(1), *supra*] and the "Notice of Intent to Seek Reimbursement of Costs" [see Section IV(M)(2), *supra*]. Had Defendants simply complied with the IHO's July 10, 2015 Order, all of this could have been avoided. Their failure to do so, combined with their frivolous filings, needlessly increased the cost of litigation.[103]

## 2. *Defendants' Overall Lack of Knowledge Resulted in the Pursuit of Frivolous Claims.*

Throughout the hearing, it was readily apparent that Defendants simply did not understand the factual or legal basis of their claims and the limits of the IHO's jurisdiction. For instance, Defendants repeatedly asserted they were attempting to fulfill an "exhaustion

---

99  *Id.* at pp. 424-425.

100  Admin. Record at File Folder 3 of 4, Item No. 1 at pp. 411-415.

101  Admin. Record at File Folder 3 of 4, Item No. 1 at pp. 377-379.

102  In this email, Defendant Wallace asserted that the required production of paper copies of petitioners' exhibits would "prevent them from being able to achieve meaningful Due Process and deny them meaningful input and participation at the Due process Hearing." It remains entirely unclear how Defendants' compliance with the IHO's Order would infringe on petitioner's rights.

103  As set forth in the District's Motion to Compel Index to Petitioner's Proposed Exhibits, even after Defendants provided the required paper copy of the proposed exhibits, they still did not provide a meaningful index as required by the IHO's December 18, 2015 Scheduling Order and Order Regarding Documents. *See* District's Motion to Compel Index of Petitioner's Proposed Exhibits (filed December 31, 2015). Notably, Defendants' Exhibit B literally *every document* included in the binder of exhibits provided by the District at the September 16, 2015 disclosure conference. Admin. Record at File Folder 3 of 4, Item No. 1 at pp. 290-295. Due to Defendants' objections to the IHO's consideration of motions outside the due process hearing, the IHO cancelled a pre-hearing conference scheduled for January 8, 2016 wherein oral argument on motions was to have occurred. Admin. Record at File Folder 3 of 4, Item No. 1 at pp. 235-237, 280-281. Consequently, pre-hearing motions were not disposed of until the first day of the due process hearing – when it was too late to correct the issues with Defendants' index.

requirement" related to claims outside the IHO's jurisdiction.   The following exchange is illustrative:

> THE HEARING OFFICER: So I just want to be clear because you refer to a retaliation claim, and I want to make sure that all of the parties, both of the parties understand that I don't have jurisdiction to rule on retaliation claims.  So to the extent that this line of questioning is relating to --
>
> MR. BACHE: Any other actions under federal code or –
>
> THE HEARING OFFICER: Right.  It's not relevant in this matter.
>
> MR. BACHE: However, we do have to exhaust anything going forward through the IDEA due process.
>
> MS. PEER: Which does not make this a forum for irrelevant testimony that's not related to claims.
>
> THE HEARING OFFICER: Just so I'm clear, your position is that this IDEA hearing is the correct forum for you to exhaust administratively –
>
> MR. BACHE: Yes.
>
> THE HEARING OFFICER: -- regarding retaliation claims?
>
> MR. BACHE: Yes, it is, Your Honor.
>
> THE HEARING OFFICER: I'm not going to make any ruling on a retaliation claim.  And so -- and I don't have jurisdiction to rule on a retaliation claim.  So no other forum can rely on my findings or no other forum can rely on this forum as an exhaustion for a matter for which I don't have jurisdiction.
>
> MR. BACHE: With all due respect, Your Honor, I believe under 1415 that all -- any matter that relates to a student that has a disability would fall under the purview of going through an IDEA due process claim to exhaust the administrative aspect of it for purposes of -- that if they don't raise them and exhaust throughout the due process, then they are barred from bringing them later because they did not attempt to exhaust them or exhaust them correctly under the due process hearing.
>
> THE HEARING OFFICER: Ms. Peer, you look like you might want to say something.
>
> MS. PEER: I'm not in agreement with petitioners', I suppose, interpretation.  And when you reference 1415, I assume you're talking about 20 USC 1415, IDEA due process provision.
>
> I don't know of anything in that provision that would give a hearing officer under the IDEA jurisdiction over claims that arise outside of the IDEA.  As I heard the argument, it would literally give the hearing officer jurisdiction over any claim related to a student just because that student happens to have a disability under the IDEA.  And that's obviously not the purpose of the statute.

