**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| _____ ) | |
| NORDONIA HILLS CITY SCHOOL DISTRICT ) | Civil Action No. 5:16-CV-01973 |
| BOARD OF EDUCATION, et. al. ) | |
| ) | |
|     Plaintiff, ) | JUDGE JOHN R. ADAMS |
| ) | |
|     v. ) | **DEFENDANTS', JASON WALLACE,** |
| ) | **DANIEL BACHE, AND WALLACE** |
| JASON D. WALLACE, et. al. ) | **& BACHE LLC, JOINT MOTION FOR** |
| ) | **SUMMARY JUDGMENT FED. R. CIV.** |
|     Defendant. ) | **P. 56** |
| _____ ) | |

    Defendants Jason Wallace, Daniel Bache and Wallace and Bache LLC ("Defendants"), jointly move this Honorable Court pursuant to Fed. R. Civ. P. 56 to grant Defendants' summary judgment in this matter. Defendants strongly believe that the hearing officers at the Administrative Due Process Hearing did not follow the appropriate standard of review.  Further, Plaintiffs have filed this cause for the sole purpose to   chill protected activities and to limit their potential liability for violations of the IDEA.  Accordingly, after a review of the record, pleadings, and briefs, this Honorable Court will see there is no genuine dispute as to any material fact and the Defendants are entitled to judgment as a matter of law.

Respectfully submitted,

DICAUDO, PITCHFORD & YODER, LLC

/s/J. Reid Yoder
J. Reid Yoder (0076587)
ryoder@dpylaw.com
Benjamin R. Sorber (0092739)
bsorber@dpylaw.com
209 S. Main St., Third Floor
Akron, OH44313
Telephone: 330.762.7477
Facsimile:  330.762.8059

*Attorneys for Defendants Daniel R. Bache, Jason D. Wallace, and Wallace & Bache, LLC*

# Table of Contents

I.   INTRODUCTION ................................................................................................................. 3

II.  FACTS ................................................................................................................................ 5

   A.  Seventh (7th) Grade ..................................................................................................... 5

   B.  Eighth (8th) Grade ....................................................................................................... 6

   C.  Ninth (9th) Grade ......................................................................................................... 7

   D.  Tenth (10th) Grade ...................................................................................................... 8

III. LAW .................................................................................................................................. 9

   A.  Summary Judgment Standard ...................................................................................... 9

   B.  IDEA Fee shifting Generally .................................................................................... 10

   C.  Fed.R.Civ.P. 54 and 28 U.S.C. § 1920. ................................................................... 12

IV.  ARGUMENT ................................................................................................................... 12

   A.  Plaintiffs' Claims and Alleged Damages are Barred by the Statute of Limitations. ................... 12

      1.  Plaintiffs waited too long to seek fees from the initial administrative hearing. ....................... 15

      2.  The School untimely sought fees for the Administrative Appeal. ........................................... 15

   B.  By the School losing its Motion to Dismiss and Motion for Directed Verdict this matter is per se not frivolous. ................................................................................................ 16

   C.  The standard to prevail against families or their counsel from an administrative hearing should be nearly impossible or extremely difficult ................................................... 17

      1.  Families get no benefit of discovery or guarantee they will receive any information to use at the administrative hearing ................................................................ 17

   D.  Families must exhaust administrative remedies as the Colemans sought to do prior to being able to pursue non-IDEA claims. ................................................................. 20

      1.  Suing parents or lawyers prior to filing an action in federal court for claims they were seeking to exhaust chills protected activities. .................................................. 21

   E.  This Court's due consideration of the underlying appeal in Case #: 5:16-cv-02445 does not lend credence to frivolousness nor would the record reflect such. ................................................. 22

      1.  The IDEA is unsettled, changes rapidly, and has changed significantly since the filing of the DPC. .......................................................................................................... 22

   F.  Nothing in this Matter can be Considered Frivolous ................................................ 23

      1.  The Hearing Officer did not meet the minimum requirements to be a hearing officer .......... 23

      2.  The IHO Used an Incorrect Standard of Law that changed more than a decade ago. ............. 24

   G.  The SLRO Appeal was not frivolous. ....................................................................... 25

V.   The Controversy is Sufficiently Based Upon a Real Threat of Injury to the Appellant and/or her Son Supported by Some Evidence. ............................................................................. 25

A.  Plaintiffs' Count I is refuted by the evidence and testimony presented at the administrative hearing ................................................................................................................................. 26

    1.  First substantiated fact is R.C. was in Ninth Grade ............................................. 27

    2.  Second substantiated fact is R.C. is a student that qualifies for protections under IDEA and 504/ADA as he suffers from depression, asthma, and migraines as well as other health impairments. ............................................................................................................... 28

    3.  Third substantiated fact is the District was aware of these disabilities prior to the expulsion they implemented without having conducted an evaluation of R.C. nor a manifestation determination. .................................................................................................................... 30

    4.  Fourth substantiated fact is the District did not conduct a manifestation determination review despite knowing of R.C.'s disabilities. ................................................................................ 31

    5.  Fourth substantiated fact is the Defendants alleged fact(s) in their initial due process complaint, the first amended due process complaint, and the second amended due process complaint that amount to a violation of the law. ........................................................... 30

VI.  Any argument this matter was filed for an improper purpose is itself being made with an improper purpose. ................................................................................................................................... 31

A.  A matter cannot be improper purpose if not frivolous. ........................................................ 31

B.  Public Policy Prevents an Award of Fees ............................................................................. 32

C.  Courts Should Award Fees to Prevailing School Districts in Only the Most Egregious Circumstances Because of the High Risk of a Chilling Effect. ........................................... 34

VII.  Plaintiffs frivolously sought unauthorized costs. ................................................................. 41

A.  The IDEA Procedural safeguards do not warn parents or attorneys of any other costs than attorneys' fees. ....................................................................................................................... 40

B.  Fed.R.Civ.P 54 only applies to matters in federal courts. ................................................... 40

C.  Hylant is not a proper party. ................................................................................................. 41

D.  There is no law firm liability. ............................................................................................... 41

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

This case is about a school district seeking to punish attorneys for bringing a special education administrative due process claim that was ultimately unsuccessful, to drive them out of business and further inhibit the ability of families to fight for the rights of their disabled children. Defendants Jason Wallace and Daniel Bache's clients, the Coleman family ("Clients" or "Coleman"), sought a special education administrative due process hearing alleging their minor child was a student with a disability for purposes of Section 504 of the Rehabilitation Act ("Section 504") and the Individuals with Disabilities Education Improvement Act ("IDEA"); that he was denied a free appropriate public education; the School failed to protect him from or to address bullying concerns; and, the school failed to conduct a manifestation determination prior to his latest disciplinary events.

At the time of filing the Due Process Complaint, the Colemans' minor child was a ninth-grade student at Nordonia Hills City School District ("Nordonia") and did not have an individualized education program ("IEP") or a 504 plan as required for students with disabilities pursuant to the IDEA and Section 504.  Additionally, at the time of the filing of the Due Process Complaint, the Colemans' minor child was being bullied regularly for years, forced to take only online classes, was not allowed on school grounds due to multiple disciplinary events in the ninth grade, including numerous physical altercations, and partially due to an alleged threat that the minor child would bring a firearm to school and commit an act of gun-related violence.

The Colemans' minor child experienced numerous problems in his seventh and eighth grade years as well.  These problems at school included being the target of racial slurs, suffering migraines so bad they caused blindness, poor concentration, poor grades and numerous disciplinary incidents.

However, this history was given little, if any review by the Plaintiff when evaluating the child.

The Plaintiff initially did not suspect the Colemans' minor child had a disability making him eligible for IDEA protections and support. Yet, by the time the Due Process Hearing was completed, the Colemans' minor child was provided with an IEP by Nordonia Hills City School District Board of Education ("Nordonia" or "Plaintiff")  The Colemans sought relief in the form of a different educational placement, compensatory education, counseling, outside tutoring, teachers to be trained in practical steps to spot and respond to bullying, to be named prevailing party, attorney's fees, and any other remedy the Impartial Hearing Officer ("IHO") feels appropriate. Unfortunately, the IHO did not find in favor of the Colemans.

Then, the Coleman family sought to continue to exhaust their administrative remedies and challenge the hearing officer's decision by appealing to a state level review officer ("SLRO"). Unfortunately, the SLRO improperly dismissed the Coleman family's claims by finding that they did not list grounds in their Notice of Appeal.[1]

Nordonia filed this original action for attorney's fees against Jason D. Wallace ("Mr. Wallace"), Daniel R. Bache ("Mr. Bache"), Roderick Linton Belfance LLP ("Roderick") and Wallace

---

[1] Grounds were listed by the Coleman family, including their desire to exhaust administrative remedies prior to bringing an action in a court of competent jurisdiction under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, even though the requirement of listing grounds was later removed by Ohio's legislature.  The General Assembly amended O.R.C. 119.12 to remove the requirement that notices of administrative appeals must state the grounds of the appeal, indicating that the General Assembly had decided that imposing that burden on appellants was no longer the public policy of Ohio.  *See Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 566 (1998) ("A legislative enactment, or statute, is initially introduced as a bill.  The introduction of a bill is a manifestation of public policy, which is determined primarily by the General Assembly.").  Thus, O.A.C. 3301-51-05(K)(14)(b)(i)(a) no longer represents a reasonable attempt to put the public policy announced by the General Assembly into action but, rather, now is directly in conflict with it.  See *Chambers* at 567; *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282, 287 (2001) ("It is axiomatic that if a statute provides the authority for an administrative agency to perform a specified act, but does not provide the details by which the act should be performed, the agency is to perform the act in a reasonable manner based upon a reasonable construction of the statutory scheme.").