I thought that we were beyond this in that -- and that this issue had been briefed and ruled on by the hearing officer in saying she has no jurisdiction over retaliation claims.

So I'm renewing my objection to the introduction of testimony that cannot be linked back in any way to the student's identification, placement, evaluation or provision of FAPE. Those are the pieces under IDEA over which the hearing officer has jurisdiction, the claims that she can hear. And to continue doing this, frankly, is just spending more time spinning our wheels on things that are not relevant and we've had a lot of testimony already that I don't know how links back to any of these claims.

THE HEARING OFFICER: So Mr. Bache, you're telling me that this is not information relating to background on the student or -- I'm trying to – if the sole purpose of this line of questioning regarding the CVCA application is your wish to exhaust administrative remedies relating to a retaliation claim, then I'm not going to allow this questioning any further. I don't have jurisdiction.[104]

Although Defendants failed to provide any legal basis for their "exhaustion requirement" argument, it was raised repeatedly throughout the hearing.[105]

Similar concerns were noted regarding Defendants' inability to state the basis of their claims or the specific relief requested. For example, on the third day of the due process hearing, Defendant Bache could not articulate the concerns regarding the student's placement:

THE HEARING OFFICER: What's your concern about [Student's] placement at Nordonia?

MR. BACHE: Well, we don't feel that he is getting the proper -- I don't want to misspeak, so I apologize because I don't have it written down in front of me at this time -- that he's not progressing, going forward. His emotional and social, which is part of his education, is not progressing, Your Honor, and that the placement he's currently in is not appropriate.[106]

The general concern that the student was "not progressing" does not address the specific question raised by the IHO; however, no better explanation from Defendants was forthcoming.

---

104 Admin. Record at File Folder 4 of 4, Item No. 4 at pp. 524-528.

105 Admin. Record at File Folder 4 of 4, Item No. 2 at pp. 27-39; 111-113; 137-140; Item No. 7 at 1057.

106 Admin. Record at File Folder 4 of 4, Item No. 4 at p. 510. *See also* Defendant Wallace's unsuccessful attempts to explain the nature of the "placement" claim addressed *supra*. *Id.* at Item No. 2 at pp. 86-93.

A similar issue arose when, on the sixth day of the due process hearing, the IHO asked

Defendant Bache to articulate his client's claims regarding the student's program:

> THE HEARING OFFICER: *What are the services that you feel that he's not getting that he should be getting?*
>
> MR. BACHE: I'm going to get that through Ms. Coleman's testimony on the IEP and going forward from there.
>
> THE HEARING OFFICER: Could you just give me a sense of it now?
>
> MR. BACHE: Sure, Your Honor.  There is only one goal in the IEP, and that is that he's going to, I believe, get some -- learn some coping methods to deal with the issues that he has.  However, this is going to show that he hasn't really learned any coping methods, and that the placement is incorrect and *that he needs other services* other than being segregated from the school -- the student population.
>
> THE HEARING OFFICER: *What services does he need?*
>
> MR. BACHE: And well, Your Honor, I'm having a brain fart at this point in time, Your Honor.  So if I can come back on that, I know you –
>
> THE HEARING OFFICER: One reason why it would be important to know what petitioners are asking for is that I'm the person who's fashioning any educational modifications that would happen going forward.  So to the extent that I know what petitioners would like, that would be helpful to me.[107]

(Emphasis added.)  Notably, at no point did Defendant Bache actually answer the IHO's question

with respect to the *services* the Student needed to receive a FAPE.