& Bache, LLP ("Wallace & Bache, LLP"), (collectively "Defendants") with this Honorable Court on August 5, 2016 (Doc#:1).[2] Plaintiffs' Complaint alleged that Defendants filed a frivolous due process action for an improper purpose with the Ohio Department of Education under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1415 and Ohio Admin. Code 3301:51-05(K). Defendants are entitled to summary judgment in this matter as there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law and the Plaintiffs cannot prove their case based on the facts presented.

## II.    FACTS

The Defendants helped the Coleman family initiate an IDEA administrative due process hearing against their school district of residence, Nordonia Hills City School District, for their disabled minor son, R.C.

### A.   Seventh (7th) Grade

R.C. enrolled at Nordonia Middle school in the 7th grade in the 2012-2013 school year. Tr. 984[3]. He came from a sixth-grade class demographic at Noble Academy that was approximately 75% black and 25% other, where he had been earning a 2.88 grade point average (GPA). Tr. 989; P. Ex. pg. 141. Nordonia had an approximate demographic of 11% percent black, 80% white and 10 % other when R.C. enrolled in its district. Tr. 989. During the 7th grade, R.C.  started having social issues that disrupted school, performing poorly, and received multiple disciplinary actions. P. Ex. pg. 23, 101, 343, 433, 446.

Parent  consistently  checked  up  on  R.C.'s  progress  at  school  as  R.C.  began  missing  and

---

[2]Roderick Linton Belfance LLP ("Roderick") has been dismissed as a defendant.
[3]Plaintiff cites to her administrative due process hearing exhibits will be "P. Ex." followed by the page number ("pg.") that document can be located on the top of the document.  Further, the Plaintiff cites to the underlying administrative due process hearing transcript by using "Tr." followed by the page number.

turning in incomplete assignments, and was made to sit by himself. P. Ex. pg. 16. These missing assignments turned into one of the reasons for R.C. being disciplined. P.Ex. 309. As of October 2012, R. C. was failing two classes and had no grades above a C+. P. Ex. pg. 446. When Parent asked to observe R.C. at school due to her concerns, the teachers asked if it was really necessary. P. Ex. pg. 19. Although Parent kept checking on R.C. at school, R.C. continued to be harassed, bullied, and discriminated against, causing him to act out and be further disciplined. P. Ex. pgs. 12, 55-69, 94, 273, 315, 343, 344

Parent then notified the school of R.C.'s disability of migraines so bad they caused blindness in May 2013, discussing his missing school and poor grades, however, the school did nothing about it. P. Ex. pgs. 292, 322. R.C. continued to have disciplinary issues during the 7th grade. P. Ex. pg. 433.

**B.  Eighth (8th) Grade**

R.C.'s problems continued into the 8th grade at Nordonia, where he continued to be subjected to racial slurs, was disruptive in school, was in numerous physical altercations, and was disciplined through both in-school suspensions (ISS) and out of school suspensions (OSS). P. Ex. Pgs. 9, 39, 42, 43, 44, 47, 48, 65-66, 79, 89, 99, 100, 276. Even R.C.'s teachers expressed concern about his attitude, behavior and mood in the 8th grade. P. Ex. pgs. 277, 283, 294. During this 8th -grade year, R.C. was placed in an intervention group, and received at least nine (9) days out of school suspension and six (6) days in school suspension. P. Ex. pgs. 341-2, 560. Unfortunately, although the Opportunity Room is like an in-school suspension, it is unclear how many times R.C. was sent there as the school did not record them all. Tr. 186, 225-227. What is clear, however, is R.C.'s GPA dropped as low as 1.0 in the 8th grade, and the school failed to track his attendance correctly, showing only half a day's absence when it is clear he was out of school for at least nine days due to OSS. P. Ex. pg. 131.

### C.  Ninth (9th) Grade

At Nordonia City schools, a student's file doesn't contain all the students record from preceding years. Tr. 804. Therefore, Nordonia High School claimed it was unaware of R.C.'s prior disciplinary issues, social issues, and history of school disruptions and suspensions when he attended the 9th grade. *Id.* R.C. was placed in the Phoenix Alternative Learning Environment (PALE), the high school form of ISS, as well as other suspensions due to school disruptions and physical altercations. Tr. 451-3; P. Ex. pgs. 1-4, PALE is a small room environment used as an intervention to learning as well as for ISS. Tr. 452, 490, 536, 648.

R.C. attended the John's Hopkins University Adolescent Depression Awareness Program presented by Deborah Wallace, the District's Alcohol, Tobacco, and other drug and violence prevention and intervention program coordinator during the last week of February 2015. Tr. 1397-1403.  R.C. met with Ms. Wallace twice to discuss his belief he met the criteria of the mental health issues she was discussing and was trying to figure out why he felt angry most of the time. Tr. 1400, 1408, 1410. Ms. Wallace had been aware of R.C.'s physical altercations and violence in the school district through emails. P. Ex. pgs. 773-783. Despite R.C. coming to her to discuss his irritability, anger and fitting the depression profile and having knowledge of his past physical confrontations, Ms. Wallace did not act to advise other personnel or to have R.C. screened for disability. 1408.

On March 2, 2015, R.C. had yet another physical altercation and disruption of school, leading him to be suspended, recommended for expulsion, and ultimately removed from the general population, placed in the school's digital program, and prohibited from attending any school functions or being on school property. P. Ex. pgs. 148-150, 773-778. Parent then requested an evaluation for an IEP (Individualized Education Plan) on March 24, 2015. P. Ex. pg. 172. The District denied a suspicion of a disability for R.C. and refused an initial evaluation on April 16, 2015,

7

while at the same time acknowledging R.C. suffers from asthma and migraines. P. Ex. pgs. 163-4. The District then, on May 6, 2015 proposed to do an evaluation. P. Ex. pg. 165. Parent filed her due process May 7, 2015 and amended the complaint on May 13, 2015.

The district referred R.C. for an evaluation on June 1, 2015, recognizing he had been out of school for more than 15 days due to disciplinary events. P. Ex. pgs. 450-451. Despite, knowing R.C. had been out of school for more than 15 days, the evaluation was not completed until June 24, 2015. The District's IEP team decided more information was needed to determine if R.C. qualified for an IEP due to a disability so a meeting was set for July 30, 2015 to allow for R.C. to be screened by Dr. Depolo at Kidslink. P. Ex. pgs. 485-6, 767-8. The IEP team found R.C. eligible for an IEP. P. Ex. pgs. 759-761.

### D.  Tenth (10th) Grade

The IEP team developed an IEP for R.C. on August 20, 2015, P. Ex. pgs. 507-525. The IEP created for R.C. contained only one goal addressing behavior, although his disability was based on social, emotional, anxiety, and peer-related issues. P. Ex. pg. 513. At the time the IEP was drafted, Dr. DePolo felt a label of Emotional Disturbance (ED) due to a disability of Post-Traumatic Stress Disorder (PTSD) would be too stigmatizing for R.C. and placed him the category of Other Health Impairment (OHI). Tr. 614. Dr. DePolo testified she believed R.C. was not improving socially at all during the tenth grade and kept peers at a distance. Tr. 613.

Although R.C.'s grades improved and he had no disciplinary incidents in the tenth grade, he was not interacting socially or going out and doing a lot of things. P. Ex. Pgs. 557-558; Tr. 613. After implementing the IEP, R.C. made the merit roll with a GPA of 3.286, a 2-point improvement from his lowest GPA in 8th grade and 1.2 from 9th grade, evidencing the previous denial of FAPE. P. Ex. pgs. 715-716.

8

## III.    LAW

### A.  Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted" if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."*Phillips v. Manning*, N.D.Ohio No. 4:16-cv-2764, 2018 U.S. Dist. LEXIS 9813, at 5-7 (Jan. 22, 2018).  The *Phillips* Court continued:

> An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

> In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence [*7] that the [non-moving party] is entitled to a verdict[.]" *Id.* at 252.

> Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034, 274 U.S. App. D.C. 340 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

*Id.*

### B.  IDEA Fee shifting Generally

"We have also stated that "[a] request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and have accordingly avoided an interpretation of the fee-shifting statutes that would have "spawn[ed] a second litigation of significant dimension," *Garland, supra,* at 791, 109 S.Ct. 1486." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 609, 121 S. Ct. 1835, 1843, 149 L. Ed. 2d 855 (2001).  Yet, either to attempt to run up attorneys' fees or to make it harder for the Coleman family or her attorneys to litigate the underlying case and future case against the School,[4] the Plaintiffs have created an additional lawsuit which has morphed into significant Regardless of the Plaintiffs bad faith that will be shown in this brief, it is very difficult for a school to shift fees to a parent or attorney.  "[I]n the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).  Plaintiffs request for attorneys' fees is brought pursuant to the IDEA fee-shifting clauses at 20 U.S.C. § 1415(i)(3)(B)(i)(II)-(III).  The IDEA empowers a court to award attorney's fees "to a prevailing party who is an SEA or LEA against the attorney of a parent **who files a complaint or subsequent cause of action** that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation **clearly became frivolous**, unreasonable, or without  foundation." 20  USC  1415 (i)(3)(B); 34  CFR

---

[4] The family intends on continuing forward with the other claims raised and attempted to be exhausted in their administrative due process hearing against the School regardless of the outcome if this matter. However, the Plaintiffs actions have forced the family to retain new counsel solely because of the instant frivolous fee-shifting action aimed filed solely to chill protected activities. solely

300.517 (a)(1)(ii) (emphasis added). Also, the IDEA allows an award of attorney's fees "to a prevailing SEA or LEA against the attorney of a parent, or against the parent, **if the parent's <u>request</u> for a due process hearing or subsequent cause of action** was <u>**presented**</u> for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 34 CFR 300.517(a)(1)(iii) (emphasis added). The IDEA fee shifting clause was enacted to add "reasonable attorney's fees to the list of recoverable costs set out in 28 U.S.C. § 1920, the general statute covering taxation of costs, which is strictly limited by § 1821." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 292, 126 S. Ct. 2455, 2456, 165 L. Ed. 2d 526 (2006)

Compared to IDEA's provision that allows a parent to receive attorney's fees simply as a prevailing party, there is a heightened standard for school districts to meet that aligns with case law holding that fees should not shift to prevailing school districts except in the most egregious cases. *SeeR.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011) ("The IDEA allows a prevailing state educational agency or school district to collect fees in certain rare circumstances.") As the Ninth Circuit noted, "the IDEA's language granting fees to prevailing defendants is nearly identical to the standard the Supreme Court developed in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), which is now the standard for awarding fees to prevailing defendants in civil rights cases." *Id.* "[B]ecause '[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction,' it 'must be limited to truly egregious cases of misconduct.'" *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 437 (6th Cir. 2009) (*quoting Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)); *see Serrano v. Cintas Corp.*, 699 F.3d 884, 905 (6th Cir. 2012) (finding that losing numerous motions, failing to respond properly to discovery requests, refusal to produce information, and withdrawal of claims for lack of merit did not constitute egregious and unreasonable conduct). Plaintiffs in this matter cannot meet this difficult burden.