A further example of Defendants' inability to articulate their claims, or requests for relief,

arose after Defendant Bache raised concern about the student's lunch arrangements:

> THE HEARING OFFICER: With respect to lunch, what would petitioners like to happen?
>
> MR. BACHE: I'm having trouble articulating that at this point in time, Your Honor.  May I speak with my client?
>
> THE HEARING OFFICER: Sure. [108]

It is simply inconceivable that, on <u>day six</u> of the hearing, Defendant Bache could not articulate

the relief his client was seeking.  Following the break, it also became clear that Defendant Bache

---

107  Admin. Record at File Folder 4 of 4, Item No. 7 at pp. 1111-1113.

108  *Id.* at pp. 1115-1116.

did not know that the student's lunch arrangements were actually already addressed in the student's IEP:

> THE HEARING OFFICER: Just so I'm clear, Mr. Bache, can you just show me where lunch is addressed in the IEP?
>
> MR. BACHE: I don't think I will be able to, Your Honor.  The only thing we have is the measurable annual goal that says, "When presented with interpersonal/intrapersonal conflict in the general education classroom setting, Ronald will use coping strategies to identify the problem, select an appropriate method for managing the problem, and carry out that method successfully 100 percent of the time by the end of this IEP."[109]

In actuality, the Student's lunch arrangements were addressed in the accommodations section of the IEP.[110]  As Defendants elected to litigate the IEP, this lack of knowledge of the document's contents – at this stage of the proceedings, no less – is astounding.

Finally, Defendant Bache also did not know, on the sixth day of the hearing, whether the petitioner was challenging the student's identification:

> THE HEARING OFFICER: Wait.  *Just to be clear, the petitioners are not disputing the student's identification in the ETR, correct?*
>
> MR. BACHE: One second, Your Honor.  Not as to the suspected disability as of June 24, 2015, Your Honor.
>
> MS. PEER: I'm not sure what that means or if it answers the question.
>
> THE HEARING OFFICER: So was there some change now?  You said as of June.
>
> MR. BACHE: I just want to confirm that I'm correct in my suspicion, Your Honor.  The eligibility determination was found to be other health impairment in July of 2015, Your Honor.
>
> THE HEARING OFFICER: *You're not disputing that, correct?*
>
> MR. BACHE: *Your Honor, I believe we may.*
>
> THE HEARING OFFICER: *What do you mean by you may?*
>
> MR. BACHE: Based on the evidence and the testimony at this point in time.
>
> MS. PEER: I'm incredibly disturbed that at this point in these proceedings you

---

109  *Id.* at pp. 1116-1118.

110  Admin. Record at File Folder 4 of 4, Item No. 12 at Dist. Ex. U.

can't tell me what your claims are or are not.

THE HEARING OFFICER: You might be disputing the identification of the student as other health impaired? Is that what you're saying?

MR. BACHE: Your Honor, before I misspeak, may I have a moment?

MS. PEER: I don't know that we need to have a moment.

MR. BACHE: I get to have a moment because I need one. - - - - [111]

(Emphasis added). Unfortunately, after the break, Defendant Bache still could not articulate the petitioner's claims – to the extent they existed – with the student's identification.[112]  After a lengthy discussion, and a review of the second amended due process complaint, the IHO concluded that a challenge to the student's identification was not included in the complaint.[113] Defendant Bache's response was to "move on" coupled with a threat to address the identification issue "in another [due process] complaint."[114]

In short, Defendants' fundamental lack of knowledge, and inability to articulate their client's position, claims being asserted and requested relief, is further evidence of the frivolous and fundamentally baseless nature of the claims asserted.

### O. Defendants Rejected Reasonable Settlement Offers and Made an Unreasonable Settlement Demand.

Despite the obvious deficiencies with the claims asserted by Defendants, the District made reasonable efforts to settle the matter prior to hearing.  On June 26, 2015, the parties participated in mediation; however, a resolution was not reached.[115]  On July 31, 2015, the District made a written offer of settlement that included:

- Rescinding the student's March 3, 2015 suspension and removing documentation of the

---

111  Admin. Record at File Folder 4 of 4, Item No. 7 at pp. 1110-1111.

112  *Id.* at pp. 1118-1125.

113  *Id.* at p. 1125.