11

### C.  Fed.R.Civ.P. 54 and 28 U.S.C. § 1920.

Since the IDEA fee shifting clause allows reasonable attorney's fees to be provided to prevailing parents and rarely, some school in very limited circumstances, only as part of 28 U.S.C. § 1920, both that statute and Fed. R. Civ. P. 54(d) must be examined.  The recoverable costs under Rule 54(d) are defined in 28 U.S.C. § 1920.  *Crawford Fitting Co. v. J.T. Gibbons*, 482 U.S. 437, 441-42 (1987) (Section 1920 "enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)").  The Supreme Court has viewed these costs as narrow in scope and, in sum, a fraction of the full expenses ordinarily incurred in federal litigation. *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012).  Recovery pursuant to Rule 54(d) is limited to certain enumerated categories of costs. *See* 28 U.S.C. § 1920 (listing appropriate items of cost); *see also In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 359 (6th Cir. 2007) ("[T]he discretion that Rule 54(d)(1)  gives courts ... is discretion to decline requests for costs, not discretion to award costs that § 1920  fails to enumerate.").

## IV.    ARGUMENT

### A.  Plaintiffs' Claims and Alleged Damages are Barred by the Statute of Limitations.

> The question presented in this case—an action brought under the statute now known as the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 et seq.—is what limitations period applies to the filing of suits for attorney fees incurred in administrative proceedings where the substantive issues were resolved in favor of the claimants. The Act itself contains no statute of limitations for such situations, and there is a circuit split as to the approach that should be followed in filling the gap.

*King ex rel. King v. Floyd Cty. Bd. of Educ*., 228 F.3d 622, 623 (6th Cir. 2000). *King* involved a case where a dispute between parents and a school district involving the IDEA had proceeded through the administrative stages in Kentucky and where the parents had been determined to be the prevailing parties at the administrative level.  More than nine months later, the parents filed an action in district court under the IDEA fee shifting statute, seeking an award of attorney fees.  The *King* court

recognized that the IDEA itself does not include a statute of limitations for bringing an attorney fee action as authorized by 20 U.S.C. § 1415(i)(3)(B)(i).

The *King* court determined that (1) because the IDEA contained no specific statute of limitations, the most appropriate state statute of limitations must be determined by the Court; (2) generally, courts determine which state statute or cause of action is most analogous to the federal cause of action, (3) the fee claim authorized by 20 U.S.C. § 1415(i)(3)(B)(i) is "ancillary to the underlying education dispute" and "part and parcel" of the administrative proceeding; and (4) therefore, Kentucky's general statute that applied 30-day statute of limitations for appeals from an administrative order was appropriately applied.

Understanding that the Sixth Circuit Court of Appeals has determined that an award of fees is, in essence, an extension of the administrative proceedings, in Ohio O.R.C. § 119.092 supplies the most analogous statute of limitations/deadline for seeking a fee award. Specifically, O.R.C. § 119.092(C) allows a party to file an action in common pleas court requesting the court to make a ruling on a fee award to a prevailing party in an administrative action.  The deadline set forth in O.R.C. § 119.092(C) for filing such an action is "the period specified in section 119.12 of the Revised Code."   In other words, the action involving fee awards to a prevailing party in an administrative proceeding must be commenced within fifteen days after the mailing of the notice of the agency's order.  *See* O.R.C. 119.12(D) (specifically stating "[f]or purposes of this paragraph, an order includes a determination appealed pursuant to division (C) of section 119.092 of the Revised Code.").  With this understanding, O.R.C. § 119.12's 15-day limitations period is the Ohio limitation period that most closely resembles the School District's cause of action for attorney fees.

It is important for the Court to understand that Ohio Revised Code Section 3323.05(H) does not supply the appropriate statute of limitations for bringing an action for attorney fees under the

13

IDEA. Revised Code Section 3323.05(H) does little other than repeat the language of 20 U.S.C. §1415(i)(2)(B), which states that "[t]he party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action under this subchapter, in such time as the State law allows."[5] This statutory language was present in the IDEA when the *King* court issued its decision, and yet the *King* court determined that "the Act itself contains no statute of limitations [for bringing an action for attorney fees]." The *King* court did not determine that Ky.Rev.Stat. 13B.140(1) included an "an explicit time limitation" for bringing an attorney fee action (as opposed to an appeal of a hearing officer's decision) – only that it was the most analogous statute to a situation where an action for attorney fees is brought by the prevailing party at the administrative level.

Both Ohio Revised Code Section 3323.05(H) and 20 U.S.C. §1415(i)(2)(B) provide appeal rights only to an "aggrieved party." The Plaintiffs were not aggrieved by any aspect of either the IHO decision or the SLRO decision – instead they seek fees based on its status as a prevailing party. It is O.R.C. §§ 119.092(C) and 119.12 that together provide a limitations period for a prevailing party of an administrative proceeding to commence an action in court to recover attorney fees. Therefore, the limitations period for parties seeking fees, i.e. parties that not aggrieved by the IHO or SLRO decision is fifteen days.

Similarly, short time limitations for seeking attorney fee awards are generally recognized as proper. Compare *King* (30 days), *Powers v. Indiana Department of Education, Division of Special*

---

[5] O.R.C. §3323.05(H) keeps 20 U.S.C. §1415(i)(2)(B)'s 90-day limitation for an aggrieved party to file an appeal from an SLRO's decision to federal court and prescribes a 45-day limitation period if an *aggrieved* party chose to file an appeal in state court. O.R.C. §3323.05 says nothing about the limitations period for a prevailing party to file an action seeking attorney fees. Accordingly, it cannot be said to be the state cause of action that is most analogous to the federal cause of action for attorney fees.

*Education*, 61 F.3d 552 (7th Cir.1995) (30 days) and O.R.C. §2323.51(B)(1) (providing 30 days to file a motion with a court for attorney fees as sanctions after final judgment).  When discussing the impact of a thirty (30) day time period the Sixth Circuit in *King* considered Federal Rule of Civil Procedure 54(d)(2)(B) when holding that a short time period to recoup fees was consistent with federal law or policy and stated:

> We are strengthened in this view by the thought that if the plaintiffs had not prevailed on the underlying educational issues until the judicial review stage, they would have had only 14 days after the entry of judgment within which to move for attorney fees. Rule 54(d)(2)(B), Fed. R. Civ. P.

*King* at 627.  Therefore, allowing the Plaintiffs fifteen (15) days to submit an action for fees is clearly reasonable.

### 1.  Plaintiffs waited too long to seek fees from the initial administrative hearing.

"[T]he questions of whether or not a civil action is frivolous is an entirely separate question from whether or not an appeal is frivolous." *Early v. Toledo Blade Co.*, 6th Dist. Lucas No. L-11-1002, 2013-Ohio-404, ¶ 13.  Plaintiffs have missed the statute of limitations on when to file its claims and therefore the  statute of limitations has expired.

The impartial hearing officer ("IHO") issued the decision for the underlying administrative due process hearing on the 2nd day of May 2016.Doc #: 1-5.Plaintiffs filed the instant action on the 5th day of August 2016. Thus, Plaintiffs' Complaint was filed approximately ninety-five (95) days after the date of the IHO's decision.  Doc #: 1. Plaintiffs' Complaint seek attorneys' fees and costs for the initial administrative due process hearing, and as such, deprives this Honorable Court of subject matter jurisdiction over the instant action.

### 2.  The School untimely sought fees for the Administrative Appeal.

The IHO ruled in favor of the Plaintiff school district for all claims brought by the Coleman family. Being the only aggrieved party, the Coleman family filed an appeal to the state level review

15

officer ("SLRO") approximately forty-three (43) days later, on the 15th day of June 2016. Case: 5:16-cv-02445-JRA Doc #: 1-3. The SLRO dismissed the Coleman family's appeal on 7th day of July 2016. Doc #: 1-6. Plaintiffs filed the instant action on the 5th day of August 2016. Thus, Plaintiffs' Complaint was filed twenty-nine (29) days after the SLRO's decision.  Hence, Plainitiff's file its claim two weeks too late and as such, the Plaintiffs' Complaint must be dismissed in its entirety.