114  *Id.*

115  Affidavit of Joseph Clark at ¶ 3 (attached as Exhibit 1).

suspension from his discipline record;

- Providing the student with seventy-five (75) hours of tutoring;

- Providing the student with thirty-six (36) 36 hours of counseling;

- Allowing the student to substitute any higher grade he earned in summer school Algebra II for the Algebra II grade he received in the Digital Knight program; and

- The inclusion of one hour of tutoring per week and one period per day with an intervention specialist in the IEP that was to be developed for the student.[116]

Defendants responded to this offer via a written settlement demand dated September 14, 2015.[117] Defendants unreasonably sought for the District to pay "all of the [Family's] attorney fees related to SE 3113-2015" as well as "pay a monetary settlement to the [Family] in the amount of $100,000."[118] These two items were completely unacceptable to the District. With respect to the demand for attorneys' fees, not only had Defendants failed to include an amount, the District was not inclined to reward Defendants Wallace and Bache for bringing a frivolous claim by paying their fees.[119] In addition, the $100,000.00 compensatory damages demand was also a non-starter given the IDEA does not allow for monetary damages.[120]  20 U.S.C. § 1415(i)(2)(C)(iii); *see, e.g., Covington v. Knox Cty. School Sys.,* 205 F.3d 912, 918 (6th Cir.2000), *amended on denial of reh'g* (May 2, 2000); *Hall v. Knott Cty. Bd. of Educ.,* 941 F.2d 402, 406 (6th Cir.1991).

Further settlement discussions were delayed by the filing of the second amended process complaint. Nonetheless, after investigating the new allegations contained in the second amended due process complaint, on December 28, 2015, the District sent a renewed written offer

---

116  *Id.* at ¶ 4, Ex. A.

117  *Id.* at ¶ 5, Exhibit B.

118  *Id.*

119  *Id.* at ¶ 7.

120  While the demand also stated that it encompassed claims under Section 504 of the Rehabilitation Act, which does allow for compensatory damages, and "bullying", no cognizable claims related to these issues had been advanced.

of settlement.[121]  The District remained willing to assist the student, but unwilling to reward Defendants for filing meritless claims.[122]  Defendants did not respond to this offer and the case proceeded to hearing.[123]  Given the obvious deficiencies with their claims, as outlined above, Defendants' acted unreasonably in not resolving this matter prior to hearing.[124]

### P. The District's requested fee award is reasonable.

In considering the reasonableness of a fee request under the IDEA, courts consider the attorneys' hourly rate, time spent, and extent of legal services.  *See* 20 U.S.C. § 1415(i)(3)(F). Upon determining reasonable hours and rates, a court will use the Lodestar formula to calculate the total fee award; this sum is presumed to be reasonable as a matter of law.  *Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 Fed.Appx. 423, 441-443 (6th Cir. 2016); *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 627 (6th Cir. 2013).  As delineated below, the attorneys' fees requested by the District reflect reasonable rates and time spent on legal services rendered.

#### 1. The District's Attorneys' Hourly Rates were Reasonable.

Under federal law, attorneys' fees under IDEA's fee-shifting provision should reflect "the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation and experience."  20 U.S.C. § 1415(i)(3)(F)(ii).  Prevailing parties, in other words, are entitled to recover attorneys' fees at the market rates that were current at the time the services were rendered.  *See Moore v. Crestwood Local Sch. Dist.*, 804 F.Supp. 960, 965 (N.D.Ohio 1992); *see also Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (defining prevailing market rate as one that "lawyers of comparable skill and experience can reasonably

---

121  Affidavit of Joseph Clark at ¶ 6, Exhibit C, ¶ 6 (attached as Exhibit 1).

122  *Id.* at ¶¶ 6-7.

123  *Id.* at ¶ 8.

124  Defendants will presumably argue that it was their client's decision not to settle; therefore, they are blameless. However, Defendants were not compelled to continue litigating a meritless case on their client's behalf.

expect to command within the venue of the court of record").