   **B.  By the School losing its Motion to Dismiss and Motion for Directed Verdict this matter is per se not frivolous.**

       "The mere fact that [the student] survived the Motion to Dismiss and Motion for Summary Judgment makes it such that [the district] cannot now effectively argue that the claims were frivolous, unreasonable, or without foundation," Judge Mannion wrote. *Shadie v. Hazelton Area Sch. Dist.,* 66 IDELR 106 (M.D. Pa. 2015).   "This Court has stated previously that "we are at a loss to understand how a case that is strong enough to withstand a motion for judgment at the conclusion of the plaintiff's proofs can be considered 'frivolous, unreasonable, or without foundation' " under *Christiansburg. Haynie v. Ross Gear Div. of TRW, Inc.,* 799 F.2d 237, 242 (6th Cir.1986) (per curiam), *vacated as moot,* 482 U.S. 901, 107 S.Ct. 2475, 96 L.Ed.2d 368 (1987)."  *Brooks v. Ctr. Park Assoc.*, 33 F.3d 585, 588 (6th Cir.1994).

       Further "[a]lthough the Court ultimately found in favor of the school district, R.H.'s parents here were well within their rights under the IDEA and their obligations as parents to ensure that their son is afforded all the opportunities available to him. R.H.'s parents were only seeking the best for their son. The Court finds that, absent clear authority mandating them to do so, they should not be required to take on additional financial burdens solely because they sought adjudication of this matter."  *R.H. v. Plano Indep. Sch. Dist.*, No. 4:06CV352, 2008 WL 906289, at *10 (E.D. Tex. Mar. 31, 2008), *aff'd*, 607 F.3d 1003 (5th Cir. 2010); *Khan v. Gallitano*, 180 F.3d 829, 836 (7th Cir. 1999) (indicating there is a significant difference between making a weak argument with little chance of

success and making a frivolous argument with no chance of success, the court held the plaintiff's substantive due process claim was not frivolous even though a prior decision of the circuit involved somewhat analogous facts).

In the instant matter, the School filed a Motion to Dismiss on December 18, 2015 and lost on all aspects of it. Doc #: 1-5 PageID #: 45.  Additionally, the School filed a "Motion for Judgment on the Partial Findings, or in the Alternative, for Involuntary Dismissal (Directed Verdict) and Memorandum in Support" on January 30, 2016 and again lost on all aspects of it.  Doc #: 1-5 PageID #: 46.  The Plaintiffs now requestthis Honorable Court to ignore the binding precedent of the United States Sixth Circuit.  Plaintiffs have attempted to frightene the Defendants in hopes that it will have a chilling effect on other causes of actions.  This strategy is implemented for the sole purpose to  chill protected activity.

**C.  The standard to prevail against families or their counsel from an administrative hearing should be nearly impossible or extremely difficult**

**1.  Families get no benefit of discovery or guarantee they will receive any information to use at the administrative hearing**

The Defendants did not receive the benefit of discovery during this action as the IDEA in Ohio does not provide for discovery prior to administrative hearings. Other than an ability to access educational records prior to the hearing, a party does not have the right to receive formal discovery. The Defendants reasonably sought discovery in Case #: 5:16-cv-02445 because they felt it would benefit their ability to prove their case and **they were able to do so**.  There can be no malice or improper purpose viewed by this, especially since other courts have allowed discovery. *SeeBurton v. Clev-Heights Univ*-Heights, 1:17-cv-00134-PAG Doc #: 19 Filed: 07/07/17 2 of 3. PageID #: 499.

Before a trial in civil court, the parties may seek discovery through depositions, document requests, interrogatories, requests for admission, and other techniques, and benefit from mandatory

disclosures of material under Rule 26(a). Fed R. Civ. P. 26(a)(1), 26(a)(5). For purposes of a *Christiansburg* fee-shifting analysis, an IDEA plaintiff, lacking standard discovery tools, cannot be expected to know in advance of trial that a case is frivolous to the same degree that a typical civil plaintiff would. Rather, significant problems with the case may not be discovered until witnesses testify at the hearing. As the Supreme Court recognized in *Christiansburg*, "the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial." *Christiansburg v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978).

As Defendants have never had the benefit of discovery in this matter, they can only complete their due diligence on the information they have or able to receive, and the record before this Court shows the Defendants exercised due diligence in their investigation.  For a court to engage in post hoc reasoning to justify awards of fees may be unreasonable when decisive facts may not emerge until discovery or trial. *Christiansburg* 34 U.S. at 422, 98 S.Ct. at 700–701. "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.*   This is especially true when comparing IDEA administrative due process hearings to the generally much more time-consuming period for judicial proceedings, the regulations specify a maximum of 45 calendar days from the date of receipt of the hearing request to the date of the decision except for specific extensions of time that the hearing officer grants upon request of either party. 34 C.F.R. §§ 300.515(a), 300.515(c) (2006). For those states that have opted for a review-officer stage, the regulations provide for a 30-day period for such review, exclusive of extensions. § 300.511(b). As the comments accompanying the regulations make clear, these time limits are "long-standing." 64 Fed. Reg. 12,618 (Mar. 12, 1999) (Attachment I to IDEA regulations). They date back to the original regulations in the late 1970. *See, e.g.*, Steven S. Goldberg, *Special Education Law*, (1982). In the legislative history of the original legislation, Senator Williams

18

emphasized the importance of promptly providing eligible children with special education and related services, declaring: "It is expected that all hearings and reviews conducted pursuant to these provisions will be commenced and disposed of as quickly as practicable…." 121 CONG. REC. 7, 416 (1975).

Accordingly, given the time and material available to the Defendants, it should be near impossible for a court to award fees to a School when the Defendants have not had the benefit of any discovery, complains of needing access to records or discovery, and fails to sustain the burden of proof in their clients claim.

**D.  Families must exhaust administrative remedies as the Colemans sought to do prior to being able to pursue non-IDEA claims.**

Schools should not ever be able to collect attorneys' fees against a parent or attorney who filed an IDEA action in part to exhaust administrative remedies prior to bringing an action under those other laws.  20 USC § 1415(l) requires exhaustion of administrative IDEA remedies prior to initiating such action. *See also* 34 C.F.R. § 300.516(e).  State and federal complaint procedures other than the IDEA due process hearing do not suffice to comply with IDEA's requirement of exhaustion of administrative remedies; even the complaint resolution procedures (CRP) which implement IDEA are not an adequate alternative to exhausting administrative remedies under IDEA. *Weber v. Cranston School Commt.,* 212 F.3d 41, 53 (1st Cir.2000)*.*

Here, the Due Process Complaint and clarification of claims submitted by the Coleman family indicated they were seeking action under non-IDEA statutes and when appealing the IHO's decision the Coleman family indicated they were trying "to seek exhaustion under the IDEA in order to pursue their claims under the American with Disabilities Act, 42 U.S.C. §1983, Section 504 of the Rehabilitation Act of 1973 and any other applicable Federal or State provisions." *See* Parent's Notice of Appeal Case: 5:16-cv-02445-JRA Doc #: 1-3.  Clearly, the family was trying to receive and

19

adjudication on non-IDEA claims eventually.

The Supreme Court of the United States' timely decision of February 22, 2017 greatly informs this Court's review of its obligations in this matter. As the High Court recently clarified, the laws governing the rights of students asserted to be a child with a disability under the IDEA require that before the filing of a civil action seeking relief that is also available under the IDEA, the IDEA's administrative procedures shall be exhausted to the same extent that would be required had the action originally been brought under the IDEA.[6]*Fry v. Napoleon Community Schools*, slip opinion, 580 U.S. __, No. 15-497 (2017). The U. S. Supreme Court emphasized that when an individual seeks relief "that is also available under the IDEA," the exhaustion of administrative remedies requirement is tantamount.

Prior to the *Fry* decision, courts were split and had a variety of different outcomes when a family filed an action under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act against a school without having an IDEA administrative due process hearing, even when they were seeking a remedy that is not available under the IDEA and often when they had no IDEA issues altogether. Consider this passage from the Sixth Circuit prior to Fry when discussing exhaustion:

> [t]his does not mean that the courthouse door is open simply because administrative remedies are no longer available. *See Woodford v. Ngo*, 548 U.S. 81, 89–91, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Instead, parties "exhaust" state administrative remedies only when they properly present their claims to the relevant state administrative agency. *See Children's Ctr. for Developmental Enrichment v. Machle,* 612 F.3d 518, 522 (6th Cir. 2010). The reason is simple: Exhaustion not only "enables the agency to develop a factual record" and "apply its expertise," but also allows an agency "to correct its own mistakes," thereby "promoting accuracy, efficiency, agency autonomy, and judicial economy." *Donoho ex rel. Kemp v. Smith Cty. Bd. of Educ.*, 21 Fed.Appx. 293, 296 (6th Cir. 2001) (quoting *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir. 1989)). These benefits are particularly valuable where the question touches on a traditional state and local function in which we have

---

[6] This exact case was presented to the IHO in order for her to understand the exhaustion requirement, however, no amount of discussion could persuade the IHO to understand the exhaustion requirement of 20 USCS § 1415(l). See Tr. 110-113.

little expertise, such as primary and secondary education. *See Burilovich v. Bd. of Educ. of Lincoln Consol. Sch.*, 208 F.3d 560, 567 (6th Cir. 2000).

*Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423, 431–32 (6th Cir. 2016).

As indicated above, Parent raised multiple Section 504 of the Rehabilitation Act claims in her Due Process Complaint and the Parent was seeking at least one remedy that is available under the IDEA as well as having separate IDEA claims. Doc ##: 1-2, 1-3, 1-4. The School should not receive a windfall of attorneys' fees because the Defendants were following the directives of the legislature and Supreme Court in *Fry*.

The Defendants view is supported by other courts as well.  For example, a parent who prevailed on a Title II claim against a California district could recover attorney's fees that she incurred in an IDEA administrative proceeding she filed to exhaust her administrative remedies, despite the fact that the ALJ only considered her unsuccessful IDEA claims. The U.S. District Court, Central District of California awarded the parent $369,608 in fees and costs, including $55,622 for the due process hearing. *K.M. v. Tustin Unified Sch. Dist.,* 65 IDELR 232 (C.D. Cal. 2015).