In determining reasonable fees, courts may consider their own experience and judgment in awarding such fees. *See Ousley v. Gen. Motors Retirement Program for Salaried Employees*, 496 F.Supp.2d 845, 850 (S.D. Ohio 2006). In 2014, for example, the U.S. District Court for the Southern District of Ohio approved a rate of $250 – $270 per hour for special-education attorneys with 7-11 years of experience. *See Gibson v. Forest Hills School Dist. Bd. of Educ.*, S.D.Ohio No. 1:11-CV-329, 2014 WL 3530708, *6 (remanded on other grounds). In 2009, the U.S. District Court for the Northern District of Ohio found $275 per hour to be a reasonable rate for an experienced special education litigator. *See Winkelman v. Parma City Sch. Dist.*, No. 1:08 CV 2135, 2009 WL 1444441, at *5 (N.D. Ohio May 22, 2009).

Here, the District is requesting that this Court approve a rate of $175 per hour for Attorney Peer and a rate of $150 per hour for Attorney Markouc and other attorneys who worked on the file. Attorney Peer has been licensed to practice law since 1999, has 18 years of experience in education law and focuses much of her practice on special education law.[125] Attorney Markouc has 12 years of experience, having practiced education law since being admitted to practice in 2006.[126] In light of the above jurisprudence, the District's requested rates for both attorneys are clearly reasonable.

### 2. The Hours Expended on Defending This Due Process Complaint Were Reasonable.

A party seeking fees must present a court with enough detail to determine whether the hours were actually and reasonably expended. *Studio A Entertainment, Inc. v. Action DVD*, 658 F.Supp.2d 851, 857 (N.D. Ohio 2009). In calculating the number of hours reasonably expended,

---

125  *See* Affidavit of Christina Henagen Peer, Esq. at ¶¶ 3, 4, 6, 7 and 8 (attached as Exhibit 2).

126  *See* Affidavit of Sara M. Markouc, Esq. at ¶¶ 3, 4, 6 and 7 (attached as Exhibit 3).

courts eliminate excessive, redundant, or otherwise unnecessary hours.  *See Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994).   Once reasonableness is demonstrated, the party opposing fees bears the burden of producing rebuttal evidence.  *Id.*

Here, the time spent defending the District from the frivolous claims brought by Defendants – particularly in light of Defendants' conduct which protracted the litigation – was reasonable.  The initial stage of the proceedings in this matter spanned almost a full year – from May 7, 2015 to May 2, 2016 (the date of the IHO's Final Decision).[127]  The due process hearing lasted nine (9) days, with a final day for the sole purpose of admitting exhibits.  Testimony was taken from twenty-three (23) witnesses.[128]   Additionally, there were over 2,000 pages of potential exhibits.[129]  As set forth above, significant pre-hearing motion practice was necessary, due primarily to Defendants' actions.  The District also filed a comprehensive post-hearing brief, which provided a detailed analysis of the issues before the IHO.[130]  A total of 670.40 hours were spent defending the District in the due process action.[131]   Given the specialized nature of this case, and the protracted nature of the litigation, these hours were reasonable.[132]  Upon invoicing the District and Hylant, and following receipt of certain payment, the legal fees expended for the

---

127  Admin. Record at File Folder 1 of 4, Item No. 3.

128  *Id.* at pp. 5-7.

129  Admin. Record at File Folder 2 of 4.

130  Admin. Record at File Folder 3 of 4, Item No. 2 at pp. 1-57.

131  *See* Affidavit of Amy Finnegan at Ex. C-1 (attached as Exhibit 4).  This is the total number of hours by all timekeepers (*i.e.*, attorneys and paralegals).   As certain narratives in the detailed billing statements contain information that is protected by the attorney-client privilege and/or work product doctrine, Plaintiffs' attorneys' billing statements are not included with this submission.  However, upon request by the Court, Plaintiffs are willing to provide any additional information that the Court deems necessary for its review, including the submission of redacted invoices or of unredacted billing invoices for this Court's inspection *in camera*.