1. **Suing parents or lawyers prior to filing an action in federal court for claims they were seeking to exhaust chills protected activities.**

Though awarding fees against a losing civil rights plaintiff is "an extreme sanction" reserved for "truly egregious cases of misconduct," *Riddle v. Egensperger,* 266 F.3d 542, 547 (6th Cir.2001) (citation omitted), courts grant fees where "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith," *N.E. v. Hedges,* 391 F.3d 832, 836 (6th Cir.2004) (citation omitted). In making this determination, courts should "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421–22, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

*Sagan v. Sumner Cty. Bd. of Educ.*, 501 F. App'x 537, 541 (6th Cir. 2012)

As indicated throughout this Brief, Courts must be conscious of and attempt to avoid the chilling of protected activities as the School is actively seeking to do. If the Court were to award fees now when

the Coleman family was openly seeking to exhaust administrative remedies it would go against the intent of the IDEA and civil rights actions and would have the chilling effect that Congress has expressly warned of and attempted to prevent.  There would no longer be any private attorneys willing or able to help the advancement and enforcement of issues for Ohio's disabled children because lawyers would be concerned with incurring a six-figure debt if they lost in Ohio's due process system.

**E.  This Court's due consideration of the underlying appeal in Case #: 5:16-cv-02445 does not lend credence to frivolousness nor would the record reflect such.**

Although Defendants disagree with the IHO's Decision, her consideration of the matters does not lend credence to frivolousness nor would the record reflect such. Compare to *C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1245 (9th Cir. 2015) ("the ALJ's careful analysis, findings of fact, and conclusions of law indicate the seriousness of K.S.'s claims.). This Honorable Court has yet to decide in Case #: 5:16-cv-02445.The careful analysis this Court is employing shows the administrative appeal was not frivolous and is yet another reason Nordonia'sfrivolous claimfor fees and costs must fail.

**1.  The IDEA is unsettled, changes rapidly, and has changed significantly since the filing of the DPC.**

At the time of filing the DPCs, the *Deal* standard was used when applying FAPE in the Sixth Circuit.*Deal v. Hamilton County Bd. of Educ.,* 42 IDELR 109 (6th Cir. 2004). However, in her decision, the IHO only cites *Deal* when discussing meaningful participation and uses the *Rowley* standard for the application of FAPE. *Hendrick Hudson Dist. Bd. of Educ. v. Rowley,* 458 U.S. 176 (1982). The standard has since changed again as the Supreme Court has decided the *EndrewF* standard, akin to the *Deal* standard, is now the official law of the land.*Endrew F. v. Douglas Cty Sch. Dist*. RE-1, 137 S.Ct. 988, at 999 (2017).The Defendants cannot be found frivolous if the IHO did not

use the correct standard of law and the SLRO would not hear the appeal when the Defendants' *Notice of Appeal* clearly states the Decision is "not made in accordance with existing law."

The Sixth Circuit moved away from the *Rowley* standard for FAPE in 2004 to the *Deal* standard stating that the IDEA requires an IEP to confer a "meaningful educational benefit" gauged in relation to the potential of the child at issue. *Deal v. Hamilton Cty. Bd. of Edn.*, 392 F.3d 840, 862 (6th Cir.2004). During the pendency of this action, the Supreme Court announced yet another standard for free appropriate public education in *Endrew F.Endrew F. v. Douglas Cty Sch. Dist*. RE-1, 137 S.Ct. 988, at 999 (2017). Additionally, on February 22, 2017, the United States Supreme Court vacated and remanded the Sixth Circuit's Decision in *Fry*, framing new standards and limits to the "exhaustion doctrine." *Fry v. Napoleon Community Schools*, 137 U.S. 743, 748, 197 L.Ed.2d 46 (2017). Both of these issues directly impacted the Defendant's case because the Defendant has always maintained her desire to raise a Section 504 of the Rehabilitation Claim after her exhaustion of administrative remedies under 20 USCS § 1415(l) and show this area of law is continually changing and was unsettled prior to the Defendant's filing of the administrative appeal, which should help to prohibit an award of cost against the Defendant.

Lawyers are unlikely to be found to have violated rules regarding pleading standards and frivolousness where the legal issue in question is unsettled. *iThompson v. Sup. Ct. Comm. on Prof'l Conduct*, 252 S.W.3d 125, 128 (Ark. 2007). If the IHO does not know the law because the legal issue in question is unsettled, how can the litigants before her be sanctioned for frivolousness?

### F.   Nothing in this Matter can be Considered Frivolous

#### 1.   The Hearing Officer did not meet the minimum requirements to be a hearing officer

Hearing officers must possess knowledge of, and the ability to understand the IDEA, federal and state regulations pertaining to the IDEA, and legal interpretations of the idea; the ability to

conduct hearings with appropriate standard legal practice, and must possess knowledge and the ability to render and write decisions in accordance with appropriate, standard legal practice. O.A.C. 3301-51-05(K)(10)(c)(ii)(b)-(d).  The hearing officers in the underlying administrative due process hearing did not meet these requirements because they did not know or understand the basics of the IDEA or the law in general.

> **2.  The IHO Used an Incorrect Standard of Law that changed more than a decade ago.**

The IHO used an "anachronistic" standard that has not been good law in the Sixth Circuit since 2004 and arguably since 1997.Oakstone Cnty. Sch. v. Williams, No. 2:11-CV-1109, docket entry #66 at pg. 4 (S.D. Ohio June12, 2013). The Oakstone Court indicated:

> Since 1997, the IDEA has required "an IEP to confer 'meaningful educational benefit gauged in relation to the potential of the child at issue." *Deal v. Hamilton County Bd. Of Educ.*, 392 F.3d 840, 862 (6th Cir. 2004). The Sixth Circuit explicitly recognized the abrogation and provided the new governing standard for IDEA claims in Deal.

> A basic LEXIS or WestLaw search reveals that *Deal*, not *Rowley*, states the Controlling IDEA standard in the Sixth Circuit. [The School's] counsel regularly litigates under the IDEA and should be aware of the law as it has stood for nearly a decade… What is more egregious still is that [the School's] counsel is manifestly aware of the *Deal* case because she cites it multiple times in the memorandum she requests leave to file. It confounds the imagination that an experienced lawyer could have read the *Deal* case and missed the following section:

> We [the Sixth Circuit] agree that the IDEA requires an IEP to confer a"meaningful educational benefit" gauged in relation to the potential of the child at issue.

Id. at pgs. 4-6.

The *Oakstone* Court went on to say:

> The egregious conduct of [the School's] counsel is that the legal standard for which [the School's] counsel argued in the motion has not been good law in the Sixth Circuit since 2004, and arguably since 1997. A cursory inquiry into the IDEA would have put [the School's] counsel on notice of that fact. The conduct is particularly troubling in light of the fact that [the School's] counsel is experienced in education law and regularly litigates under the IDEA, apparently without knowing the current state of the case law. Such ignorance is not reasonable

for a litigator so experienced in the IDEA.

Id. at pg. 9.

The IHO in this matter has been a hearing officer since 1998, used the same legal standard as the attorney in *Oakstone* despite citing *Deal* in her Decision, and does not appear to use the correct standard of law in any of her decisions relating to the substantive provisions of FAPE since 2004, including in this matter. *See* Case: 5:16-cv-02445-JRA Doc #: 14-5; Doc #: 1-5 Filed: PageID #: 67. This "egregious conduct" is extremely detrimental to children and families since the standard the IHO uses does not provide children the level of educational benefit they are due in our circuit; which is her job to know. Clearly, "such ignorance is not reasonable for a litigator so experienced in the IDEA." This failure to apply the correct standard of law in numerous cases is causing harm to many children in theState of Ohio, has caused harm to R.C., and must be rectified to prevent further harm to children in our state.

### G.  The SLRO Appeal was not frivolous.

As indicated in the *Plaintiff's Brief in Support of Judgment on the Administrative Record*, Case: 5:16-cv-02445- Doc #: 14, other SLRO's in Ohio have held that no specific grounds need to be listed in order to appeal a decision of an IHO.  Case: 5:16-cv-02445- Doc #: 14-3.This fact, coupled with the fact that the Colemans did list grounds in their Notice of Appeal makes the SLRO appeal proper.[7]

### V.  The Controversy is Sufficiently Based Upon a Real Threat of Injury to the Parrent and/or her Son Supported by Some Evidence.

The Sixth Circuit has found the Court must consider whether the controversy is sufficiently

---

[7]Defendants seek to incorporate the Brief filed regarding the SLRO appeal that is currently pending before this Honorable Court in Case: 5:16-cv-02445-JRA Doc #: 14.

based upon a real threat of injury to the plaintiff. *Oakstone Community School v. Williams*, S.D.Ohio No. 2:11-cv-1109, 2012 U.S. Dist. LEXIS 130449, at (Sep. 13, 2012). This is akin to the Seventh Circuit's holding "a case is likely not frivolous if the controversy is based on an actual threat to the plaintiff (i.e., if the plaintiff was or would be injured)." *Lebeau v. Libbey-Owens-Ford Co.*, 799 F.2d 1152, 1156 (7th Cir. 1986). Here, there is no doubt that the central issue the parties were litigating had to do with protections for R.C.'s Acute Stress Disorder, depression, suicidal ideations, and bullying at school and how that applies to the IDEA.  Additionally, the Sixth Circuit holds "[w]hen applying the *Christianburg* standard, the Sixth Circuit has found civil rights claims not "without foundation, frivolous, or unreasonable" when they are supported by "some evidence." *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 186 (6th Cir. 1985). *Oakstone Community School v. Williams*, S.D.Ohio No. 2:11-cv-1109, 2012 U.S. Dist. LEXIS 130449, at *11-12 (Sep. 13, 2012). As shown supra, each of the claims in the DPCs were supported by "some evidence." Thus, Plaintiff's claims must fail as a matter of law, yet again entitling Defendants to summary judgment.