132  In *Winkelman v. Parma City Sch. Dist.*, No. 1:08 CV 2135, 2009 WL 1444441, at *6 (N.D. Ohio May 22, 2009), the parties engaged in a due process matter that was similarly lengthy (a total of 11 days of hearing), where a total of 640.50 hours which were expended by all timekeepers (*i.e.*, attorneys and paralegals) was deemed to be reasonable.  See *Stipulated Entry* dated June 4, 2009 entered in *Winkelman v. Parma City Sch. Dist.*, No. 1:08 CV 2135 which is attached as Exhibit 5.

defense of the due process complaint (through petitioner's appeal to the SLRO) total $106,719.06.[133]

> **Q.**     **The Costs the District is Entitled to Recover Include Fees for the Court Reporter and Impartial Hearing Officer.**

Under the IDEA's fee shifting provision, in addition to attorneys' fees, school districts are also statutorily entitled to recover the standard costs delineated in 28 U.S.C. § 1920. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 292, 126 S.Ct. 2455, 165 L.Ed. 2d 526 (2006).  Further, courts enjoy considerable discretion in considering prevailing parties' requests for costs, and may consider all administrative hearing costs, including hearing officer fees. *See Akron Bd. of Educ. v. Wallace*, No. 5:16CV188, 2017 WL 5654767, at *5 (N.D. Ohio Nov. 22, 2017).  Court reporter fees are typically included in such costs. *See* 28 U.S.C. § 1920 (2)-(4).  Here, the District incurred $17,576.35 in costs for the court reporter and $20,876.74 in costs for the impartial hearing officer.[134]  An order allowing the District to recover the public funds spent on costs related to the frivolous litigation effectuates the purpose of the IDEA's fee shifting provision.

## V.  **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for Summary Judgment and award reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III).

---

133  *See* Affidavit of Amy Finnegan at ¶ 3, Ex. C-1 (attached as Exhibit 4); Affidavit of Karen Obratil at ¶5, Ex. B-3 (attached as Exhibit 6); Affidavit of Christina Henagen Peer at ¶ 11 (attached as Exhibit 2).  Despite the overwhelming evidence and testimony in the District's favor, Defendants inexplicably appealed the IHO's decision. The appeal was dismissed by the State Level Appeal Officer.  Defendants, however, appealed the dismissal to this Court (Case No. 5:16-CV-02445-JRA).  This action remains pending and the District continues to incur attorneys' fees associated with that baseless appeal.

134  Affidavit of Karen Obratil at ¶¶ 3-4, Ex. B-2 and B-3 (attached as Exhibit 6).

Respectfully submitted,

    /s/ Sara Ravas Cooper
Christina Henagen Peer (Reg. No. 0071579)
    Email: cpeer@walterhav.com
    Direct Dial: 216-928-2918
Kathryn I. Perrico (Reg. No. 0076565)
    Email:  kperrico@walterhav.com
    Direct Dial: 216-928-2948
Sara Ravas Cooper (Reg. No. 0076543)
    Email: scooper@walterhav.com
    Direct Dial: 216-928-2898
WALTER | HAVERFIELD LLP
1301 E. Ninth Street, Suite 3500
Cleveland, OH  44114
(216) 781-1212 telephone
(216) 575-0911 facsimile

*Attorneys for Plaintiffs,*
*Nordonia Hills City School District*
*Board of Education and Hylant Administrative*
*Services LLC d/b/a HAS Claims Service*

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that, although this case is assigned to the standard case management track and, therefore, is subject to the 20-page limitation set forth in L.R. 7.1(f), the parties were granted leave to file a dispositive motion not to exceed 40 pages [see ECF # 83]. Accordingly, *Plaintiffs' Motion for Summary Judgment and Memorandum in Support* complies with that increased page limitation.

    /s/ Sara Ravas Cooper
    Sara Ravas Cooper

{02353707 -14}                    41

## CERTIFICATE OF SERVICE

A copy of the foregoing *Plaintiffs' Motion for Summary Judgment and Memorandum in Support* has been filed this 23rd day of April, 2018, through the Court's electronic filing system.


/s/ Sara Ravas Cooper
Sara Ravas Cooper