### A.  Plaintiffs' Count I is refuted by the evidence and testimony presented at the administrative hearing

The Plaintiffs' allegations are put forth in the single count against the Defendants. Doc#: 1 PageID ##: 24-26. Plaintiffs' allege Defendants were **frivolous, unreasonable, and/or without foundation** and the claims identified by Defendants in the various due process complaints were based on **factually erroneous allegations, were wholly without merit, were frivolous and without factual or legal foundation, and had absolutely no chance at success**. *Id, Emphasis added.* Plaintiffs go so far as to allege "**None of the material facts** alleged in the initial due process complaint, the first amended due process complaint, or the second amended due process complaint **were accurate and Defendants were clearly on notice of these deficiencies** and their continued pursuit of them unreasonably prolonged litigation against the Board." *Id* ¶101, Emphasis added.

26

Plaintiffs neglect the IHO restricted Petitioner's claims in the DPCs prior to the hearing by requiring a *Clarification of Issues* to be filed, even though the DPC is a minimal pleading standard and did not require exacting specificity of claims.[8] *See* Clarification of Issues dated December 1, 2015, *see also Woods v. Northport Pub. School, W.D.Mich. No. 1:09-cv-243,* 2011 U.S. Dist. LEXIS 35330, at \*24 (Mar. 31, 2011). The IHO then spent extraordinary amounts of time arguing the issues and the jurisdiction to hear matters related to FAPE under 504. Tr. 84-113. Even though the exhaustion requirement of 20 USCS § 1415(l) was raised in the hearing and the Section 504 FAPE related issues were presented in the *Clarification of Issues*, the DPCs, and discussed throughout the hearing, the Plaintiffs in this matter wholly ignore the requirement to exhaust FAPE issues when they bring this frivolous claim. *See Id.,* Doc ##: 1-2, 1-3, 1-4; Tr. 27, 28, 29, 30, 31, 33, 37, 38, 42, 111, 112, 113, 138, 139, 525, 526, 527, 1057. However, the facts set forth in the due process complaints (DPCs) were all backed by testimony and/or exhibits during the administrative hearing. Doc ##: 1-2, 1-3, 1-4.

### 1. First substantiated fact is R.C. was in Ninth Grade

Defendants can cite to particular parts of materials in the record to show Plaintiffs claim is unfounded. For example, R.C., the minor child of Angela Coleman, was a ninth-grade student at the

---

[8]It is apparently common practice in IDEA cases for ALJs to restate and reorganize the issues presented by the parties. *See J.W.*, 626 F.3d at 442; *Ford ex rel. Ford v. Long Beach Unified Sch. Dist.*, 291 F.3d 1086, 1090 (9th Cir. 2002). We question the wisdom of such a procedure where the parents are represented by counsel and the complaint states the issues intelligibly, as was the case here. A party bringing a due process complaint is entitled to frame the issues it wishes to present and should not be put in the difficult position of contradicting the presiding official who will soon be the trier of fact. In such circumstances, failure to object will not be deemed a waiver of any claim fairly encompassed in the complaint. *M.C. v. Antelope Valley Union High School Dist.*, 858 F.3d 1189, 1196 (9th Cir.2017), fn. 2

time of filing of the May 5, 2015, complaint during the 2014-2015 school year.[9] P.Ex. pgs. 2, 4, 6, 126, 127.

> **2.  Second substantiated fact is R.C. is a student that qualifies for protections under IDEA and 504/ADA as he suffers from depression, asthma, and migraines as well as other health impairments.**

Secondly, Dr. DePolo testified R.C. no longer felt safe at school, was becoming withdrawn, wanting to stay in his room, not talking with others, not wanting to come to the family dinner and didn't want to have any friends. Tr. 605. DePolo further testified all those indicators were signs of depression. *Id.* Dr. DePolo found R.C. suffered Post Traumatic Stress Disorder (PTSD) yet did not want to stigmatize him with the label, so diagnosed him with Acute Stress Disorder, recommending he receive an Individualized Education Plan (IEP) under the Other Health Impairment Category (OHI).

R.C. finally received an IEP August 20, 2015, the beginning of the 2015-16 school year under the category of OHI. P. Ex. pgs. 507-523. This IEP was effective after the filings of the first two DPC and before the third DPC. *See* Doc ##: 1-2, 1-3, 1-4.  As the Plaintiff states it did not suspect a disability until April 27, 2015 and the Evaluation Team Report was not conducted until June of 2015, after R.C. had informed the Plaintiff of his depression and anger issues, after the Plaintiff was aware of R.C.'s migraines, and after the district was made aware of the consistent bullying R.C. suffered, the Plaintiff failed to properly find R.C. as a child with a disabilities and did not conduct the ETR timely as alleged in the DPCs. Doc ##: 1-2, 1-3, 1-4.

> **3.  Third substantiated fact is the Plaintiff was aware of these disabilities prior to the expulsion they implemented without having conducted an evaluation of R.C. nor a manifestation determination.**

_____

The third substantiated fact is the Plaintiff was aware of R.C.'s disabilities prior to his discipline. The Plaintiff first became aware of R.C.'s migraine disability in the 8th grade year.P.Ex. pgs.322. R.C.'s migraines can be so severe they impact his vision and have caused him to miss school. P.Ex. pgs.322, 496, 770. The diagnosis papers of R.C.'s migraines were provided to the Plaintiff when he returned to school and Mrs. Coleman explained the medication R.C. would be taking. Tr. 1230.

The Plaintiff was also made aware when Dr. Debra Wallace, the Plaintiff 's alcohol, tobacco, and other drug and violence prevention and intervention program coordinator, gave a presentation entitled "Adolescent Depression Awareness Program" designed to increase the awareness and remove the stigma of depression as a clinical diagnosis and suicide prevention. Tr. 1397. R.C. approached Wallace after one of the sessions and introduced himself, then stated he was "really concerned that he thought he might fit into some of the symptomatology" discussed during the presentation. Tr. 1398. R.C. told Wallace he was concerned why he felt angry most of the time. Tr. 1400.

Rather than report this to his counselor or other administrative personnel, Wallace simply sent him home to speak with his mother. Tr. 1402-1403. This is despite Wallace reportedly working closely with the counseling staff and principals of each building. Tr. 1412. In fact, R.C.'s statement to Wallace about his depression came after the discipline reports about physical confrontations and disruptions of school she received regarding R.C. in 2014.P.Ex. pgs. 779-783. Yet she did not take R.C. to any of the four counselors or the school psychologist. Tr. 1405-1406. Wallace's testimony and the exhibits show the Plaintiff was aware of R.C.'s depression, a disability recognized under Section 504 and the IDEA, prior to implementing the expulsion and not having conducted a manifestation determination review as alleged in the complaints. Doc ##: 1-2, 1-3, 1-4; PageID ##: 32, 33, 36, 37, 41.

4. **Fourth substantiated fact is the Plaintiff did not conduct a manifestation determination review despite knowing of R.C.'s disabilities.**

As indicated in the DPCs, the Plaintiff did not conduct a manifestation determination review (MDR). *Id.* The Plaintiff did not conduct the MDR because they failed to identify R.C. as a student with a disability. Tr. 806. This is despite R.C. being out of school for more than ten days without services, as he was suspended March 2, 2015, and did not even start the Digital Knights online school until March 23, 2015.[10]P. Ex. pgs.34, 96, 472; Tr. 687, 697, 1059.The School Principal only guessed as to whether R.C. started the Digital Knights within ten-day window of requiring a manifestation determination. Tr. 818. Clearly, the Plaintiff removed R.C. from school for more than ten days without providing an MDR. However, the IDEA provides a child with a disability must be provided an MDR prior to the removal for more than ten days.20 USCS § 1415(k)(1)(C). These protections can even be asserted when the child is not yet eligible for special education and related services. 20 USCS § 1415(k)(5).

5. **Fourth substantiated fact is the Defendants alleged fact(s) in their initial due process complaint, the first amended due process complaint, and the second amended due process complaint that amount to a violation of the law.**

The allegations alleged in the DPCs are all substantiated by the evidence and testimony of the administrative hearing and were violations of the law. Just the few allegations of violations of child find, 20 USCS § 1412(a)(3), failure to conduct an MDR, 20 USCS § 1415(k)(1)(E), and the failure to do the MDR timely, 20 USCS § 1415(k)(1)(C), show the Defendants alleged facts in their initial due process complaint, the first amended due process complaint, and the second amended due process complaint that amount to a violation of the law. Defendants could continue to substantiate every allegation of the DPCs and further show they conducted a reasonable inquiry into the merits of the

---

[10] R.C. was out of school in the aggregate for more tan ten days resulting from the same types of disciplinary incidents, requiring a manifestation determination review.

claims prior to their filing of the due process complaint on May 5, 2015, their first amended due process complaint on May 13, 2015, and their second amended due process complaint on or about September 17, 2015, however, it would be much akin to reciting the record and as the Court is aware the record speaks for itself.

**VI.    Any argument this matter was filed for an improper purpose is itself being made with an improper purpose.**

A.    A matter cannot be improper purpose if not frivolous.

As stated above, the Complaint or subsequent Cause of Action needs to be frivolous for a Court to shift fees, or the Complaint or subsequent Cause of Action must have been **Filed or Presented** with an improper purpose.  This means any single act in isolation would not be relevant, as the acts in isolation do not determine if the action was filed or presented for an improper purpose. The Plaintiff's subjective view of the parent's motive is irrelevant. "An opponent in a lawsuit, particularly a defendant, will nearly always subjectively feel that the lawsuit was brought for less than proper purposes. . .. However, a court must ignore evidence of the injured party's subjective beliefs and look for more objective evidence of the signer's purpose." *In re Kunstler,* 914 F.2d505, 519 (4th Cir. 1990).

"For a claim to have an "improper purpose" the claim must be both frivolous (without merit) and result from an improper motive. *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 524 (6th Cir.2002), *R.P. ex rel. C.P. v. Prescott Unified School Dist.,* 631 F.3d 1117, 1126 (9th Cir.2011). Thus, if a claim is not frivolous, it necessarily does not have an improper purpose, even if resulting from an improper motive." *Oakstone Cmty. Sch. v. Williams*, No. 2:11-CV-1109, 2012 WL 4051322, at *4 (S.D. Ohio Sept. 13, 2012); *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 437 (6th Cir. 2009) ("we do not think the plaintiffs' motives in filing the action by themselves could warrant a fee award.").  Further, simple inadvertence or negligence that frustrates the trial judge

31

will not support a sanction. *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987).  "[T]he mere finding that an attorney failed to undertake a reasonable inquiry into the basis for a claim does not automatically imply that the proceedings were intentionally or unreasonably multiplied." *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997).  No allegation by Nordonia can meet this exacting standard.

**B.   Public Policy Prevents an Award of Fees**

As the Supreme Court made clear in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416–18, 98 S.Ct.694, 54 L.Ed.2d 648 (1978), for policy reasons, a prevailing civil rights plaintiff is presumptively entitled to reasonable attorney's fees unless a showing of "special circumstances" is made. These policy reasons include Congress' concern for the vigorous enforcement of civil rights and the role of plaintiffs in achieving this enforcement. *Id*.  "Because policy considerations such as these are absent in the case of a prevailing civil rights defendant, attorney's fees are presumptively unavailable, where such fees are awarded only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation...." *Id*. at 421, 98 S.Ct. 694.  Indeed,"[a]warding attorney's fees to prevailing defendants in civil rights actions in only the most extreme and egregious cases of misconduct, yet awarding attorney['s] fees to prevailing civil rights plaintiffs on a regular basis under § 1988 ,comports with the purpose of § 1983  as a vehicle for the enforcement of civil rights and prevents defendants—who often times are in a superior position simply by virtue of being able to afford top legal counsel—from using a heavy hand to prevent plaintiffs with potentially meritorious claims from pursuing those claims." *Roane v. City of Mansfield,* No. 98–4560, 2000 WL 1276745, at *1 (6th Cir.Aug.28, 2000) (citing York v. Ferris State Univ.,36 F.Supp.2d 976, 980–83 (W.D.Mich.1998).

Writing in his Dissent in *Riddle*, Judge Clay indicated:

Under the facts of this case, it is this result that advances Congress' intent of entrusting the vigorous enforcement of the civil rights statutes to plaintiffs who serve in this regard as "private attorney[s] general." *See Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) ("When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law."). To be sure, it is rare that civil rights cases are based on direct evidence, *see Robinson v. Runyon,* 149 F.3d 507, 513 (6th Cir.1998); instead, these cases are developed and ultimately decided on circumstantial evidence which may not be fully fleshed out until after discovery. Therefore, a court should not impose attorney's fees on the civil rights plaintiff who files a reasonably founded claim, but ultimately loses his case on summary judgment after discovery is completed. To hold otherwise would unjustifiably add to  *558 the jurisprudence awarding attorney's fees to civil rights defendants which, in turn, may ultimately dissuade future civil rights plaintiffs from proceeding with potentially meritorious claims, thus stifling the enforcement of the civil rights statutes contrary to congressional intent. *See Newman,* 390 U.S. at 402, 88 S.Ct. 964.

*Riddle v. Egensperger,* 266 F.3d 542, 557–58 (6th Cir. 2001)

Shifting fees to defendants in civil rights actions can easily chill protected activities and thus the reason why fees are shifted only in rare cases.  Fees are shifted very rarely and only in exceptional cases. *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001) (explaining that a fee award "is an extreme sanction and must be limited to truly egregious cases of misconduct." (citations omitted)); *Mitchell v. Moore*, 218 F.3d1190, 1203 (10th Cir. 2000) (stating 'rarely will a case be sufficiently frivolous' that fees will shift); *Saman v. Robbins*, 173 F.3d1150, 1157 (9th Cir. 1999) (stating fees only awarded to a defendant in exceptional cases); *Arnold v. Burger King Corp.*, 719 F.2d63, 65 (4th Cir. 1983) (explaining that fee award is a 'conservative tool to be used sparingly ' where plaintiff 'knew or should have known' case was frivolous).  The court may shift fees if the parents' case is frivolous "with no chance of success," but not if it is a "weak" case with "little chance of success." *Khan v. Gallitano*, 180 F.3d829, 837 (7th Cir. 1999); see also *Bonner v. Mobile Energy Serv. Co.*, 246 F.3d1303, 1305 (11th Cir. 2001) (holding 'markedly weak' case not frivolous).

The Seventh Circuit has explained why prevailing defendants recover fees only under very limited circumstances because if prevailing defendants were routinely awarded attorney's fees  in civil

rights cases, civil rights plaintiffs would be extremely reluctant to initiate litigation for fear of being charged with a fee award vastly exceeding the expected recovery, and in some cases their ability to pay, thereby vitiating the underlying purpose of the civil rights laws. . . . The *Hughes* standard [applying *Christiansburg* to § 1988 actions] was designed to strike a careful balance between the desire to encourage private litigants with valid claims to bring suit to vindicate civil rights and the need to deter frivolous actions brought primarily to harass the defendant without hope of success. *Coates v. Bechtel*, 811 F.2d1045, 1049 (7th Cir. 1987*)*.

Other Courts have recognized the importance of challenging decisions and initiating actions based on new theories or arguments that the existing law is wrong or for a modification of the existing law.  This principle is important, so the law can grow and change over time.  As the Second Circuit has concluded, "[v]ital changes have been wrought by these members of the bar who have dared to challenge the received wisdom, and a rule that penalized such innovation and industry would run counter to our notions of the common law itself."  *See Brubaker v. City of Richmond*, 943 F.2d1363, 1373 (4th Cir. 1991) (recognizing need to avoid imposing sanctions that 'chill an attorney's enthusiasm or creativity in pursuing factual or legal theories ') (quoting Fed. R. Civ. P. 11, Advisory Committee's Note, 1983 Amendments).

Last, affidavits have been filed in court in Ohio indicating there are not many special education attorneys willing to assist families, and if this Honorable Court shifts fees to Appellant's Counsel, it will have the chilling effect legislators and courts have been concerned with.  *See* Case: 5:17-cv-00553-CAB Doc #: 25-1. As such, Nordonia claims for fees and costs should fail as a matter of public policy.

### C.  Courts Should Award Fees to Prevailing School Districts in Only the Most Egregious Circumstances Because of the High Risk of a Chilling Effect.

A non-profit group, Disability Rights Ohio, has indicated there are only approximately 12

education lawyers in all of Ohio.  Case: 5:17-cv-00553-CAB Doc #: 25-1.  Yet, according to the State Special Education Profile 2011-12 for Ohio, there wereapproximately 1,594,180 students in Ohio in the 2011-12 school year, of these students, 235, 160 were children with disabilities under the IDEA.  *See* Ex. 1, State-Special-Education-Profile-2011-12.pdf.  Thus, Courts in Ohio must be extremely careful when ordering attorneys' fees as costs in IDEA matters because of the chilling effect that would be had on the limited number of education lawyers as is already.  A large fee award would go against public policy as it is unlikely that attorneys would start practicing education law if they may be exposed to such a large financial risk, especially in proceedings where you must rely on your clients because you have no right to any sort of discovery.

The IDEA creates a heightened standard within its attorney's fees provision for shifting fees to parents and their attorneys that requires the Complaint to be reviewed more carefully than if the plaintiff here were a prevailing parent. At its core, IDEA endeavors to guarantee that children with disabilities "receive the educational assistance and support they need and deserve." 150 CONG. REC. S11655 (daily ed. Nov.19, 2004) (testimony of Sen. Reed).

Consequently, one of IDEA's underlying principles is to protect the rights of children and their parents to seek and obtain, through the courts if necessary, essential educational and related services. 20 U.S.C. § 1400(d)(1)(B). To this end, parents and children are entitled to file an administrative due process complaint against a school district when the school district fails to provide a child with a disability with a free and appropriate public education.20 U.S.C. § 1415(b).

Following the *Christiansburg* standard, IDEA's attorney's fees provision does not shift fees to a prevailing defendant on the same basis as a prevailing plaintiff. To obtain attorney's fees under IDEA, a parent need only demonstrate that he/she was a prevailing party. 20 U.S.C. § 1415(i)(3)(B)(i)(I). However, a school district may obtain fees only in the limited circumstances of

frivolousness and for an improper purpose described above. These different standards place a greater burden on a school district and require a school district to allege and prove more specific factual information than would be necessary if the parent were the prevailing party.

*Christiansburg* further cautioned that attorney's fees should not shift to the plaintiff except in the most egregious cases because of the risk of discouraging claims:

> It is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

*Christiansburg* at 421-22. *See also*, *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001).

This warning is especially important in cases involving attorney's fees under IDEA against unsuccessful parents and their attorneys because the risk is high of creating a chilling effect on children and parents to pursue their rights. "[Parents] shouldn't have to face financial ruin for attempting to vindicate the rights of their disabled child." *R.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1126-27 (9th Cir. 2011). Even the filing of a complaint for attorney's fees itself can chill a parent's exercise of her rights, so the Court should scrutinize the Complaint more carefully in this case.

A similar chilling effect on attorneys representing parents would occur with an expansive interpretation of the attorney's fees provision. "Lawyers would be improperly discouraged from taking on potentially meritorious IDEA cases if they risked being saddled with a six-figure judgment for bringing a suit where they have a plausible, though ultimately unsuccessful, argument." *Id*. at 1126. This would be especially detrimental because "[i]n many communities there appear to be few, if any, lawyers experienced or willing to handle" IDEA cases. *ABA Comm. on Nonlawyer Practice, Nonlawyer Activity in Law Related Situations: A Report with Recommendations*, 81 (1995).

Courts applying IDEA's attorney's fees provision have heeded *Christiansburg's* warning and awarded fees to a prevailing school district only in the most extreme cases. For example, the Fifth Circuit awarded fees to a school district where the parent's attorney proceeded with a due process hearing after it was clearly frivolous to do so. *El Paso Indep. Sch. Dist. v. Berry,* 400 Fed. Appx. 947 (5th Cir. 2010). The court noted that the attorney continued to litigate for unnecessary services, unreasonably advised his client to reject the district's settlement offer and continued to litigate after the district offered all requested relief. *Id.* at 954-55.

In *Amherst v. Calabrese*, the Northern District of Ohio has cautioned against making an award of fees that would be inconsistent with the purposes of the IDEA. Even though the court awarded fees against the parent's attorney, it did so only after the attorney defaulted and failed to reply to the school district's motion for summary judgment. Notably, the court, on its own, ultimately reduced those fees because "[a]dministrative and civil actions against recalcitrant school districts are a necessary part of the statute's enforcement mechanism. Too large an award to a school district against a plaintiff's attorney might deter other attorneys from pursuing meritorious cases. This would be inconsistent with the purposes of the IDEA." Mag. Judge Vecchiarelli's Report and Recommendation, Document 91, adopted in full by the Court, *Amherst Exempted Vill. Sch. Dist. Bd. of Educ. v. Calabrese*, No. 1:07-CV-920, 2008 U.S. Dist. LEXIS 55367 (N.D. Ohio July 21,2008).

Conversely, the Ninth Circuit refused to find that the parent's due process claim was frivolous merely because the parent was unsuccessful. *R.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1126 (9th Cir. 2011). Further, the Ninth Circuit stated that filing a non-frivolous lawsuit, even if out of anger, is not an improper purpose that justifies an award of attorney's fees. Rather, anger is in fact a "legitimate reaction by parties who believe that their rights have been violated or ignored." *Id.* at 1227.

37

Additionally, it is not disputed that prior to getting to a court of competent jurisdiction after special education due process proceedings, parents and parents' attorneys do not receive any sort of discovery, the opportunity to depose witnesses, and are at a huge disadvantage since they cannot talk to teachers or know information that schools possess and have unfettered access to review. These hearings are meant to be informal in nature so that parents could represent themselves and parents are up against the deep pockets of school districts and insurance companies. Not to mention that additional information can be added at the state level review hearing and in the Sixth Circuit parents are permitted to submit additional information that courts shall review. 20 U.S.C. § 1415(i)(2), *Wayne D. v. Beechwood Independent School District*, 482 Fed.Appx. at 58, citing *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840.

Further, pursuant to precedent in the Sixth Circuit and 20 USCS § 1415(l) parents are required to exhaust administrative remedies through an IDEA special education due process hearing even if they only want to bring claims in a court of competent jurisdiction under a different statute such as the Americans with Disabilities Act or Section 504 and may not have a valid IDEA claim. *Sims v. Board of Education of Winton Woods School District,* 1:16-CV-281*citing Fry v. Napoleon Cmty. Sch.*, 788 F.3d 622, 627 (6th Cir. 2015). Therefore, it is Defendants position that prior to the completion of discovery at a court of competent jurisdiction and absent a showing of improper purpose, parents' attorneys should never be sued for frivolousness under the IDEA since they do not receive discovery and may be exhausting their administrative remedies as required.

Here, given the potential ramifications to children, parents, and their attorneys, the Complaint should be reviewed critically to ensure that Plaintiffs meets the greater burden of alleging specific facts supporting the ultimate conclusions that the due process complaint was frivolous or that Defendants acted with an improper purpose. The Plaintiffs' Complaint does not meet these standards.

38

**VII.    Plaintiffs frivolously sought unauthorized costs.**

There is nothing that authorizes the Plaintiffs to receive any costs outside of attorneys' fees for anything done at the IDEA administrative hearing.  "We have "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296–97 (2006);

The underlying administrative hearing brought against the Plaintiff was pursuant to the Individuals with Disabilities Education Act's ("IDEA") fee shifting clause at 20 U.S.C. § 1415(i)(3)(B)(i) which is discussed above.  Ohio through the Ohio Administrative Code ("O.A.C.") has decided what costs parents are responsible for in IDEA administrative due process hearings.  O.A.C. 3301-51-05(K)(16) provides for the costs associated with Due Process Hearings in Ohio:

> (a)  The school district of the child's residence shall provide one copy of the written, or at the option of the parents, an electronic verbatim record of the hearing and findings of fact and decisions to the parent at no cost.
> **(b)  All other cost incurred in impartial due process hearings requested by the parent shall be assumed by the school district of the child's residence**, except as follows:
> **(i)**  Expert testimony, outside medical evaluation, witness fees, subpoena fees, and cost of counsel will be paid by the party requesting the services; and
> **(ii)**  If requested by the parents or their attorney, additional copies of the record of the hearing and findings of fact and decisions.

O.A.C. 3301-51-05(K)(16) emphasis added.  Noticeably absent is any statutory authority from the IDEA or Ohio law that would allow an SEA or LEA recovery of costs or damages outside of attorneys' fees.  It is important to note that Ohio has not provided any exceptions, like the fee-shifting clause of the IDEA that is an exception that explicitly provides for attorneys' fees in administrative IDEA hearings, that would allow for schools to recover costs it is legally mandated to pay.[11] Thus, it

---

[11]Compare this to R.C. 3313.66 which allows for students to Appeal disciplinary decisions to Courts of Common Plea.  R.C. 3313.66 specifically authorizes courts to tax the costs of transcripts as part of the

is clear, there are no costs, excluding attorneys' fees, even able to be awarded to the Plaintiffs.

### A.  The IDEA Procedural safeguards do not warn parents or attorneys of any other costs than attorneys' fees.

The IDEA's procedural safeguards do not contain any explanation or warning that parents or their attorneys my be responsible for any other costs except attorneys' fees.  When a parent was seeking to get expert fees, the Court indicated "[t]he lack of any reference to expert fees in § 1415(d)(2) gives rise to a similar inference. This provision, which generally requires that parents receive "a full explanation of the procedural safeguards" available under § 1415 and refers expressly to "attorneys' fees," makes no mention of expert fees." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 298 (2006).  If this applies to expert's fees it should apply to everything else as well.  Accordingly, this Court should find the Plaintiffs frivolously sought the costs they were not authorized to seek.

### B.  Fed.R.Civ.P 54 only applies to matters in federal courts.

As stated by numerous courts and cited in this Brief, the only reason attorneys fees are available to prevailing parents, and rarely school districts, is because congress crafted the IDEA to include such.  However, as *Arlintgon supra* has told us and been cited many times, the IDEA only allows attorneys fees to be taxed as costs and costs are limited by 28 USC 1920.  There has been no similar action by Congress allowing any other costs from IDEA proceedings to any party.  Further, Fed.R.Civ.P. Rule 1, entitled Scope and Purpose, states "[t]hese rules govern the procedure in all civil

costs of any such appeal.  The exclusion of similar provision in the IDEA or R.C. was not by accident disciplinary decisions

actions and proceedings in the United States District Courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Therefore, since the school is seeking fees for actions that did not occur or arise from an action in federal court, they cannot receive any fees except attorneys' fees, and any argument to the contrary is itself wholly frivolous.

### C. Hylant is not a proper party.

In order to collect fees under 20 U.S.C. § 1415(i)(3)(B)(i)(II-III) only allow state or local educational agencies to recoup attorneys' fees under the fee shifting scheme. From the corporate disclosure filed by the Plaintiff, it appears Plaintiff Hylant is an insurance company. As such, it obviously is not a state or local educational agency, and therefore, is not entitled to fees. For this reason, any claim relating to Plaintiff Hylant must be dismissed as a matter of law.

### D. There is no law firm liability.

20 U.S.C. § 1415(i)(3)(B)(i)(II-III) presents a simple analysis, as it speaks to no "other person" who might be liable for sanctions – only "*the attorney*" of a parent who files a complaint or subsequent action that is frivolous or "*the attorney*" of a parent who continue[s] to litigate after the litigation clearly bec[omes] frivolous, unreasonable, or without foundation. The plain language of 20 U.S.C. § 1415(i)(3)(B)(i)(II-III) covers only "the attorney" involved in filing a complaint and litigating the action – it does not even arguably reach the attorney's law firm.

Respectfully submitted,

DICAUDO, PITCHFORD & YODER, LLC

*/s/J. Reid Yoder*
J. Reid Yoder (0076587)
ryoder@dpylaw.com

41

Benjamin R. Sorber (0092739)
bsorber@dpylaw.com
209 S. Main St., Third Floor
Akron, OH44313
Telephone: 330.762.7477
Facsimile:  330.762.8059

*Attorneys for Defendants Daniel R. Bache, Jason*
*D. Wallace, and Wallace & Bache, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of April, 2018, the foregoing Motion for Summary Judgment was served upon the parties via the Court's electronic filing system.

/s/J. Reid Yoder
J. Reid Yoder